Malcolm S. McNeil (SBN 109601)
Ismael Bautista, Jr. (SBN 252139)
Stefan Bogdanovich (SBN 324525)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401
Email:   malcolm.mcneil@arentfox.com
          ismael.bautista@arentfox.com
          stefan.bogdanovich@arentfox.com

Attorneys for Plaintiffs
PACIFIC SURROGACY USA, LLC; and
YULUN JIANG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

| | |
|---|---|
| PACIFIC SURROGACY USA, LLC, a California Limited Liability Company; YULUN JIANG, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> HAOTIAN BAI, an individual; DOES 1-25, <br><br> Defendants. | Case No. _____ <br><br> **PLAINTIFF PACIFIC SURROGACY USA, LLC'S NOTICE OF EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER STOPPING AND CORRECTING DEFENDANT'S FALSE ADVERTISING CAMPAIGN, EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE  FOR NOT ISSUING A PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. _____

EX PARTE APPLICATION FOR TRO
STOPPING AND CORRECTING BAI'S FALSE
ADVERTISING CAMPAIGN

## NOTICE OF *EX PARTE* APPLICATION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on July ___, 2019 at 9:00 am, or as soon thereafter as counsel may be heard, in _____ of the United States District Court, Southern Division, located at 411 West 4th Street, Santa Ana, CA 92701-4516, Courthouse of the above-captioned Court, located at _____ Plaintiff Pacific Surrogacy USA, LLC ("PSUSA"), by counsel, will and hereby does move this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Central District of California Local Rules 7-19 and 65-1, for a temporary restraining order and an order to show cause why a preliminary injunction should not issue against Defendant Haotian Bai ("Defendant" or "Mr. Bai") on the grounds that unless Mr. Bai is enjoined, PSUSA will continue to suffer irreparable injury as a result of Mr. Bai's false advertising campaign disparaging PSUSA's services.

## NOTICE OF APPLICATION

Notice of Plaintiff's application for a Temporary Restraining Order ("TRO") was given in accordance with Federal Rule of Civil Procedure 65(b)(1) and Local Rules 17-19 and 65-1.  As set forth in the concurrently filed Declaration of Stefan Bogdanovich, Plaintiff PSUSA took the following steps to notify Defendant that Plaintiff would be applying for a TRO and preliminary injunction in the United States District Court for the Central District of California, Santa Ana, on July 30, 2019: On July 30, 2019,  Plaintiff sent copies of the Complaint, Ex Parte Application for Temporary Restraining Order, Expedited Discovery, and Order to Show Cause regarding Preliminary Injunction and supporting Memorandum of Points and Authorities (excluding this paragraph), Proposed Order regarding Temporary Restraining Order and Expedited Discovery, Proposed Order regarding Order to Show Cause, and Declarations of Henry Wang, Yulun Jiang, and Wendy

1  Qiu by email to Brett Sims, counsel of record for Defendant Haotian Bai in the

2  related state court action. Plaintiff also attempted to personally serve, by registered

3  process server, copies of these same papers on Defendant at his last known home

4  address.  Decl. of Stefan Bogdanovich, ¶¶ 2, 3.

5        PSUSA's application is based upon this notice, the attached memorandum of

6  points and authorities, the declarations of Yulun Jiang, Henry Wang, Stefan

7  Bogdanovich, and Wendy Qiu filed in support thereof, the pleadings and other

8  records on file in this action, and, should this Court hear oral argument, such

9  further evidence and argument presented at the hearing.

10  Dated:                                    Respectfully submitted,

11                                            **ARENT FOX LLP**

12

13                                            By: _____

14                                            MALCOLM S. MCNEIL
                                              ISMAEL BAUTISTA, JR.
15                                            STEFAN BOGDANOVICH
                                              Attorneys for Plaintiffs
16                                            PACIFIC SURROGACY USA, LLC and
                                              YULUN JIANG

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. _____              3           EX PARTE APPLICATION TO STOP AND
                                                CORRECT BAI'S FALSE ADVERTISING
                                                CAMPAIGN

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .......................................................................................... 1
II. STATEMENT OF FACTS ........................................................................... 1
    A.  The Rise and Fall of Pacific Surrogacy, LLC ..................................... 1
    B.  Mr. Bai's Opens a New Venture with a False Advertising
        Campaign ........................................................................................... 3
III. ARGUMENT ............................................................................................... 5
    A.  Injunctive Relief is Warranted to Stop Mr. Bai's False
        Advertising ......................................................................................... 5
    B.  PS, PSUSA, and Mr. Jiang are Likely to Succeed on their False
        Advertising Claim .............................................................................. 6
        1.  Mr. Bai's Letters and Ms. Yu's In-Person Deception is
            Commercial Advertising ........................................................... 6
        2.  Both Letters are False and Misleading ..................................... 8
        3.  Mr. Bai's Misleading Letters were Material .............................. 9
        4.  While Not Required, PSUSA Can Show Injury and
            Causation ................................................................................ 10
    C.  The Other Factors Also Warrant Injunctive Relief ............................ 10
    D.  Correcting Mr. Bai's Deception about the Safety of the
        Surrogates and the Identity of Both Businesses is Necessary ............ 11
IV. CONCLUSION ........................................................................................... 12

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Birthright v. Birthright, Inc.*,
5      827 F.Supp. 1114 (D.N.J.1993).................................................................7

6

*BOKF, NA v. Estes*,
7      923 F.3d 558 (9th Cir. 2019) ...................................................................6

8

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
      447 U.S. 557 (1980) ...............................................................................11
9

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*,
10      843 F.3d 48 (2nd Cir. 2016) .............................................................5, 11

11

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
12      173 F.3d 725 (9th Cir.1999) ................................................................6, 7

13

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
      700 F. App'x 251 (4th Cir. 2017)..............................................................5
14

*Harper House Inc. v. Thomas Nelson, Inc.*,
15      889 F.2d 197 (9th Cir. 1989) .................................................................10

16

*National Artists Management Company v. Weaving*,
17      769 F. Supp. 1224 (S.D.N.Y 1991)...........................................................7

18

*Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc.*,
19      93 F.3d 511 (8th Cir. 1996) ...............................................................5, 11

20

*Southland Sod Farms v. Stover Seed Co.*,
      108 F.3d 1134 (9th Cir. 1997) ........................................................6, 9, 10
21

*SuccessFactors, Inc. v. Softscape, Inc.*,
22      544 F. Supp. 2d 975 (N.D. Cal. 2008) ....................................................11

23

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
24      932 F.2d 1113 (5th Cir. 1991) ...............................................................12

25

*TrafficSchool.com, Inc. v. Edriver Inc.*,
      653 F.3d 820 (9th Cir. 2011) ...................................................................5
26

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
27      505 U.S. 763 (1992) ...............................................................................12

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. _____        1        EX PARTE APPLICATION TO STOP AND
                                       CORRECT BAI'S FALSE ADVERTISING
                                       CAMPAIGN

*V'Guara Inc. v. Dec,*
   925 F. Supp. 2d 1120 (D. Nev. 2013) ........................................................................6

*Vitamins Online, Inc. v. HeartWise, Inc.,*
   207 F. Supp. 3d 1233 (D. Utah 2016) .......................................................................8

*Warner–Lambert Co. v. FTC,*
   562 F.2d 749 (D.C. Cir. 1977) ...........................................................................11, 12

**Statutes**

15 U.S.C. § 1125 ...........................................................................................................5

15 U.S.C. § 1116 ...........................................................................................................5

California Code of Civil Procedure § 426.30 ................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On July 1, 2019, Defendant Haotian Bai ("Mr. Bai") began a false advertising campaign targeted at Pacific Surrogacy USA LLC's ("PSUSA") actual and prospective customers by stating: "I'm writing in a strong sense of urgency: Your Surrogate mothers are in danger, and so is your trust fund." This claim is false and unfounded. Many others claims contained in letters dated July 1 and July 3 have similarly false and intentionally misleading statements about the qualifications of PSUSA's staff, the security of the funds in the client trust account, the relationship between PSUSA and a prior venture, and the character of PSUSA's owner.

PSUSA asks this court to issue a temporary restraining order (1) stopping Mr. Bai and his agents from continuing this false advertising campaign and (2) order Mr. Bai to send retraction letters to the recipients of the July 1 and 3 letters. PSUSA is likely to succeed on the merits of its false advertising claim against Mr. Bai, since the letters are replete with material misstatements that deceive customers. PSUSA's goodwill is – and will continue to be – irreparably harmed the longer these lies are allowed to percolate into the marketplace. A retraction letter is the appropriate corrective remedy for false advertising concerning the safety of PSUSA's surrogate mothers and the identity of PSUSA and Mr. Bai's competing business.

### II.    STATEMENT OF FACTS

#### A.    The Rise and Fall of Pacific Surrogacy, LLC

Pacific Surrogacy, LLC ("PS") was organized on July 12, 2018, with Haotian Bai and Yulun "Allan" Jiang as equal 50/50 share members of a limited liability company. Declaration of Yulun Jiang ("Jiang Decl.") ¶ 1. While operative, PS provided surrogacy services to aspiring mothers and fathers by connecting them with surrogates. Jiang Decl., ¶ 2. Although Mr. Bai lived in Hawaii, between June

1 | 2018 and June 2019, Mr. Bai would typically visit California for one to two work-

2 | weeks per month. *Id*. During this time, it became clear Mr. Bai and Mr. Jiang had a

3 | fundamental disagreement regarding values and how a Surrogacy business should

4 | be run. *Id*.

5 |     Aspiring parents – often married couples dealing with sensitive issues of

6 | infertility – pay considerable sums for surrogacy services. Jiang Decl., ¶ 3. They are

7 | often very anxious during the pregnancy, and seek frequent progress updates and

8 | other information from PS and PSUSA. *Id*. It is important to aspiring parents, and

9 | the business partners referring them, that the parents feel comfortable with PS and

10 | PSUSA's services. *Id*.  Given the nature of the business, Mr. Jiang believed

11 | displaying appropriate tact and discretion in front of sensitive surrogacy clients and

12 | business partners was necessary for the nascent business to thrive. Jiang Decl., ¶ 4.

13 |     Mr. Bai, however, made lewd remarks about the female anatomy of certain

14 | surrogates and employees to other employees in the office. Jiang Decl., ¶ 5. Mr. Bai

15 | also bragged about his sexual exploits to other employees, also in the office, and

16 | also during business hours. *Id*. At networking events, he referred to business

17 | partners referring couples as "pimps." *Id*. Towards employees, he often used

18 | profanity and threats. *Id*.

19 |     Mr. Jiang feared Mr. Bai's insensitive behavior exposed PS to liability from

20 | its employees, and jeopardized valuable business relationships with aspiring

21 | parents, surrogates, and business partners. Jiang Decl., ¶ 6. On June 17, 2019, Mr.

22 | Jiang confronted Mr. Bai about these instances and concerns, suggesting the two

23 | part ways. *Id*. Thereafter, the two mutually agreed part ways to dissolve the

24 | company, and were negotiating a potential payout. *Id*.

25 |     Even though they began as equal 50/50 partners, during dissolution

26 | negotiations, Mr. Jiang offered Mr. Bai an approximately 56% payout to amicably

27 | resolve the dispute, memorialized in a signed, handwritten note. Jiang Decl., ¶ 7,

28 |

Ex. 1. The written dissolution agreement, signed by both Mr. Bai and Mr. Jiang stated Mr. Jiang would be in charge of winding-up PS. Jiang Decl., ¶ 8, Ex. 2.

Two days later, on June 19, 2019, Mr. Bai withdrew $70,000 from the PS bank account, which hampered the ability of PS to finance its payroll for the rest of the month. Jiang Decl., ¶ 9. Mr. Bai did this without notifying his ex-partner Mr. Jiang. *Id*. The next day, on June 20, he came to the office of PS with his attorney Mr. Jeffrey Wang, who – as the only attorney at the premises –  threatened and screamed at PS employees that they would "go to jail today" if they did not turn over all their computers and documents to Mr. Bai. Jiang Decl., ¶ 10, Ex. 3 at 0:18-0:29. Mr. Jiang and the other employees did not submit to this coercion. *Id*.

## B. <u>Mr. Bai's Opens a New Venture with a False Advertising Campaign</u>

Shortly thereafter, Mr. Bai began circulating a series of letters dated July 1 and July 3 to aspiring parents, surrogates, and surrogacy agencies. Jiang Decl., ¶ 11-12, Ex. 4 and 5. The July 1 letter, addressed to "Clients and Partners," warns that "your surrogate mothers are in danger" and "not in good hands." Ex. 4. Mr. Bai claims his former colleagues "have neither [the] expertise nor experience to manage your surrogate mothers." *Id*. Mr. Bai thereafter sent a July 3 letter to "Friends of Pacific Surrogacy." Ex. 5. The letter states "PSUSA and PS… are not related to each other," and that Mr. Bai is "unaware of and cannot speak towards PSUSA's experience or expertise, if any, with managing your surrogate mothers." *Id*.

Both letters also accuse Mr. Jiang of theft. Ex. 4 ("My former associate… stole everything from me."); Ex. 5 ("I, too, am a victim. I formally filed lawsuit… for… conversion."). Both letters then attach, as Appendix C, Mr. Bai's complaint in this case, with a caption at the top of the page reading "COMPLAINTS REGARDING YUNLUN [sic] JIANG'S MISDEEDS." The Mandarin language version of the July 1 letter also states that "I [Mr. Bai] have formally filed a lawsuit

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. _____                    3                    EX PARTE APPLICATION TO STOP AND
CORRECT BAI'S FALSE ADVERTISING
CAMPAIGN

against my former associate, it has been accepted by the highest court in Orange County." Qiu Decl., ¶ 3; Ex. 4.

These letters came to light from various businesses that referred aspiring parents to PSUSA. Jiang Decl., ¶ 11. Those businesses notified PSUSA they received them in Mid-July. Jiang Decl., ¶¶ 13 and 14, Ex. 6. Others have reached out to PSUSA asking questions which suggests they also received these misleading letters. A Nevada law firm representing several surrogates stated "it has been brought to our attention that there are issues with Pacific Surrogacy." Wang Decl. ¶ 3, Ex. 7. This firm also said they planning to meet with Mr. Bai at a later date. Wang Decl. ¶ 3. A surrogacy clinic also reached out to PSUSA asking about PSUSA's relationship with PS. Jiang Decl., ¶ 15. Qunyao Yu ("Ms. Yu"), a former PS employee now working with Mr. Bai's new venture, has been disseminating the letters to business partners that refer aspiring parents through chat messages, and has accused Mr. Jiang of stealing PS from Mr. Bai. Ex. 6. Mr. Jiang also suspects some of the surrogates are being contacted by Ms. Yu. Jiang Decl., ¶ 15.

On July 19, 2019, PS, PSUSA, and Mr. Jiang sent a cease and desist letter to Mr. Bai's counsel, demanding Mr. Bai stop the false advertising campaign and issue retraction letters. Declaration of Stefan Bogdanovich ("Bogdanovich Decl."), ¶ 4. On the morning of July 23, Mr. Bai's counsel refused to agree to PSUSA' demands. *Id*. That same afternoon, Defendants and Counter-Claimants PS, PSUSA and Mr. Jiang filed a notice of removal for Mr. Bai's state court complaint, and began preparing this *ex parte* application. See Concurrently Filed Notice of Related Claims. On July 26, Mr. Bai filed voluntary dismissal from federal court and re-filed a compulsory cross-complaint. *Id*.

At this early juncture, it is unclear how many persons have received these letters or been contacted personally. PSUSA has been reticent to reach out to the aspiring parents, surrogates, and business partners themselves to determine how

1  many actually received the letter, fearing that involving them into this dispute will

2  further harm PSUSA's goodwill. Jiang Decl. ¶ 15.

3  **III.   ARGUMENT**

4      **A.   Injunctive Relief is Warranted to Stop Mr. Bai's False Advertising**

5        This court has ample authority to stop Mr. Bai's false advertising campaign

6  and order him to issue retraction letters. The Lanham Act's provides injunctive

7  relief to any person who believes is or is likely to be damaged by a "false or

8  misleading representation of fact, which – in commercial advertising or promotion,

9  misrepresents the nature, characteristics, [or] qualities… of… another person's…

10  services, or commercial activities." 15 U.S.C. §§ 1125(a)(1)(B), 1116.

11        "Courts routinely grant permanent injunctions prohibiting deceptive

12  advertising." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 (9th Cir.

13  2011). Courts can also order the false advertiser to take steps to correct their

14  deception. See *Id.* ("[T]he district court here didn't abuse that discretion when it

15  concluded that [ordering the false advertiser to affirmatively present] the splash

16  screen [on its own website] was the optimal means of correcting defendants' false

17  advertising" but remanding for further analysis on First Amendment

18  considerations); *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics,*

19  *GmBH*, 843 F.3d 48, 61 (2nd Cir. 2016) (Ordering defendant to engage in

20  widespread disclosure and corrective notices concerning home pregnancy test);

21  *Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 516

22  (8th Cir. 1996) (Ordering defendant issue corrective advertising to doctors

23  regarding a product comparison); *Handsome Brook Farm, LLC v. Humane Farm*

24  *Animal Care, Inc.*, 700 F. App'x 251, 264-65 (4th Cir. 2017) (Ordering defendant to

25  issue retraction statements about a food product "through the same channels as the

26  first, misleading email.").

27        For a plaintiff to obtain a preliminary injunction, he or she must show – to

28  varying degrees –  "(1) that he is likely to succeed on the merits, (2) that he is

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. _____                      5

EX PARTE APPLICATION TO STOP AND
CORRECT BAI'S FALSE ADVERTISING
CAMPAIGN

1  likely to suffer irreparable harm in the absence of preliminary relief, (3) that the

2  balance of equities tips in his favor, and (4) that an injunction is in the public

3  interest." *BOKF, NA v. Estes*, 923 F.3d 558, 561–62 (9th Cir. 2019) (citing *Winter*

4  *v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). In weighting the relative

5  strength of each of these factors, the Ninth Circuit employs a "sliding scale test." *Id.*

6  at 562. "Temporary restraining orders are governed by the same standard applicable

7  to preliminary injunctions." *V'Guara Inc. v. Dec*, 925 F. Supp. 2d 1120, 1123 (D.

8  Nev. 2013) (citing *Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*,

9  181 F.Supp.2d 1111, 1126 (E.D.Cal.2001)).

10  **B.    PS, PSUSA, and Mr. Jiang are Likely to Succeed on their False Advertising Claim**

11  

12  The elements of False Advertising under the Lanham act are: "(1) a false

13  statement of fact by the defendant in a commercial advertisement about its own or

14  another's product; (2) the statement actually deceived or has the tendency to

15  deceive a substantial segment of its audience; (3) the deception is material, in that it

16  is likely to influence the purchasing decision; (4) the defendant caused its false

17  statement to enter interstate commerce; and (5) the plaintiff has been or is likely to

18  be injured as a result of the false statement, either by direct diversion of sales from

19  itself to defendant or by a lessening of the goodwill associated with its products."

20  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

21  1.    Mr. Bai's Letters and Ms. Yu's In-Person Deception is Commercial Advertising

22  A commercial advertisement under the Lanham Act is "(1) commercial

23  speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for

24  the purpose of influencing consumers to buy defendant's goods or services… [and]

25  (4) must be disseminated sufficiently to the relevant purchasing public to constitute

26  "advertising" or "promotion" within that industry." *Coastal Abstract Serv., Inc. v.*

27  *First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir.1999).

28

Here, the letters and in-person communications are commercial speech because they were directed at aspiring parents and referral businesses (consumers) concerning  PSUSA, the safety and quality of its services, its identity, and the character of its owner. They were made by Defendant, Mr. Bai, and his agent, Ms. Yu, and as the letters indicate, his new venture is in competition with Plaintiffs PSUSA, and Mr. Jiang. The disparaging representations were made to influence surrogates and aspiring parents to leave PSUSA and instead work with Mr. Bai's new venture.

The letters were also sufficiently disseminated to constitute "promotion" within the surrogacy services industry. "[R]epresentations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion.'" *Coastal Abstract.* 173 F.3d. at 735 (9th Cir. 1999)(holding that a representation to one of two or three institutions involved in nationwide refinancing operations could constitute promotion).

Here, the letters addressed to aspiring parents and referral businesses, and Ms. Yu's one-on-one discussions with referral businesses (and potentially also surrogates) both constitute "promotion" in the surrogacy service industry. Surrogacy services are highly personal, and service providers act as intermediaries between aspiring parents and surrogates. Jiang Decl., ¶ 3. Similarly, in *Birthright v. Birthright, Inc.*, false advertising under the Lanham Act has applied to fundraising letters of a non-profit pregnancy counseling group sent to volunteers, donors, organization chapters, and persons on an internal mailing list. 827 F.Supp. 1114, 1138 (D.N.J.1993). Likewise, in *National Artists Management Company v. Weaving*, "one-on-one discussions with long-time friends and business associates" constituted "promotion" in the niche industry of musical bookings on Broadway. 769 F. Supp. 1224, 1226 (S.D.N.Y 1991).

While the breadth of Mr. Bai's false advertising campaign is unknown to PSUSA, it is likely to be substantial. Two separate business partners that refer

1    many aspiring parents to PSUSA have indicated they received the letters, and a law

2    firm and surrogacy clinic both reached out with questions suggesting they received

3    Mr. Bai's letters. Countless others may have received them and never reached out.

4           2.    Both Letters are False and Misleading

5           The July 1 letter seeks to mislead aspiring parents and business partners

6    about the safety and quality of PSUSA's services, the propriety of their trust

7    account, and the character of PSUSA's managing member. See Ex. 4. It says

8    "[y]our surrogate mothers are in danger" and "I want to make sure that your

9    surrogates are healthy and sound." *Id*. It supports this claim by disparaging the

10   "expertise" and "experience" of PSUSA's employees and attaching a series of

11   screenshots of text messages from presumably disgruntled surrogates. Yet claiming

12   PSUSA's surrogates are in "danger" is either false or highly misleading, because

13   none of the complaints relate to health or safety, but rather credit card processing,

14   communication, and appointment booking issues.

15          Also, even assuming these reviews are genuine, Mr. Bai's handpicking of

16   upset surrogates from a competitor is inherently misleading. The letters compile

17   out-of-context snippets of text conversations, which may or may not have solicited

18   from Mr. Bai himself, to paint PSUSA in the worst possible light. The rules of

19   evidence recognize that this is an inherently misleading tactic. See Fed. R. Evid.

20   106 (rule of completeness). Similarly, a defendant's manipulation of a competitors

21   online reviews was "false by implication." *Vitamins Online, Inc. v. HeartWise, Inc.*,

22   207 F. Supp. 3d 1233, 1245 (D. Utah 2016), vacated in part on other grounds, 2017

23   WL 2733867 (D. Utah May 11, 2017).

24          The Mandarin language version of the July 1 letter also seeks to mislead

25   Chinese readers unfamiliar with the American legal system by stating that "I [Mr.

26   Bai] have formally filed a lawsuit against my former associate, it has been accepted

27   by the highest court in Orange County." Stating that the lawsuit "has been

28   accepted" after it was filed falsely implies that the Orange County Superior Court

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. _____          8          EX PARTE APPLICATION TO STOP AND
                                            CORRECT BAI'S FALSE ADVERTISING
                                            CAMPAIGN

1   granted some kind of legitimacy to the unverified allegations contained in Mr. Bai's

2   complaint.

3         The July 3 letter falsely and deliberately implies PSUSA is wholly unrelated

4   to the original PS. Mr. Bai disclaims any knowledge of PSUSA's services by

5   stating "I am unaware of and cannot speak to PSUSA's expertise and experience."

6   This is literally false. Many of PSUSA's employees worked with Mr. Bai at PS.

7   Jiang Decl., ¶ 1. The claim is also contradicted by the July 1 letter where Mr. Bai

8   states he "can responsibly tell you [PSUSA has] neither the expertise nor

9   experience."

10        Both letters misleadingly imply the funds in the client trust account are

11  jeopardized because the account was set up by an attorney that received state bar

12  complaints on unrelated matters. This can mislead unsophisticated readers into

13  concluding PSUSA is defrauding clients or otherwise misappropriating their funds.

14  However, the attorney's state bar complaints relate to fee arrangements, practicing

15  in other jurisdictions on small matters, and one count of in-person solicitation.

16  While improper, none of these complaints suggest the attorney engaged in any

17  fraud, misappropriation, or intentional dishonesty.

18        Both letters also deceive consumers by displaying an abuse of the judicial

19  process. To support Mr. Bai's claim he is a "victim," (Ex. 5), and that his "former

20  associate… stole everything from" him (Ex. 4), Mr. Bai attached his improperly

21  filed complaint showing he is the plaintiff in a lawsuit. Not legitimately. Mr. Jiang

22  first filed claims against Mr. Bai in state court on June 24, relating to the same

23  acrimonious dissolution Mr. Bai's complaint arises out of. See Concurrently filed

24  Notice of Related Claims. Instead of filing a *compulsory* cross-complaint in the first

25  case, Mr. Bai wasted judicial resources by filing a new lawsuit in violation of

26  California Code of Civil Procedure § 426.30. He started circulating the letters four

27  days later. The caption on the improperly filed complaint reads: "COMPLAINTS

28  REGARDING YUNLUN JIANG'S MISDEEDS." Mr. Bai also claims these

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. _____                    9

EX PARTE APPLICATION TO STOP AND
CORRECT BAI'S FALSE ADVERTISING
CAMPAIGN

1  "misdeeds… incur discrimination, hatred, and bigotries towards underrepresented
2  Chinese American communities."

3              3.    Mr. Bai's Misleading Letters were Material

4              Mr. Bai's misrepresentations about the "danger" of the surrogate mothers, the
5  security of the client funds, the identity of PSUSA, and propriety and character of
6  the PSUSA business owner are all material because they likely dissuade aspiring
7  parents and referral businesses from working with PSUSA. Deception is material if
8  "it is likely to influence the purchasing decision." *Southland Sod Farms*, 108 F.3d
9  at 1139 (9th Cir. 1997). Mr. Bai also presumably sent these letters to clients and
10 surrogates precisely because he believes they are material and can drum up business
11 for his new venture.

12             4.    While Not Required, PSUSA Can Show Injury and Causation

13             A "'competitor need not prove injury when suing to enjoin'" false
14 advertising under the Lanham Act, and need not even "raise a triable issue as to
15 causation." *Southland Sod Farms*, 108 F.3d at 1145 (9th Cir. 1997). Also, as
16 discussed above, the letters contain literally false and intentional misleading
17 statements. Where an advertisement is literally false or intentionally misleading,
18 there is a presumption of consumer deception and the burden shifts to the defendant
19 to prove otherwise. *Harper House Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209
20 (9th Cir. 1989).

21             Yet even at this early stage of litigation, PSUSA can show customers were
22 deceived by Mr. Bai's letters. A law firm and surrogacy clinic both reached out
23 with questions regarding the status of the trust account. Through discovery, PSUSA
24 will show the full extent of Mr. Bai's deception. Mr. Bai also caused his letters to
25 enter interstate commerce. He sent the letters electronically through interstate
26 means, and presumably sent them to many of PSUSA's actual and prospective
27 customers, many of which are international and out-of-state individuals. Jiang
28 Decl., ¶ 3.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. _____          10          EX PARTE APPLICATION TO STOP AND
                                              CORRECT BAI'S FALSE ADVERTISING
                                              CAMPAIGN

### C.    The Other Factors Also Warrant Injunctive Relief

Injunctive relief is uncontroversial where false advertisements disparage a competitor. In *SuccessFactors, Inc. v. Softscape, Inc.*, the court granted a temporary restraining order and subsequent preliminary injunction to stop an email sent to Success Factors, Inc.'s actual and prospective customers entitled "SuccessFactors Failures and Problems." 544 F. Supp. 2d 975, 977 (N.D. Cal. 2008). After the Court determined that plaintiff showed a likelihood of success on the merits, it found irreparable harm in the form of "immeasurable loss to [plaintiff's] relationships with actual and prospective customers." *Id.* at 983. The same is true here.

The balance of equities also tips in PSUSA's favor, because there is no equitable reason why Mr. Bai should be permitted to continue tarnishing PSUSA's goodwill with lies and misleading innuendos. Mr. Bai has no constitutional right to deceive consumers for commercial advantage. See *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980)(Holding that false or misleading commercial speech is not protected by the First Amendment). Also, the minor embarrassment of a retraction letter does not outweigh PSUSA's interest in restoring its goodwill, and aspiring parents' interest in being assured that the health and safety of their surrogate mothers are not endangered and that their trust funds are not being misappropriated.

Finally, clearing up consumer deception is within the public interest. Indeed, the Federal Trade Commission acts on this exact same premise, and is entitled to order corrective advertising from defendants in appropriate cases. *Warner–Lambert Co. v. FTC*, 562 F.2d 749, 771 (D.C. Cir. 1977).

### D.    Correcting Mr. Bai's Deception about the Safety of the Surrogates and the Identity of Both Businesses is Necessary

PSUSA's proposed retraction letter remedies Mr. Bai's deception that "Your surrogate mothers are in danger." Injunctions ordering corrective advertising are particularly appropriate in cases where consumers are deceived as to health and

1  safety claims. See *Church & Dwight Co., Inc.*, 843 F.3d at 61 (2nd Cir.

2  2016)(Ordering corrective notices to remedy false claims about a home pregnancy

3  test); *Warner–Lambert Co.*, 562 F.2d at 711 (D.C. Cir. 1977)(Ordering corrective

4  ads to remedy an ad campaign that mislead consumers into believing product could

5  cure the common cold); *Rhone–Poulenc Rorer Pharmaceuticals, Inc.*, 93 F.3d at

6  516 (8th Cir. 1996)(Ordering corrective ads to remedy false claims that two

7  medications could be indiscriminately substituted). The proposed retraction letter

8  remedies Mr. Bai's original deception by stating that "I have no reason to believe

9  that the health and safety of surrogate mothers is compromised at either business."

10      The proposed retraction letter also remedies Mr. Bai's deception regarding

11  the identity of the two competing businesses now in existence, which are both

12  related to the original Pacific Surrogacy, LLC. In a trademark infringement case

13  where consumers were confused about the identity of two similarly designed

14  Mexican restaurants, a corrective advertising order was also warranted. *Taco

15  Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1126 (5th Cir. 1991), aff'd sub

16  nom. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). The federal

17  wordmark for "Pacific Surrogacy" (Reg. No. 5804128) is owned by Mr. Jiang and

18  not Mr. Bai. Nevertheless, to further remedy consumer confusion regarding the

19  identity of these two competing businesses, Mr. Jiang and PSUSA hereby state they

20  will agree to a consent decree in which both Mr. Jiang and Mr. Bai agree to never

21  again use the "Pacific Surrogacy" wordmark in commerce.

22  **IV.    CONCLUSION**

23      For the foregoing reasons, PSUSA's application for a temporary restraining

24  order prohibiting further false advertising from Mr. Bai and his agents' and

25  requiring Mr. Bai to send retraction letters to the recipients of his July 1 and 3

26  letters should be granted. If the corrective retraction letter is denied, PSUSA

27  alternatively seeks expedited discovery on all of Mr. Bai's communications

28  concerning or referencing PSUSA or its owner since June 1, 2019 to ascertain the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. _____            12            EX PARTE APPLICATION TO STOP AND
CORRECT BAI'S FALSE ADVERTISING
CAMPAIGN

1   extent of Mr. Bai's deception and mitigate its damages.

2

3

4   Dated:  July 30, 2019                     Respectfully submitted,

5                                             **ARENT FOX LLP**

6

7   By: _____

8       Malcolm S. McNeil
        Ismael Bautista, Jr.
9       Stefan Bogdanovich
        Attorneys for Plaintiffs
10      PACIFIC SURROGACY USA, LLC and
        YULUN JIANG

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. _____                    13          EX PARTE APPLICATION TO STOP AND
                                                        CORRECT BAI'S FALSE ADVERTISING
                                                        CAMPAIGN

# EXHIBIT 1



# EXHIBIT 2

## RESOLUTION OF PACIFIC SURROGACY, LLC.
## FOR DISSOLUTION OF COMPANY

The undersigned members of **PACIFIC SURROGACY, LLC.**, a California limited liability company (the "Company"), acting by unanimous written consent as authorized by the Operating Agreement do hereby adopt the following resolutions effective June 17, 2019:

**WHEREAS**, the Company has determined that it is in the best interest to wind down and dissolve the Company;

**WHEREAS**, pursuant to Paragraph 8.1 of the Company's Operating Agreement, or such other applicable provisions, the Company shall be dissolved, its assets disposed of, and its affairs wound up upon the resolution of the Members entitled to vote on its dissolution;

**WHEREAS**, the Managers Yulun Jiang and Haotian Bai shall execute the Certificate of Dissolution and file said document with the California Secretary of State;

**WHEREAS**, the Manager Yulun Jiang shall be responsible for the wind up of the Company;

**RESOLVED**, that the Members of the Company hereby unanimously authorize, approve and adopt the dissolution of the Company.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be duly executed as of the date first written above.

Dated: June ⎯⎯⎯, 2019

**YULUN JIANG**

By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Yulun Jiang, Member

**HAOTIAN BAI**

By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Haotian Bai, Member

**Company: PACIFIC SURROGACY, LLC.**

By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Yulun Jiang, Manager

By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Haotian Bai, Manager

| Secretary of State **Certificate of Cancellation Limited Liability Company (LLC)** | **LLC-4/7** |

**IMPORTANT — Read Instructions before completing this form.**

There is **No Fee** for filing a Certificate of Cancellation

**Copy Fees –** First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

This Space For Office Use Only

| 1.  **Limited Liability Company Name** (Enter the exact name of the LLC as it is recorded with the California Secretary of State) | 2.  **12-Digit Secretary of State File Number** |
|---|---|
| Pacific Surrogacy, LLC. | **201819710525** |

3. **Dissolution** (California LLCs ONLY: Check the box if the vote to dissolve was made by the vote of **ALL** the members.)

[✓] The dissolution was made by a vote of **ALL** of the members of the California Limited Liability Company.

**Note:** If the above box is not checked, a **Certificate of Dissolution** (Form LLC-3) must be filed prior to or together with this Certificate of Cancellation. (California Corporations Code section 17707.08(a).)

4. **Tax Liability Statement** (Do not alter the Tax Liability Statement.)

All final returns required under the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

5. **Cancellation Statement** (Do not alter the Cancellation Statement.)

Upon the effective date of this Certificate of Cancellation, the Limited Liability Company's registration is cancelled and its powers, rights and privileges will cease in California.

6. **Read and Sign Below** (**See instructions for signature requirements.** Do not use a computer generated signature.)

By signing this document, I certify that the information is true and that I am authorized by California law to sign.

| | |
|---|---|
| _____<br>Signature | Yulun Jiang<br>Type or Print Name |
| _____<br>Signature | Haotian Bai<br>Type or Print Name |
| _____<br>Signature | _____<br>Type or Print Name |



**Secretary of State**
**Business Programs Division**
Business Entities, P.O. Box 944228, Sacramento, CA 94244-2280

# Mail Submission Cover Sheet

**Instructions:**

- Complete and include this form with your submission. **This information only will be used to communicate with you in writing about the submission**. This form will be treated as correspondence and will not be made part of the filed document.
- Make all **checks or money orders** payable to the Secretary of State.
- Do not include a $15 counter fee when submitting documents by mail.
- Standard processing time for **submissions** to this office is approximately 5 business days from receipt. All **submissions** are reviewed in the date order of receipt. For updated processing time information, visit www.sos.ca.gov/business/be/processing-times.

**Optional Copy and Certification Fees:**

- If applicable, include optional copy and certification fees with your submission.
- For applicable copy and certification fee information, refer to the instructions of the specific form you are submitting.

**Contact Person:** (Please type or print legibly)

First Name: Yulun                                    Last Name: Jiang

Phone (optional): (626)826-7965

**Entity Information:** (Please type or print legibly)

Name: Pacific Surrogacy, LLC.

Entity Number (if applicable): 201819710525

Comments: Enclosed please find the "Certificate of Cancellation" (Form LLC-4/7) for the business entity

Pacific Surrogacy, LLC. The decision was made by ALL the Members. We ask that a conformed

copy be sent back to our office. Thank you.

**Return Address:** For written communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address.

Name:          ⌈Yulun Jiang                          ⌉

Company:       Pacific Surrogacy, LLC.

Address:       930 Roosevelt, Suite 210

City/State/Zip: ⌊Irvine, CA 92620                    ⌋

| Secretary of State Use Only | |
|---|---|
| T/TR: | |
| AMT REC'D: | $ |

Exh 2, Page 20

Doc Submission Cover - OBE (Rev. 09/2016)

MINUTES OF LLC. MEETING
for
# PACIFIC SURROGACY, LLC.

A Meeting for **Pacific Surrogacy, LLC.**, a California limited liability company ("Company") was held on June 1⁊, 2019 at 3:30 AM/PM at the location of 930 Roosevelt, Irvine, California 92620.

The following members were present at this meeting:

Yulun Jiang

Haotian Bai

The following other people were present at this meeting:

NONE

1. The Meeting was called to order. It was determined that a quorum was present either in person or by proxy, and the meeting could conduct business.
2. The Secretary determined and reported that notice of the meeting had been properly given or waived by Members in accordance with the Operating Agreement or Company resolution.
3. A motion was made and carried, and the Secretary was ordered to attach the documentation (if any) or the appropriate affidavit of mailing of notice or waiver of notice to the meeting minutes. If no notice is attached, all Members present agreed that proper notice of the meeting has been given.
4. **Agenda #1:** Whereas, a proposed resolution to wind down and dissolve the Company was brought before the Members and presented at the meeting. Motion was made to approve the dissolution of the Company, and motion was duly made and seconded.
5. The documents presented at the meeting was as follows:
   a. Resolution for the Dissolution of the Company
   b. Certificate of Cancellation (Form LLC-4/7)
6. **RESOLVED**: The resolution to wind down and dissolve the Company was approved by unanimous vote.

*** SIGNATURE PAGE TO FOLLOW ***

There being no further business to discuss, upon motion by unanimous decision and carried, the meeting was adjourned.

Dated: June 17, 2019

Member name:                          Member signature:

Yulun Jiang

Haotian Bai

Signature of Secretary of this meeting that documented this form:

Yulun Jiang                           Dated: 06/17/19

# EXHIBIT 3

**(Video in mp4 format, filed on a USB drive
pursuant to Local Rule 5-4.2(b)(1))**

# VIDEO TO BE FILED SEPARATELY

# EXHIBIT 4

July 1, 2019

Dearest Client and Partners,

   My name is Haotian Bai and I'm a U.S. Army veteran who served two combat tours in Afghanistan. I was also the former co-founder and co-owner of Pacific Surrogacy, LLC (PS). My company had undergone a series course of events since the mid of June and it was illegally canceled as of June 19th. I'm writing in a strong sense of urgency: Your surrogate mothers are in danger, so is your trust fund.

Pacific Surrogacy, LLC is gone, so are your retainer agreements with PS. In short, your surrogate mothers are not in good hands. My former associate who stole everything from me created a new company named Pacific Surrogacy USA, LLC (PSUSA). Please be aware this is a brand-new entity that has nothing to do with PS. They will NOT be responsible, should anything happen to the surrogates. I created PS from scratch and I can responsibly tell you, they have neither expertise nor experience to manage your surrogate mothers. The complaints from surrogate mothers are in Appendix A.

The Safety of your money deposited in the trust account is questionable, too. The attorney-client trust account was set up by CHH Law, PC. I believe many of you had one of their lawyers to draft and review the surrogacy agreements. The California Bar has filed a formal complaint against one of the main attorneys on May 28, 2019, in which this person is accused of 15 counts of professional misconduct. He was also the one who aided and abetted the plot that created PSUSA. The public record is attached in Appendix B.

In hindsight, I cared less about personal loss. However, it is people like my former associate who make this country more divided and intolerant, it is various misdeeds as he committed incur discrimination, hatred, and bigotries towards underrepresented Chinese American communities. The United States has always been a country of the immigrants, for the immigrants, and by the immigrants. In fact, half of the army were foreigners when we fought and won the Revolutionary War in 1776. I regretted and saddened by his misdeeds that put on an extra label of stigma on Chinese American owned businesses.

I have formally filed a lawsuit against my former associate's misdeeds including conversion, breach of fiduciary duty, accounting, unjust enrichment, declaratory relief, and unfair competition. The full detail can be found in Appendix C. Thanks to our judicial system, I will receive a fair and unbiased jury trial. While justice will serve one day, I want to make sure that your surrogates are healthy and sound, and your money is in good hands.

Warmest regards,

Haotian Bai

2019 年 7 月 1 日

尊敬的客户和合作方，

　　我叫白昊天，我是一名美国陆军退役的老兵，曾经在阿富汗执行过两次战斗任务。我也是太平洋辅助生育有限责任公司的创始人和持有人。我的公司从六月中旬开始经历了一系列调整，在 6 月 19 被非法的取消掉。我带着强烈地急迫性，想告诉你们：你们的代孕妈妈和信托账户的钱岌岌可危。

　　太平洋辅助生育有限责任公司没有了，你们之前所签的准父母合作协议也随之失效了。简单说，你们的代母现在并没有被管理好。我的前共事在事情发生的一个月前建立了"太平洋辅助生育 USA 有限责任公司，并偷走了前太平洋的所有。请注意，这个公司和前太平洋没有任何关系，所以如果代母出现了任何状况，它并不会负法律责任。太平洋从无到有是我一手创建的，现在我可以很负责任的告诉你，无论从经验还是技术上，他们都无法经营和管理好代母们。我收集了一些代母的抱怨，并放在了附录 A

　　你们存在信托账户里的钱也是需要额外注意的；信托账户的持有法人，CHH PC 里面的律师也是帮大多数客户起草和审阅合同的。加州法律协会在 5 月 28 日正式在律师协会法庭起诉 CHH 的主要律师之一，并控诉了他 15 项职业不规范罪名。这份文件是在律师协会的官网公开的，我也在信的附录 B 里附上了原文件和连接。

　　回首望去，我并不太在乎个人的损失。但是，正式我前共事这种人让美国社会更分裂，更排外；正式他的种种罪行让社会对本身就已经失去声音的美国华人更加歧视，憎恨，和不兼容。美国是一个移民有、移民享、移民治的政府。打赢美国独立战争的军队更是有一半以上是非出生在美国的移民。我共事的行为为华人商业在美国的地位抹上了一层臭名，令我感到非常懊恼和难过。

　　我已经向我的前共事提出诉讼，并已经被加州橙县最高法院接受。指控包括资产和知识产权的转移、违背信托义务、清算公司财务、不当得利、宣告性救济和不公平竞争。整条故事线和详细均在附录 C。我相信我们健全的司法系统会给我一个公正并无偏见的陪审团，并带来最后的公道。与此同时，我会尽自己的全力帮助你们保障代母的健康和资金的安全。

此致

　　　　　　　　　敬礼
　　　　　　　　　白昊天

APPENDIX A: SURROGATE COMPLAINTS







APPENDIX B: CHH LAW Complaints by California Bar
Source: http://members.calbar.ca.gov/fal/Licensee/
Detail/280454

# Public Matter

| | |
|---|---|
| 1 | STATE BAR OF CALIFORNIA |
|   | OFFICE OF CHIEF TRIAL COUNSEL |
| 2 | MELANIE J. LAWRENCE, No. 230102 |
|   | INTERIM CHIEF TRIAL COUNSEL |
| 3 | MIA R. ELLIS, No. 228235 |
|   | ASSISTANT CHIEF TRIAL COUNSEL |
| 4 | DREW MASSEY, No. 244350 |
|   | SUPERVISING ATTORNEY |
| 5 | ANGIE ESQUIVEL, No. 286432 |
|   | SENIOR TRIAL COUNSEL |
| 6 | 845 South Figueroa Street |
|   | Los Angeles, California 90017-2515 |
| 7 | Telephone: (213) 765-1080 |

**FILED** *48*

5/28/2019

**STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES**

8

9                              STATE BAR COURT

10                    HEARING DEPARTMENT - LOS ANGELES

11

12   In the Matter of:                )   Case No.  **SBC-19-O-30244**
                                       )
13   KEVIN LIU,                        )   NOTICE OF DISCIPLINARY CHARGES
                                       )
14   No. 280454,                       )   OCTC Case Nos. [16-O-12098, 16-O-13444,
                                       )   16-O-13589, 16-O-15584 and 17-O-00092]
15                                     )
     A Member of the State Bar.        )
16

17                    **NOTICE - FAILURE TO RESPOND!**

18   **IF YOU FAIL TO FILE A WRITTEN ANSWER TO THIS NOTICE
     WITHIN 20 DAYS AFTER SERVICE, OR IF YOU FAIL TO APPEAR AT**
19   **THE STATE BAR COURT TRIAL:**

20   **(1)  YOUR DEFAULT WILL BE ENTERED;**
     **(2)  YOUR STATUS WILL BE CHANGED TO INACTIVE AND YOU**
21   **      WILL NOT BE PERMITTED TO PRACTICE LAW;**
     **(3)  YOU WILL NOT BE PERMITTED TO PARTICIPATE FURTHER IN**
22   **      THESE PROCEEDINGS UNLESS YOU MAKE A TIMELY MOTION**
     **      AND THE DEFAULT IS SET ASIDE, AND;**
23   **(4)  YOU SHALL BE SUBJECT TO ADDITIONAL DISCIPLINE.**
     **      SPECIFICALLY, IF YOU FAIL TO TIMELY MOVE TO SET ASIDE**
24   **      OR VACATE YOUR DEFAULT, THIS COURT WILL ENTER AN**
     **      ORDER RECOMMENDING YOUR DISBARMENT WITHOUT**
25   **      FURTHER HEARING OR PROCEEDING.  SEE RULE 5.80 ET SEQ.,**
     **      RULES OF PROCEDURE OF THE STATE BAR OF CALIFORNIA.**

26

27

28
                                    -1-

kwiktag®    241 073 095

1   The State Bar of California alleges:

2                             JURISDICTION

3      1.  Kevin Liu ("respondent") was admitted to the practice of law in the State of

4   California on December 9, 2011, was a member at all times pertinent to these charges, and is

5   currently a member of the State Bar of California.

6                             COUNT ONE

7                Case No. 16-O-12098
        Former Rules of Professional Conduct, Rule 1-300(B)

8       [Unauthorized Practice of Law in Other Jurisdiction]

9      2.   From in or about June 2015 through in or about December 2015, respondent

10   practiced law in Wyoming by agreeing to perform pre-litigation and loan modification work on

11   behalf of his clients, Mariano and Norma Fonseca, in connection with their property located in

12   Wyoming, when to do so was in violation of the regulations of the profession in Wyoming,

13   namely, Wyoming Rules of Professional Conduct 5.5, in willful violation of the former Rules of

14   Professional Conduct, rule 1-300(B).

15                             COUNT TWO

16                Case No. 16-O-12098
        Former Rules of Professional Conduct, Rule 4-200(A)

17                   [Illegal Fee]

18      3.  From on or about June 2015 to October 2015, respondent entered into an agreement

19   for, charged and/or collected from Wyoming residents Mariano and Norma Fonseca a fee of

20   approximately $2,400 to perform legal services that were illegal because respondent was not

21   entitled to practice law in Wyoming, in willful violation of the former Rules of Professional

22   Conduct, rule 4-200(A).

23   //

24   //

25   //

26   //

27   //

28

Exh 4, Page 30

COUNT THREE

Case No.16-O-13444
Former Rules of Professional Conduct, Rule 1-300(B)
[Unauthorized Practice of Law in Other Jurisdiction]

4.  From on or about March 5, 2015 through in or about September 16, 2015, respondent practiced law in Texas by agreeing to perform pre-litigation and loan modification work on behalf of his client, Paul Benson in connection with his property located in Texas, when to do so was in violation of the regulations of the profession in Texas, namely, Texas Disciplinary Rules of Professional Conduct 5.05, in willful violation of former Rules of Professional Conduct, rule 1-300(B).

COUNT FOUR

Case No. 16-O-13444
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

5.  From on or about March 5, 2015 through on or about June 28, 2015, respondent entered into an agreement for, charged and/or collected from Texas resident Paul Benson a fee of approximately $3,600 to perform legal services that were illegal because respondent was not entitled to practice law in in Texas, in willful violation of the former Rules of Professional Conduct, rule 4-200(A).

COUNT FIVE

Case No. 16-O-13589
Business and Professions Code section 6106.3(a)
[Violation of Civil Code section 2944.6(a)]

6.  On or about July 31, 2014, respondent negotiated, arranged, or offered to perform a mortgage loan modification or other form of mortgage loan forbearance for a fee paid by a borrower and client, namely Faye Bon Shirazi, in advance of any service and thereafter entered into a fee agreement with the client without providing the client, prior to entering into that agreement, the following as a separate written statement, in not less than 14-point bold type, as required by Civil Code section 2944.6(a), in willful violation of Business and Professions Code section 6106.3:

-3-

It is not necessary to pay a third party to arrange for a loan modification or other form of forbearance from your mortgage lender or servicer. You may call your lender directly to ask for a change in your loan terms. Nonprofit housing counseling agencies also offer these and other forms of borrower assistance free of charge. A list of nonprofit housing counseling agencies approved by the United States Department of Housing and Urban Development (HUD) is available from your local HUD office or by visiting www.hud.gov.

## COUNT SIX

Case No. 16-O-13589
Former Business and Professions Code, section 6106.3(a)
[Violation of Civil Code § 2944.7(a)(1) – Illegal Advanced Fee]

7. On or about August 4, 2014, respondent agreed to negotiate and perform a mortgage loan modification or other mortgage loan forbearance for a fee for his client, Faye Bon Shirazi, and on or about August 4, 2014 received approximately $3,300 from the client before respondent had fully performed each and every service respondent had been contracted to perform or represented to the client that respondent would perform, in violation of Civil Code, section 2944.7, and in willful violation of former Business and Professions Code, section 6106.3.

## COUNT SEVEN

Case No. 16-O-13589
Business and Professions Code, section 6068(a)
[Violation of Civil Code § 2944.7(a)(1)]

8. On or about August 4, 2014, Faye Bon Shirazi hired respondent to attempt to negotiate a mortgage loan modification or other mortgage loan forbearance for an advance fee. On or about August 4, 2014, respondent received approximately $3,300 from the client before respondent had fully performed each and every service respondent had been contracted to perform or represented to the client that respondent would perform, in violation of Civil Code, section 2944.7, and in willful violation of Business and Professions Code, section 6068(a).

//

//

//

//

-4-

1

COUNT EIGHT

2

Case No. 16-O-13589
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

3

4     9.   On or about August 4, 2014, Faye Bon Shirazi hired respondent to attempt to

5   negotiate a mortgage loan modification or other mortgage loan forbearance for an advance fee.

6   On or about August 4, 2014, respondent received approximately $3,300 from the client before

7   respondent had fully performed each and every service respondent had been contracted to

8   perform or represented to the client that respondent would perform, in willful violation of the

9   former Rules of Professional Conduct, rule 4-200(A).

10

COUNT NINE

11

Case No. 16-O-13589
Former Rules of Professional Conduct, Rule 1-400(C)
[Solicitation of a Prospective Client]

12

13     10.   In or about July of 2014, respondent made a solicitation, or allowed one to be

14   made on respondent's behalf by a representative of respondent's law firm, Pinepoint Law Group

15   ("PLG") to Faye Bon Shirazi, a prospective client, by communication delivered by telephone,

16   with whom neither respondent nor his law firm had any family or prior professional

17   relationship, in willful violation of former Rules of Professional Conduct, rule 1-400(C).

18

COUNT TEN

19

Case No.16-O-15584
Former Rules of Professional Conduct, Rule 1-300(B)
[Unauthorized Practice of Law in Other Jurisdiction]

20

21     11.   From on or about October 30, 2013 through in or about December of 2013,

22   respondent practiced law in Wisconsin by agreeing to perform pre-litigation and loan

23   modification work on behalf of his client, Wanda Soto in connection with her property located in

24   Wisconsin, when to do so was in violation of the regulations of the profession in Wisconsin,

25   namely, Wisconsin Rules of Professional Conduct 5.5, in willful violation of former Rules of

26   Professional Conduct, rule 1-300(B).

27   //

28

-5-

1    COUNT ELEVEN

2    Case No.16-O-15584
Former Rules of Professional Conduct, Rule 4-200(A)
3    [Illegal Fee]

4        12.    From on or about October 30, 2013 through December 11, 2013, respondent entered

5    into an agreement for, charged and/or collected from Wisconsin resident Wanda Soto a fee of

6    approximately $3,000 to perform legal services that were illegal because respondent was not

7    entitled to practice law in in Wisconsin, in willful violation of the former Rules of Professional

8    Conduct, rule 4-200(A).

9    COUNT TWELVE

10    Case No. 17-O-00092
Business and Professions Code section 6106.3(a)
11    [Violation of Civil Code section 2944.6(a)]

12        13.    On or about September 26, 2014, respondent negotiated, arranged, or offered to

13    perform a mortgage loan modification or other form of mortgage loan forbearance for a fee paid

14    by a borrower and client, namely Dennis Middleton, in advance of any service and thereafter

15    entered into a fee agreement with the client without providing the client, prior to entering into

16    that agreement, the following as a separate written statement, in not less than 14-point bold type,

17    as required by Civil Code section 2944.6(a), in willful violation of Business and Professions

18    Code section 6106.3:

19          It is not necessary to pay a third party to arrange for a loan modification
or other form of forbearance from your mortgage lender or servicer.
20    You may call your lender directly to ask for a change in your loan terms.
Nonprofit housing counseling agencies also offer these and other forms
21    of borrower assistance free of charge.  A list of nonprofit housing counseling
agencies approved by the United States Department of Housing and Urban
22    Development (HUD) is available from your local HUD office or by visiting
www.hud.gov.
23

24    //

25    //

26    //

27    //

28
-6-

1

## COUNT THIRTEEN

2

Case No. 17-O-00092
Former Business and Professions Code, section 6106.3(a)
3 [Violation of Civil Code § 2944.7(a)(1) – Illegal Advanced Fee]

4  14. On or about September 26, 2014, respondent agreed to negotiate and perform a

5 mortgage loan modification or other mortgage loan forbearance for a fee for his client, Dennis

6 Middleton, and between on or about October 1, 2014 and November 15, 2014 received

7 approximately $3,600 from the client before respondent had fully performed each and every

8 service respondent had been contracted to perform or represented to the client that respondent

9 would perform, in violation of Civil Code, section 2944.7, and in willful violation of former

10 Business and Professions Code, section 6106.3.

11

## COUNT FOURTEEN

12

Case No. 17-O-00092
Business and Professions Code, section 6068(a)
13 [Violation of Civil Code § 2944.7(a)(1)]

14  15. On or about September 26, 2014, Dennis Middleton hired respondent to attempt to

15 negotiate mortgage loan modification or other mortgage loan forbearance for an advance fee.

16 Between on or about October 1, 2014 and November 15, 2014, respondent received

17 approximately $3,600 from the client before respondent had fully performed each and every

18 service respondent had been contracted to perform or represented to the client that respondent

19 would perform, in violation of Civil Code, section 2944.7, and in willful violation of Business

20 and Professions Code, section 6068(a).

21

## COUNT FIFTEEN

22

Case No. 17-O-00092
Former Rules of Professional Conduct, Rule 4-200(A)
23 [Illegal Fee]

24  16. On or about September 26, 2014, Dennis Middleton hired respondent to attempt to

25 negotiate mortgage loan modification or other mortgage loan forbearance for an advance fee.

26 Between on or about October 1, 2014 and November 15, 2014, respondent received

27 approximately $3,600 from the client before respondent had fully performed each and every

28

-7-

1   service respondent had been contracted to perform or represented to the client that respondent

2   would perform, in violation of Civil Code, section 2944.7, in willful violation of the former

3   Rules of Professional Conduct, rule 4-200(A).

### NOTICE - INACTIVE ENROLLMENT!

**YOU ARE HEREBY FURTHER NOTIFIED THAT IF THE STATE BAR COURT FINDS, PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6007(c), THAT YOUR CONDUCT POSES A SUBSTANTIAL THREAT OF HARM TO THE INTERESTS OF YOUR CLIENTS OR TO THE PUBLIC, YOU MAY BE INVOLUNTARILY ENROLLED AS AN INACTIVE MEMBER OF THE STATE BAR.    YOUR INACTIVE ENROLLMENT WOULD BE IN ADDITION TO ANY DISCIPLINE RECOMMENDED BY THE COURT.**

### NOTICE - COST ASSESSMENT!

**IN THE EVENT THESE PROCEDURES RESULT IN PUBLIC DISCIPLINE, YOU MAY BE SUBJECT TO THE PAYMENT OF COSTS INCURRED BY THE STATE BAR IN THE INVESTIGATION, HEARING AND REVIEW OF THIS MATTER PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6086.10.**

Respectfully submitted,

THE STATE BAR OF CALIFORNIA
OFFICE OF CHIEF TRIAL COUNSEL

DATED: __5/28/19__          By: _____
                               Angie Esquivel
                               Deputy Trial Counsel

-8-

1 **DECLARATION OF SERVICE BY CERTIFIED MAIL**

2 **CASE NUMBER:**

3 **(OCTC Case Nos.: 16-O-12098, 16-O-13444, 16-O-13589, 16-O-15584, 17-O-00092)**

4     I, the undersigned, over the age of eighteen (18) years, whose business address and place
of employment is the State Bar of California, 845 South Figueroa Street, Los Angeles, California
5 90017, declare that I am not a party to the within action; that I am readily familiar with the State
Bar of California's practice for collection and processing of correspondence for mailing with the
6 United States Postal Service; that in the ordinary course of the State Bar of California's practice,
correspondence collected and processed by the State Bar of California would be deposited with
7 the United States Postal Service that same day; that I am aware that on motion of party served,
service is presumed invalid if postal cancellation date or postage meter date on the envelope or
8 package is more than one day after date of deposit for mailing contained in the affidavit; and that
in accordance with the practice of the State Bar of California for collection and processing of
9 mail, I deposited or placed for collection and mailing in the City and County of Los Angeles, on
the date shown below, a true copy of the within

10

11 **NOTICE OF DISCIPLINARY CHARGES**

12 in a sealed envelope placed for collection and mailing as certified mail, return receipt requested,
Article No.: 9414 7266 9904 2111 0165 55, at Los Angeles, on the date shown below, addressed
13 to:

14 **Kevin Liu**
**801 S Garfield Ave Ste 338**
15 **Alhambra, CA 91801-4486**

16
in an inter-office mail facility regularly maintained by the State Bar of California addressed to:

17     **N/A**

18     I declare under penalty of perjury under the laws of the State of California that the
19 foregoing is true and correct. Executed at Los Angeles, California, on the date shown below.

20 DATED: May 28, 2019        Signed: _____
21                              Max Carranza
                             Declarant

22

23

24

25

26

27

28                              -1-

APPENDIX C: COMPLAINTS REGARDING YUNLUN JIANG'S MISDEEDS

**WHGC, P.L.C.**
Jeffrey C.P. Wang (SBN 144414)
*JeffreyWang@WHGCLaw.com*
Michael G. York (SBN 89945)
*MichaelYork@WHGCLaw.com*
G. Brent Sims (SBN 179397)
*BrentSims@WHGCLaw.com*
Kathleen E. Alparce (SBN 230935)
*KathleenAlparce@WHGCLaw.com*
1301 Dove Street, Suite 1050
Newport Beach, CA 92660
Tel. (949) 833-8483; Fax: (866) 881-5007

Attorneys for Plaintiff
HAOTIAN BAI

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/27/2019** at 12:33:53 PM

Clerk of the Superior Court
By Miriam Cruz,Deputy Clerk

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF ORANGE**

| | |
|---|---|
| HAOTIAN BAI, an individual;<br><br>Plaintiff<br><br>vs.<br><br>PACIFIC SURROGACY, LLC, a California Limited Liability Company; PACIFC SURROGACY USA, LLC, a California Limited Liability Company; YULUN JIANG, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | CASE NO. 30-2019-01079615-CU-BT-CJC<br><br>Judge Deborah Servino<br><br>**COMPLAINT FOR:**<br><br>1) **CONVERSION;**<br>2) **BREACH OF FIDUCIARY DUTY;**<br>3) **ACCOUNTING;**<br>4) **UNJUST ENRICHMENT;**<br>5) **DECLARATORY RELIEF;**<br>6) **UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

1.     Plaintiff HAOTIAN BAI (**"BAI"**) for his Complaint against Defendants **PACIFIC SURROGACY, LLC**, a California Limited Liability Company (**"PACIFIC"**); **PACIFC SURROGACY USA, LLC**, a California Limited Liability Company ("**PSUL**"), **YULUN JIANG**, ("**JIANG**"), and DOES 1-25, hereby bring his claims seeking relief, allege on personal knowledge as to all facts known to him, and on information and belief as to all other facts, as follows:

1

## JURISDICTION AND VENUE

2    2.    This Court has jurisdiction over the subject matter of this action in that the Defendants

3    **PACIFIC** and **PSUL** are both California Limited Liability Companies, organized under the laws of the

4    State of California, with their headquarters in Orange County.

5    3.    Defendant **JIANG** is an individual residing and/or conducting business in this state and

6    county. Venue is proper pursuant to California Code of Civil Procedure section 395.5 because the

7    Limited Liability Corporations are defendants herein, and are headquartered in Orange County. The

8    amount in controversy is in excess of the jurisdictional minimum.

9

## PARTIES

10    4.    Plaintiff **BAI** is an individual, and was a member, officer and founding member of

11    **PACIFIC**.

12    5.    Defendant **PACIFIC** is a Limited Liability Company, organized under the laws of the

13    State of California, with its principal place of business in Irvine, California.

14    6.    Defendant **PSUL** is a Limited Liability Company, organized under the laws of the State

15    of California, with its principal place of business in Irvine, California.

16    7.    Defendant **JIANG** is an individual who at all times relevant to this Complaint resides in

17    Irvine, CA.

18    8.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES

19    1 through 25, inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will

20    amend this Complaint to allege their true names and capacities when ascertained.

21    9.    Plaintiff is informed and believe and thereon alleges that at all times herein mentioned,

22    each of the defendants sued herein was the agent and employee of each of the remaining defendants

23    and was at all times acting within the purpose and scope of such agency and employment.

24

## GENERAL ALEGATIONS

25    10.    Defendant **PACIFIC** was organized on July 12, 2018 by **BAI** and **JIANG** on a 50/50

26    basis. **PACIFIC** was established to provide services to persons serving as surrogates, as outlined under

27    California Family Law section 7960, *et. seq*. **PACIFIC** retained skilled service providers, had the

28    proper licenses, proper facilities, expertise and knowledge on caring for and advising persons desiring

2

1    to provide these services.

2        11.    **PACIFIC** also had knowledge regarding compliance with state and federal laws and
3    complied with all California regulations, including HIPPA and other regulations.

4        12.    Both **BAI** and **JIANG** had invested substantial sums of money into **PACIFIC**, and
5    each was set to benefit from the continued successful operation of the center.

6        13.    **PACIFIC** operated utilizing cloud based business software. **PACIFIC** maintained
7    passwords and accounts. Among other things **PACIFIC** operated and maintained email accounts,
8    document files, excel spreadsheets, project management systems, client relationship management
9    documents and accounts on this system.

10        14.    **PACIFIC** also maintained under password and security codes confidential information
11    including but not limited to, surrogate applications, medical information, personal background checks,
12    psychological evaluation reports, legal contracts, receipts and accounting.

13        15.    **PACIFIC** also maintained under password and security codes, confidential information
14    including but not limited to, client relationship and management folders, 1099 documents for surrogate
15    recruits, management tools, documents surrogate applications, Customer Relationship Management
16    technology information, medical information, personal background checks, psychological evaluation
17    reports, legal contracts, receipts and accounting, as well as payroll and confidential employment
18    information.

19        16.    **PACIFIC** also maintained social media accounts, including Facebook, Instagram,
20    Twitter, WeChat and Youtube. It maintained websites and MS suite one drives including information
21    that was used in business and provided an economic advantage over competitors who did not know or
22    use it.

23        17.    All of this information was maintained by **PACIFIC** who, at all relevant times,
24    maintained all of this information utilizing security protocols and passwords designed to keep such
25    information private and secure.

26        18.    **PACIFIC** also maintained physical property, including computer monitors, business
27    equipment, and office furnishings.

28        19.    **PACIFIC** charged customers a fee for surrogacy services. This initial fee would be

1 | taken directly by **JIANG** and wired into a bank account located in China on behalf of **PACIFIC.**

2 |  20.    In addition, **PACIFIC** customers created a trust account to hold funds for their

3 | continued care throughout the scope of their surrogacy. In or around the beginning of June 2019, this

4 | trust account contained over $1,000,000.

5 |  21.    Unknown to **BAI**, or other persons at **PACIFIC**, **JIANG** prepared, filed and organized

6 | a Limited Liability Company called **PACIFIC SURROGACY USA, LLC ("PSUL").** Paperwork for

7 | this LLC was filed on or about May 26, 2019 with the California Secretary of State.

8 |  22.    On or about June 16, 2019, Plaintiff **BAI** was on a plane returning from Hawaii.

9 |  23.    **JIANG** waited until **BAI** boarded the plane, and then, without authorization,

10 | permission, notice, or provocation began destroying, stealing, transferring and/or hiding assets

11 | belonging to **PACIFIC.**

12 |  24.    On June 16, 2019, at or about 4:30 p.m., **BAI** arrived in Los Angeles. At about this

13 | time, **BAI** received an electronic message from **JIANG** stating that **JIANG** had seen what **BAI** had

14 | done wrong, and that **JIANG** knew **BAI**'s secrets. **JIANG** informed **BAI** that "resistance was futile"

15 | and that **BAI, JIANG**, and **PACIFIC** should have a parting of the ways. **BAI** understood this message

16 | to be a threat and an attempt to extort **BAI**'s share of the business.

17 |  25.    At or about 5:00 p.m. on Sunday, June 16, 2019, **JIANG** posted on WeChat that

18 | **PACIFIC** would be closing. **BAI** had no foreknowledge of this closing, and had not given his consent

19 | or approval to this action.

20 |  26.    On or about this day, without **BAI'S** knowledge, **JIANG** prepared letters of resignation

21 | for the employees of **PACIFIC**.

22 |  27.    Following this, **BAI** discovered that all of the passwords, accounts, social media,

23 | websites, emails, and client information had been deleted, hidden, transferred, or taken over by **JIANG**

24 | and/or **PSUL**.

25 |  28.    **PACIFIC**'s websites had been removed and transferred, and rendered unavailable.

26 |  29.    Plaintiff no longer had access to any of **PACIFIC's** documents, accounts, payroll

27 | records, electronic information, cloud based programs, or information, ledgers, contracts, vendor

28 | agreements, billings, or any other documents of the **LLC**, in direct violation of the operating

1  agreement.

2      30.    On or about Monday, June 17, 2019, **JIANG** contacted **BAI** and informed him that all

3  of the papers were drawn up, and that **BAI** must sign them, or **JIANG** would release unfavorable and

4  embarrassing personal information, photographs and videos of **BAI**.

5      31.    As intended, **BAI**, a returned veteran suffering from PTSD, who had a family to protect,

6  felt intimidated and as a result, because of the threats and coercion of **JIANG**, documents were signed

7  for the cancellation of **PACIFIC**.

8      32.    At or about this time, **PSUL** began soliciting employees from **PACIFIC**. Contracts

9  were transferred to **PSUL**, and confidential and secret information had been made available to **PSUL.**

10      33.    On or about June 19, 2019, **JIANG** prepared a letter instructing **PACIFIC's** medical

11  coordinator to send to the medical facilities doing business with **PACIFIC**. This letter instructed the

12  providers to communicate with **PSUL** instead of **PACIFIC**, and providing the address of "930

13  Roosevelt" as **PSUSA, LLC**'s new address. All of **PACIFIC's** former information was to go to that

14  address.

15      34.    On or about June 20, 2018, **PSUL** and **JIANG** sent letters to all **PACIFIC's** employees

16  informing them that **PACIFIC** had closed and was terminating all of its employees.

17      35.    Subsequent to these events, **PSUL** and **JIANG** informed all **PACIFIC** employees that

18  they possessed embarrassing photographs and videos of **BAI**, and that **BAI** had terminated **PACIFIC.**

19  Throughout this time period, **BAI** was denied his rights pursuant to California Corporations Code

20  section 17704.10 and under the operating agreement.

21      36.    **KEVIN LIU ("LIU")** acted as an attorney in the formation and organization of

22  **PACIFIC**, and, as such, owed a duty of care and loyalty and was a fiduciary with respect to **PACIFIC**,

23  At that time, **LIU** understood that he was retained by the Company, and that **BAI** and **JIANG** were

24  equal stakeholders in the company. In addition, **LIU** was the personal attorney for **BAI** on unrelated

25  matters.

26      37.    On information and belief, in conjunction with **JIANG, LIU** assisted in the formation

27  of **PSUL**, with the knowledge that **PSUL** was organized to poach and ultimately take over business

28  from **PACIFIC** while squeezing **BAI** out of the business.

5

38.    **LIU** in conjunction with and under the direction of **JIANG**, informed employees of **PACIFIC**, that **BAI** had decided to terminate **PACIFIC** and that **BAI**'S actions had caused the employees not to receive their pay. In addition, **LIU** informed **PACIFIC** employees of embarrassing and harmful information concerning **BAI**.

39.    **LIU**, as an attorney for both **PACIFIC** and **BAI,** had a duty to provide both with his highest loyalty, and to avoid actions designed to damage either one, and to avoid retention in matters adverse to **PACIFIC** or **BAI**. Both **JIANG** and **LIU** understood the facts surrounding **LIU**'s retention by **PACIFIC** and **BAI.**

40.    **LIU**, in conjunction with **JIANG**, also worked to hide company assets, accounts, contracts, paperwork, payroll documents, vendor accounts, on-line presence and cloud accounts from **BAI**, all to **BAI**'S detriment, and with the goal of stealing business, assets and customers from **BAI** and from **PACIFIC.**

41.    At all relevant times herein, Defendants and each of them have wrongfully and unfairly kept **BAI** from examining corporate property, books, contracts, accounts, intellectual property, payroll accounts and ledgers. Such denial has allowed Defendants and each of them to continue their series of thefts, fraud, and wrongdoings as alleged herein.

42.    **JIANG** has also instructed personnel to change the names of **PACIFIC**'s social media accounts to that of **PSUL.**

43.    On information and belief, **BAI** alleges that Defendant **PSUL** was the alter-ego of Defendant **JIANG**, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that Defendant **JIANG** completely controlled, dominated, managed, and operated the other Defendants to suit his convenience.

44.    In conducting the actions herein alleged, **PSUL** was aware that **JIANG** owed fiduciary obligations to **PACIFIC**, and **BAI**, and set out consciously and deliberately to assist in the breach of those obligations, and in the theft of material belonging to **PACIFIC.**

///

///

**FIRST CAUSE OF ACTION**

**(CONVERSION)**

**As to JIANG, PSUL, and DOES 1-25**

45.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs of this Complaint, as though fully set forth herein.

46.    **PACIFIC** operated under an operating agreement, and a series of agreements that entitled **BAI** to 50% of **PACIFIC**'s profits, accounts, contracts, accounts receivable and inventory.

47.    Following the putative cancellation of **PACIFIC**, **BAI** had an ownership right to an immediate 50% distribution of all funds, assets, and property of **PACIFIC**, as well as all physical property, files, computers, office equipment and bank accounts of **PACIFIC.**

48.    Defendants and each of them intentionally and substantially interfered with **BAI'S** property by taking possession of items of personal property belonging to **BAI**; by preventing **BAI** from accessing accounts, and funds which by right should be his; and by refusing to disclose the location of other assets.

49.    **BAI** did not consent to these actions.

50.    As a result, **BAI** was harmed in that he was denied the use and access to his rightful property.

51.    That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

52.    Defendants' conduct as described herein constitutes "oppression, fraud, or malice" as those terms are defined in California Civil Code Section 3294, and Plaintiff is therefore entitled to punitive damages in an amount according to proof.

**SECOND CAUSE OF ACTION**

**(BREACH OF FIDUCIARY DUTY/CONSTRUCTIVE FRAUD)**

**As to JIANG and DOES 1-25**

53.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs of this Complaint, as though fully set forth herein.

54.    Defendant **JIANG** was a Manager and/or officer of **PACIFIC** in accordance with the **PACIFIC** operating agreement, and the actions of the parties. At all times relevant herein, **JIANG** had

1  a fiduciary duty to act in the best interests of **PACIFIC**, and to place the interests of **PACIFIC** above
2  his own, and avoid self-dealing.

3      55.    **JIANG** violated this duty by taking substantially all of the assets of **PACIFIC**, and
4  using those assets for his own use and the benefit of **PSUL.**

5      56.    He further violated this duty by self-dealing and setting up **PSUL** with the intent to
6  convert all of **PACIFIC's** property, poach all of **PACIFIC'S** employees and assume all of
7  **PACIFIC's** contracts.

8      57.    The scope and extent of **JIANG's** malfeasance is currently unknown in that **JIANG** has
9  precluded others from reviewing the books, contracts, documents, account information and other
10 property rightfully belonging to **PACIFIC**. As such, **JIANG** continues to plunder **PACIFIC's** assets,
11 customers and bank accounts with impunity.

12     58.    As a direct and proximate result of the breach of this duty, Plaintiff has been damaged
13 in an amount to be proven at trial.

14     59.    Defendants' conduct as described herein constitutes "oppression, fraud, or malice" as
15 those terms are defined in California Civil Code Section 3294, and Plaintiff is therefore entitled to
16 punitive damages in an amount according to proof.

17                              **THIRD CAUSE OF ACTION**
18                                  **(ACCOUNTING)**
19                             **AS TO JIANG and PACIFIC**

20     60.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs
21 of this Complaint, as though fully set forth herein.

22     61.    In accordance with the **PACIFIC** operating agreement, and the actions of the
23 PARTIES, **BAI** was entitled to 50% of **PACIFIC**'s profits, accounts, contracts, accounts receivable
24 and inventory.

25     62.    As a duty of the operating agreement involves, among other things, a duty to account
26 for all income, revenues and profits derived from Defendants' business. It is not clear that the remedy
27 at law would be as full, adequate and expeditious as it is in equity.

28     63.    Defendants have received and continue to receive, profits and revenues in connection

                                    8

1    with the operation of the surrogacy clinic.

2        64.    As a result of the operating agreement, and of the actions of the Defendants, Defendants

3    have received and are withholding money, a portion of which is due to Plaintiff.

4        65.    The amount of money due from Defendants to Plaintiff is unknown to Plaintiff and

5    cannot be ascertained without an accounting of the business receipts, inventory and accounts

6        66.    Plaintiff has demanded an accounting of the aforementioned receipts of the business, or

7    to the extent he has not demanded one, Defendants' actions have made it clear that such a demand

8    would be futile.

9                              **FOURTH CAUSE OF ACTION**

10                             **(UNJUST ENRICHMENT)**

11                             **As to all DEFENDANTS**

12        67.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

13    of this Complaint, as though fully set forth herein.

14        68.    As a result of the breaches by and wrongful acts of Defendants, Defendants have been

15    unjustly enriched at the expense of Plaintiff. Defendants have derived and continue to derive a benefit

16    from failing to perform their contractual obligations pursuant to the parties' business and company

17    agreements, from improperly utilizing Plaintiff's business equipment, accounts, and trade secrets, and

18    by secretly sabotaging Plaintiff's business and attempting to extort Plaintiff.

19        69.    Defendants are under an obligation to pay **BAI** forthwith all amounts by which they

20    have been unjustly enriched, in a sum to be determined at trial.

21                             **FIFTH CAUSE OF ACTION**

22                             **(DECLARATORY RELIEF)**

23                             **As to PACIFIC and PSUL**

24        70.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

25    of this Complaint, as though fully set forth herein.

26        71.    An actual and immediate controversy has arisen and now exists between Plaintiff and

27    Defendants concerning their rights and obligations of the individual parties with respect to the

28    **PACIFIC** operating agreement, the contracts entered into and still outstanding, both for services

1  PACIFIC, and those that **PACIFIC** was to provide, and the property of **PACIFIC**, including the
2  ongoing contracts, liabilities and benefits of the Defendants concerning the obligations and the
3  property, accounts and electronic information.

4      72.    As such, Plaintiff requests a judicial determination of the rights, privileges and
5  obligations of the parties with respect to these contracts.

6  **SIXTH CAUSE OF ACTION**
7  **(UNFAIR COMPETITION, BUSINESS & PROFESSIONS CODE 17200)**
8  **AS TO ALL DEFENDANTS**

9      73.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs
10  of this Complaint, as though fully set forth herein.

11      74.    The acts and conduct of Defendants as alleged above in this Complaint constitute
12  unfair, unlawful and/or fraudulent business acts or practices as defined by Cal. Bus.& Prof. Code
13  Section 17200, *et. seq.*

14      75.    Defendant's acts of unlawful, unfair, and fraudulent competition have caused harm to
15  competition, to consumers and to competitors. Defendants' acts have proximately caused damage to
16  persons having contracts with **PACIFIC**, to employees of **PACIFIC**, and to vendors of **PACIFIC**.

17      76.    In doing the things alleged herein, Defendants have violated HIPPA requirements,
18  violated contractual obligations and employment regulations, personally profited from others work and
19  have illegally and unfairly sought to steal a complete business from the Plaintiff.

20      77.    In addition, Defendants and each of them have wrongfully and unfairly kept **BAI** from
21  examining corporate property, books, contracts, accounts, intellectual property, payroll accounts and
22  ledgers. Such denial has allowed Defendants and each of them to continue their series of thefts, fraud,
23  and wrongdoings as alleged herein. Defendants' acts of so doing, in and of themselves, constitutes
24  unlawful, unfair, and fraudulent competition and have caused irreparable and incalculable injury to
25  **PACIFIC** and to **BAI**, and unless enjoined will continue. No adequate remedy exists at law for
26  Defendants' refusal to provide access to this material.

27      78.    In addition, Defendants' acts of unlawful, unfair, and fraudulent competition also have
28  caused irreparable and incalculable injury to **PACIFIC** and to **BAI**, and unless enjoined will cause

1  incalculable damage for which there is no adequate remedy at law.

2  **PRAYER FOR RELIEF**

3  **WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them as follows:

4  1.  For compensatory damages, disgorgement, and/or money, estimated to be, at a minimum,

5     $5,000,000;

6  2.  For prejudgment and post-judgment interest at the rate of interest under the law;

7  3.  For exemplary and punitive damages;

8  4.  For injunctive relief, allowing Plaintiff access to PACIFIC's books, accounts, electronic

9     accounts, payroll accounts, client files, vendor records and all of **PACIFIC's** documents;

10  5.  For injunctive relief, restoring all contracts, rights and property to **PACIFIC** to allow for a

11     lawful and fair winding up.

12  6.  For an accounting;

13  7.  For attorney's fees, expenses and costs incurred in pursuing the claims asserted herein,

14     against Defendants, jointly and severally, as may be provided by contract and/or law;

15  8.  For pre-judgment and post-judgment interest at the maximum allowable rate of interest

16     under the law; and

17  9.  For such other and further relief as the Court may deem just and proper.

18

19  DATED:  June 27, 2019                    WHGC, P.L.C.

20

21                                          By: _____

22                                              Jeffrey C.P. Wang
                                                Michael G. York
23                                              G. Brent Sims
                                                Kathleen E. Alparce
24                                          Attorneys for Plaintiff HAOTIAN BAI

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests trial by jury.

DATED:  June 27, 2019                    WHGC, P.L.C.

By: _____
        Jeffrey C.P. Wang
        Michael G. York
        G. Brent Sims
        Kathleen E. Alparce
    Attorneys for Plaintiff HAOTIAN BAI

COMPLAINT                                Exh 4, Page 49

# EXHIBIT 5

July 3, 2019

Dear Friends of Pacific Surrogacy, LLC:

My name is Haotian Bai, and I am a U.S. Army veteran who served two combat tours in Afghanistan. I am one of the founders and owners of Pacific Surrogacy, LLC (PS). While we may not have interacted directly in your dealings with PS, I was involved with the company's regular operations, management, and oversight until recently. However, within the last month, PS has undergone a series of changes – most, if not all, of which occurred without my knowledge, involvement, and/or approval. I have been ousted from any involvement much to your and your surrogate's detriment. I write you now with a sense of urgency to seek your cooperation and patience in my attempt to salvage all business and personal relationships that have been, and will be, affected.

Within the last month, Pacific Surrogacy, LLC has ceased all business operations. I have been blocked from access regarding all of PS's files, accounts, and other materials, including those regarding your surrogates and their continued care. Please do not be too alarmed, but I wanted you to know that I have been informed that these same files, accounts, and other materials are now in the hands of new company Pacific Surrogacy USA, LLC (PSUSA). It is my understanding that they have been taken without your knowledge or consent as well. PSUSA and PS are separate companies and are not related to each other. I am unaware of and cannot speak towards PSUSA's experience or expertise, if any, with managing your surrogate mothers or any part of the surrogacy process. Your files, retainer agreements, and the care of the surrogate mothers are not within my access or control. Again, this has all happened without my involvement, knowledge, or consent. Therefore, I am unable to provide you with any information regarding the surrogates – the status of their care, files, and money included. I have received complaints from the surrogate mothers regarding PSUSA, copies of which I have included with this letter for your review in Appendix A attached.

The money you provided for the care of the surrogates was deposited by PS in the trust account held by the law firm of CHH Law, PC, specifically attorney Kevin Liu of CHH Law, PC. Attorney Kevin Liu is currently under the investigation of the California Bar. The public record of this investigation is attached in Appendix B. I am requesting information from Attorney Kevin Liu pertaining to PS and your trust account, and you have the right to do the same.

I care about protecting your and your surrogates' interests. I provide you with this information with the hope that you will recognize that I, too, am a victim. I formally filed a lawsuit against those responsible for claims of conversion, breach of fiduciary duty, accounting, unjust enrichment, declaratory relief, and unfair competition. The full details of my lawsuit can be found in Appendix C attached. Through our judicial system, I am hoping that justice will prevail. Meanwhile, I want to make sure that you are aware of what is going on, so that you can also take action against those responsible for any harm their conduct has caused you or your surrogates.

Warmest regards,

Haotian Bai

太平洋辅助生育有限责任公司相关的伙伴们：

　　我叫白昊天，是一名美国陆军退役的老兵，曾经两次在阿富汗执行战斗任务。我是太平洋辅助生育有限责任公司（PS）的创始人和持有人之一。我们可能没有接触过，但我自始至终在进行公司内部的操作、管理、和监护。就在上个月，太平洋在我不知情也没有批准的情况下，进行了一系列变动。我在被挤出的期间，因为公司没有被妥善管理，或许对您或者您的代母有了怠慢。我今天或者急切的心情写出这封信，希望得到您的支持和配合来尝试挽回我们被影响的商业及个人关系。

　　就在上个月中旬，太平洋辅助生育有限责任公司突然停止了所有商业活动。我的各种商业管理、材料、和代母的管理系统的权限也在一瞬间被禁止或者删除。但请不要太过于担心，因为据我所知，这些文件、材料、和账户已经被转入新的太平洋辅助生育 USA 有限责任公司。（PSUSA）我理解这个转移也是为你们所不知情或者授权的；太平洋和太平洋 USA 是两个独立的公司并没有任何的关系。因为我的整个权限被封锁和转移，我并不了解，也不能评价太平洋 USA 有任何的经验和技术来管理好您的代母。你们的文件、合同、和代母的协调和管理已经完全脱离了我的掌控。我想再次声明，这些事情的发生和我没有任何的管理、知晓和批准。正因为如此，我也没有能力来提供任何的代母信息——包括她们的进程、文件和补偿金。我在此期间收到了一些代母对太平洋 USA 管理的负面评价，并放入了附录 A 中。

　　您为代母所预存的资金是由 CHH 律师事务所的信托账户所保管，由该事务的律师 Kevin Liu 所设立。Kevin Liu 律师正在被美国加利福尼亚州律师协会进行职业道德调查。这份调查的公开信息被我放到了附录 B。我正在向 Kevin 索取所有有关太平洋和信托账户的信息，你们也有着相同的法律权力。

　　我非常关心如果保护您和代母们的利益。之所以向你们提供这些信息，也是希望可以得到你们的公正评价——我也是受害人之一。我正式向有关人士进行了诉讼——包括资产和知识产权的转移、违背信托义务、清算公司财务、不当得利、宣告性救济和不公平竞争。所有有关我诉状的详细信息可以在附录 C 中找到。通过我们的司法程序，我希望公正可以压倒邪恶。同时，我也希望您可以通过我所提供的信息来了解太平洋内部发生的一些情况，也对损害您和您代母利益的相关人事采取行动。

　　此致

　　　　　　　　　　敬礼

　　　　　　　　　　*Haotian Bai*
　　　　　　　　　　白昊天
　　　　　　　　　　2019 年 7 月 3 日

APPENDIX A: SURROGATE COMPLAINTS







APPENDIX B: CHH LAW Complaints by California Bar
Source: http://members.calbar.ca.gov/fal/Licensee/
Detail/280454

# Public Matter

1  STATE BAR OF CALIFORNIA
   OFFICE OF CHIEF TRIAL COUNSEL
2  MELANIE J. LAWRENCE, No. 230102
   INTERIM CHIEF TRIAL COUNSEL
3  MIA R. ELLIS, No. 228235
   ASSISTANT CHIEF TRIAL COUNSEL
4  DREW MASSEY, No. 244350
   SUPERVISING ATTORNEY
5  ANGIE ESQUIVEL, No. 286432
   SENIOR TRIAL COUNSEL
6  845 South Figueroa Street
   Los Angeles, California 90017-2515
7  Telephone: (213) 765-1080

**FILED** 

**5/28/2019**

**STATE BAR COURT**
**CLERK'S OFFICE**
**LOS ANGELES**

8

9                    STATE BAR COURT

10           HEARING DEPARTMENT - LOS ANGELES

11

12  In the Matter of:              )  Case No.  **SBC-19-O-30244**
                                   )
13  KEVIN LIU,                     )  NOTICE OF DISCIPLINARY CHARGES
                                   )
14  No. 280454,                    )  OCTC Case Nos. [16-O-12098, 16-O-13444,
                                   )  16-O-13589, 16-O-15584 and 17-O-00092]
15                                 )
    A Member of the State Bar.     )
16

17              **NOTICE - FAILURE TO RESPOND!**

18  **IF YOU FAIL TO FILE A WRITTEN ANSWER TO THIS NOTICE
    WITHIN 20 DAYS AFTER SERVICE, OR IF YOU FAIL TO APPEAR AT**
19  **THE STATE BAR COURT TRIAL:**

20  **(1) YOUR DEFAULT WILL BE ENTERED;**
    **(2) YOUR STATUS WILL BE CHANGED TO INACTIVE AND YOU**
21  **WILL NOT BE PERMITTED TO PRACTICE LAW;**
    **(3) YOU WILL NOT BE PERMITTED TO PARTICIPATE FURTHER IN**
22  **THESE PROCEEDINGS UNLESS YOU MAKE A TIMELY MOTION
    AND THE DEFAULT IS SET ASIDE, AND;**
23  **(4) YOU SHALL BE SUBJECT TO ADDITIONAL DISCIPLINE.
    SPECIFICALLY, IF YOU FAIL TO TIMELY MOVE TO SET ASIDE**
24  **OR VACATE YOUR DEFAULT, THIS COURT WILL ENTER AN
    ORDER RECOMMENDING YOUR DISBARMENT WITHOUT**
25  **FURTHER HEARING OR PROCEEDING. SEE RULE 5.80 ET SEQ.,
    RULES OF PROCEDURE OF THE STATE BAR OF CALIFORNIA.**

26

27

28

kwiktag ®    241 073 095

1  The State Bar of California alleges:

2                                    JURISDICTION

3      1.  Kevin Liu ("respondent") was admitted to the practice of law in the State of

4  California on December 9, 2011, was a member at all times pertinent to these charges, and is

5  currently a member of the State Bar of California.

6                                    COUNT ONE

7                              Case No. 16-O-12098
                   Former Rules of Professional Conduct, Rule 1-300(B)
8                   [Unauthorized Practice of Law in Other Jurisdiction]

9      2.   From in or about June 2015 through in or about December 2015, respondent

10  practiced law in Wyoming by agreeing to perform pre-litigation and loan modification work on

11  behalf of his clients, Mariano and Norma Fonseca, in connection with their property located in

12  Wyoming, when to do so was in violation of the regulations of the profession in Wyoming,

13  namely, Wyoming Rules of Professional Conduct 5.5, in willful violation of the former Rules of

14  Professional Conduct, rule 1-300(B).

15                                    COUNT TWO

16                             Case No. 16-O-12098
                   Former Rules of Professional Conduct, Rule 4-200(A)
17                                  [Illegal Fee]

18      3.  From on or about June 2015 to October 2015, respondent entered into an agreement

19  for, charged and/or collected from Wyoming residents Mariano and Norma Fonseca a fee of

20  approximately $2,400 to perform legal services that were illegal because respondent was not

21  entitled to practice law in Wyoming, in willful violation of the former Rules of Professional

22  Conduct, rule 4-200(A).

23  //

24  //

25  //

26  //

27  //

28
                                        -2-

COUNT THREE

Case No.16-O-13444
Former Rules of Professional Conduct, Rule 1-300(B)
[Unauthorized Practice of Law in Other Jurisdiction]

4.  From on or about March 5, 2015 through in or about September 16, 2015, respondent practiced law in Texas by agreeing to perform pre-litigation and loan modification work on behalf of his client, Paul Benson in connection with his property located in Texas, when to do so was in violation of the regulations of the profession in Texas, namely, Texas Disciplinary Rules of Professional Conduct 5.05, in willful violation of former Rules of Professional Conduct, rule 1-300(B).

COUNT FOUR

Case No. 16-O-13444
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

5.  From on or about March 5, 2015 through on or about June 28, 2015, respondent entered into an agreement for, charged and/or collected from Texas resident Paul Benson a fee of approximately $3,600 to perform legal services that were illegal because respondent was not entitled to practice law in Texas, in willful violation of the former Rules of Professional Conduct, rule 4-200(A).

COUNT FIVE

Case No. 16-O-13589
Business and Professions Code section 6106.3(a)
[Violation of Civil Code section 2944.6(a)]

6.  On or about July 31, 2014, respondent negotiated, arranged, or offered to perform a mortgage loan modification or other form of mortgage loan forbearance for a fee paid by a borrower and client, namely Faye Bon Shirazi, in advance of any service and thereafter entered into a fee agreement with the client without providing the client, prior to entering into that agreement, the following as a separate written statement, in not less than 14-point bold type, as required by Civil Code section 2944.6(a), in willful violation of Business and Professions Code section 6106.3:

-3-

It is not necessary to pay a third party to arrange for a loan modification or other form of forbearance from your mortgage lender or servicer. You may call your lender directly to ask for a change in your loan terms. Nonprofit housing counseling agencies also offer these and other forms of borrower assistance free of charge.  A list of nonprofit housing counseling agencies approved by the United States Department of Housing and Urban Development (HUD) is available from your local HUD office or by visiting www.hud.gov.

## COUNT SIX

Case No. 16-O-13589
Former Business and Professions Code, section 6106.3(a)
[Violation of Civil Code § 2944.7(a)(1) – Illegal Advanced Fee]

7.  On or about August 4, 2014, respondent agreed to negotiate and perform a mortgage loan modification or other mortgage loan forbearance for a fee for his client, Faye Bon Shirazi, and on or about August 4, 2014 received approximately $3,300 from the client before respondent had fully performed each and every service respondent had been contracted to perform or represented to the client that respondent would perform, in violation of Civil Code, section 2944.7, and in willful violation of former Business and Professions Code, section 6106.3.

## COUNT SEVEN

Case No. 16-O-13589
Business and Professions Code, section 6068(a)
[Violation of Civil Code § 2944.7(a)(1)]

8.  On or about August 4, 2014, Faye Bon Shirazi hired respondent to attempt to negotiate a mortgage loan modification or other mortgage loan forbearance for an advance fee. On or about August 4, 2014, respondent received approximately $3,300 from the client before respondent had fully performed each and every service respondent had been contracted to perform or represented to the client that respondent would perform, in violation of Civil Code, section 2944.7, and in willful violation of Business and Professions Code, section 6068(a).

//

//

//

//

-4-

1

## COUNT EIGHT

2

Case No. 16-O-13589
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

3

4      9.  On or about August 4, 2014, Faye Bon Shirazi hired respondent to attempt to

5    negotiate a mortgage loan modification or other mortgage loan forbearance for an advance fee.

6    On or about August 4, 2014, respondent received approximately $3,300 from the client before

7    respondent had fully performed each and every service respondent had been contracted to

8    perform or represented to the client that respondent would perform, in willful violation of the

9    former Rules of Professional Conduct, rule 4-200(A).

10

## COUNT NINE

11

Case No. 16-O-13589
Former Rules of Professional Conduct, Rule 1-400(C)
[Solicitation of a Prospective Client]

12

13      10.  In or about July of 2014, respondent made a solicitation, or allowed one to be

14    made on respondent's behalf by a representative of respondent's law firm, Pinepoint Law Group

15    ("PLG") to Faye Bon Shirazi, a prospective client, by communication delivered by telephone,

16    with whom neither respondent nor his law firm had any family or prior professional

17    relationship, in willful violation of former Rules of Professional Conduct, rule 1-400(C).

18

## COUNT TEN

19

Case No.16-O-15584
Former Rules of Professional Conduct, Rule 1-300(B)
[Unauthorized Practice of Law in Other Jurisdiction]

20

21      11.  From on or about October 30, 2013 through in or about December of 2013,

22    respondent practiced law in Wisconsin by agreeing to perform pre-litigation and loan

23    modification work on behalf of his client, Wanda Soto in connection with her property located in

24    Wisconsin, when to do so was in violation of the regulations of the profession in Wisconsin,

25    namely, Wisconsin Rules of Professional Conduct 5.5, in willful violation of former Rules of

26    Professional Conduct, rule 1-300(B).

27    //

28

-5-

1                                    COUNT ELEVEN

2                                  Case No.16-O-15584
                          Former Rules of Professional Conduct, Rule 4-200(A)
3                                    [Illegal Fee]

4          12.   From on or about October 30, 2013 through December 11, 2013, respondent entered

5    into an agreement for, charged and/or collected from Wisconsin resident Wanda Soto a fee of

6    approximately $3,000 to perform legal services that were illegal because respondent was not

7    entitled to practice law in in Wisconsin, in willful violation of the former Rules of Professional

8    Conduct, rule 4-200(A).

9                                    COUNT TWELVE

10                                 Case No. 17-O-00092
                          Business and Professions Code section 6106.3(a)
11                         [Violation of Civil Code section 2944.6(a)]

12         13.   On or about September 26, 2014, respondent negotiated, arranged, or offered to

13   perform a mortgage loan modification or other form of mortgage loan forbearance for a fee paid

14   by a borrower and client, namely Dennis Middleton, in advance of any service and thereafter

15   entered into a fee agreement with the client without providing the client, prior to entering into

16   that agreement, the following as a separate written statement, in not less than 14-point bold type,

17   as required by Civil Code section 2944.6(a), in willful violation of Business and Professions

18   Code section 6106.3:

19             It is not necessary to pay a third party to arrange for a loan modification
               or other form of forbearance from your mortgage lender or servicer.
20             You may call your lender directly to ask for a change in your loan terms.
               Nonprofit housing counseling agencies also offer these and other forms
21             of borrower assistance free of charge.  A list of nonprofit housing counseling
               agencies approved by the United States Department of Housing and Urban
22             Development (HUD) is available from your local HUD office or by visiting
               www.hud.gov.
23

24   //

25   //

26   //

27   //

28
                                           -6-

1

<u>COUNT THIRTEEN</u>

2

Case No. 17-O-00092

3

Former Business and Professions Code, section 6106.3(a)
[Violation of Civil Code § 2944.7(a)(1) – Illegal Advanced Fee]

4      14.    On or about September 26, 2014, respondent agreed to negotiate and perform a

5    mortgage loan modification or other mortgage loan forbearance for a fee for his client, Dennis

6    Middleton, and between on or about October 1, 2014 and November 15, 2014 received

7    approximately $3,600 from the client before respondent had fully performed each and every

8    service respondent had been contracted to perform or represented to the client that respondent

9    would perform, in violation of Civil Code, section 2944.7, and in willful violation of former

10   Business and Professions Code, section 6106.3.

11

<u>COUNT FOURTEEN</u>

12

Case No. 17-O-00092

13

Business and Professions Code, section 6068(a)
[Violation of Civil Code § 2944.7(a)(1)]

14      15.   On or about September 26, 2014, Dennis Middleton hired respondent to attempt to

15   negotiate mortgage loan modification or other mortgage loan forbearance for an advance fee.

16   Between on or about October 1, 2014 and November 15, 2014, respondent received

17   approximately $3,600 from the client before respondent had fully performed each and every

18   service respondent had been contracted to perform or represented to the client that respondent

19   would perform, in violation of Civil Code, section 2944.7, and in willful violation of Business

20   and Professions Code, section 6068(a).

21

<u>COUNT FIFTEEN</u>

22

Case No. 17-O-00092

23

Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

24      16.    On or about September 26, 2014, Dennis Middleton hired respondent to attempt to

25   negotiate mortgage loan modification or other mortgage loan forbearance for an advance fee.

26   Between on or about October 1, 2014 and November 15, 2014, respondent received

27   approximately $3,600 from the client before respondent had fully performed each and every

28

-7-

1 service respondent had been contracted to perform or represented to the client that respondent

2 would perform, in violation of Civil Code, section 2944.7, in willful violation of the former

3 Rules of Professional Conduct, rule 4-200(A).

### NOTICE - INACTIVE ENROLLMENT!

**YOU ARE HEREBY FURTHER NOTIFIED THAT IF THE STATE BAR COURT FINDS, PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6007(c), THAT YOUR CONDUCT POSES A SUBSTANTIAL THREAT OF HARM TO THE INTERESTS OF YOUR CLIENTS OR TO THE PUBLIC, YOU MAY BE INVOLUNTARILY ENROLLED AS AN INACTIVE MEMBER OF THE STATE BAR.   YOUR INACTIVE ENROLLMENT WOULD BE IN ADDITION TO ANY DISCIPLINE RECOMMENDED BY THE COURT.**

### NOTICE - COST ASSESSMENT!

**IN THE EVENT THESE PROCEDURES RESULT IN PUBLIC DISCIPLINE, YOU MAY BE SUBJECT TO THE PAYMENT OF COSTS INCURRED BY THE STATE BAR IN THE INVESTIGATION, HEARING AND REVIEW OF THIS MATTER PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6086.10.**

Respectfully submitted,

THE STATE BAR OF CALIFORNIA
OFFICE OF CHIEF TRIAL COUNSEL

DATED: ___5/28/19___  By: _____
          Angie Esquivel
          Deputy Trial Counsel

-8-

1 | ## DECLARATION OF SERVICE BY CERTIFIED MAIL

2 | **CASE NUMBER:**

3 | **(OCTC Case Nos.: 16-O-12098, 16-O-13444, 16-O-13589, 16-O-15584, 17-O-00092)**

4 |     I, the undersigned, over the age of eighteen (18) years, whose business address and place
of employment is the State Bar of California, 845 South Figueroa Street, Los Angeles, California

5 | 90017, declare that I am not a party to the within action; that I am readily familiar with the State
Bar of California's practice for collection and processing of correspondence for mailing with the

6 | United States Postal Service; that in the ordinary course of the State Bar of California's practice,
correspondence collected and processed by the State Bar of California would be deposited with

7 | the United States Postal Service that same day; that I am aware that on motion of party served,
service is presumed invalid if postal cancellation date or postage meter date on the envelope or

8 | package is more than one day after date of deposit for mailing contained in the affidavit; and that
in accordance with the practice of the State Bar of California for collection and processing of

9 | mail, I deposited or placed for collection and mailing in the City and County of Los Angeles, on
the date shown below, a true copy of the within

10 |

11 | **NOTICE OF DISCIPLINARY CHARGES**

12 | in a sealed envelope placed for collection and mailing as certified mail, return receipt requested,
Article No.: 9414 7266 9904 2111 0165 55, at Los Angeles, on the date shown below, addressed

13 | to:

14 | **Kevin Liu**
**801 S Garfield Ave Ste 338**

15 | **Alhambra, CA 91801-4486**

16 |

17 | in an inter-office mail facility regularly maintained by the State Bar of California addressed to:

    **N/A**

18 |

19 |     I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct. Executed at Los Angeles, California, on the date shown below.

20 |

DATED: May 28, 2019         Signed: _____

21 |                            Max Carranza
                           Declarant

22 |

23 |

24 |

25 |

26 |

27 |

28 | -1-

APPENDIX C: COMPLAINTS REGARDING YUNLUN JIANG'S MISDEEDS

**WHGC, P.L.C.**
Jeffrey C.P. Wang (SBN 144414)
*JeffreyWang@WHGCLaw.com*
Michael G. York (SBN 89945)
*MichaelYork@WHGCLaw.com*
G. Brent Sims (SBN 179397)
*BrentSims@WHGCLaw.com*
Kathleen E. Alparce (SBN 230935)
*KathleenAlparce@WHGCLaw.com*
1301 Dove Street, Suite 1050
Newport Beach, CA 92660
Tel. (949) 833-8483; Fax: (866) 881-5007

Attorneys for Plaintiff
HAOTIAN BAI

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/27/2019** at 12:33:53 PM

Clerk of the Superior Court
By Miriam Cruz, Deputy Clerk

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF ORANGE**

| | |
|---|---|
| HAOTIAN BAI, an individual;<br><br>Plaintiff<br><br>vs.<br><br>PACIFIC SURROGACY, LLC, a California Limited Liability Company; PACIFIC SURROGACY USA, LLC, a California Limited Liability Company; YULUN JIANG, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | CASE NO. 30-2019-01079615-CU-BT-CJC<br><br>Judge Deborah Servino<br><br>**COMPLAINT FOR:**<br><br>1) **CONVERSION;**<br>2) **BREACH OF FIDUCIARY DUTY;**<br>3) **ACCOUNTING;**<br>4) **UNJUST ENRICHMENT;**<br>5) **DECLARATORY RELIEF;**<br>6) **UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

1.      Plaintiff HAOTIAN BAI (**"BAI"**) for his Complaint against Defendants **PACIFIC SURROGACY, LLC**, a California Limited Liability Company (**"PACIFIC"**); **PACIFC SURROGACY USA, LLC**, a California Limited Liability Company ("**PSUL**"), **YULUN JIANG**, ("**JIANG**"), and DOES 1-25, hereby bring his claims seeking relief, allege on personal knowledge as to all facts known to him, and on information and belief as to all other facts, as follows:

1
**COMPLAINT**                                    Exh 5, Page 63

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter of this action in that the Defendants **PACIFIC** and **PSUL** are both California Limited Liability Companies, organized under the laws of the State of California, with their headquarters in Orange County.

3. Defendant **JIANG** is an individual residing and/or conducting business in this state and county. Venue is proper pursuant to California Code of Civil Procedure section 395.5 because the Limited Liability Corporations are defendants herein, and are headquartered in Orange County. The amount in controversy is in excess of the jurisdictional minimum.

**PARTIES**

4. Plaintiff **BAI** is an individual, and was a member, officer and founding member of **PACIFIC**.

5. Defendant **PACIFIC** is a Limited Liability Company, organized under the laws of the State of California, with its principal place of business in Irvine, California.

6. Defendant **PSUL** is a Limited Liability Company, organized under the laws of the State of California, with its principal place of business in Irvine, California.

7. Defendant **JIANG** is an individual who at all times relevant to this Complaint resides in Irvine, CA.

8. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 25, inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

9. Plaintiff is informed and believe and thereon alleges that at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

**GENERAL ALEGATIONS**

10. Defendant **PACIFIC** was organized on July 12, 2018 by **BAI** and **JIANG** on a 50/50 basis. **PACIFIC** was established to provide services to persons serving as surrogates, as outlined under California Family Law section 7960, *et. seq.* **PACIFIC** retained skilled service providers, had the proper licenses, proper facilities, expertise and knowledge on caring for and advising persons desiring

2

1 to provide these services.

2       11.    **PACIFIC** also had knowledge regarding compliance with state and federal laws and
3 complied with all California regulations, including HIPPA and other regulations.

4       12.    Both **BAI** and **JIANG** had invested substantial sums of money into **PACIFIC**, and
5 each was set to benefit from the continued successful operation of the center.

6       13.    **PACIFIC** operated utilizing cloud based business software. **PACIFIC** maintained
7 passwords and accounts. Among other things **PACIFIC** operated and maintained email accounts,
8 document files, excel spreadsheets, project management systems, client relationship management
9 documents and accounts on this system.

10      14.    **PACIFIC** also maintained under password and security codes confidential information
11 including but not limited to, surrogate applications, medical information, personal background checks,
12 psychological evaluation reports, legal contracts, receipts and accounting.

13      15.    **PACIFIC** also maintained under password and security codes, confidential information
14 including but not limited to, client relationship and management folders, 1099 documents for surrogate
15 recruits, management tools, documents surrogate applications, Customer Relationship Management
16 technology information, medical information, personal background checks, psychological evaluation
17 reports, legal contracts, receipts and accounting, as well as payroll and confidential employment
18 information.

19      16.    **PACIFIC** also maintained social media accounts, including Facebook, Instagram,
20 Twitter, WeChat and Youtube. It maintained websites and MS suite one drives including information
21 that was used in business and provided an economic advantage over competitors who did not know or
22 use it.

23      17.    All of this information was maintained by **PACIFIC** who, at all relevant times,
24 maintained all of this information utilizing security protocols and passwords designed to keep such
25 information private and secure.

26      18.    **PACIFIC** also maintained physical property, including computer monitors, business
27 equipment, and office furnishings.

28      19.    **PACIFIC** charged customers a fee for surrogacy services. This initial fee would be

1    taken directly by **JIANG** and wired into a bank account located in China on behalf of **PACIFIC.**

2    20.    In addition, **PACIFIC** customers created a trust account to hold funds for their

3    continued care throughout the scope of their surrogacy. In or around the beginning of June 2019, this

4    trust account contained over $1,000,000.

5    21.    Unknown to **BAI,** or other persons at **PACIFIC, JIANG** prepared, filed and organized

6    a Limited Liability Company called **PACIFIC SURROGACY USA, LLC** ("**PSUL**"). Paperwork for

7    this LLC was filed on or about May 26, 2019 with the California Secretary of State.

8    22.    On or about June 16, 2019, Plaintiff **BAI** was on a plane returning from Hawaii.

9    23.    **JIANG** waited until **BAI** boarded the plane, and then, without authorization,

10    permission, notice, or provocation began destroying, stealing, transferring and/or hiding assets

11    belonging to **PACIFIC.**

12    24.    On June 16, 2019, at or about 4:30 p.m., **BAI** arrived in Los Angeles. At about this

13    time, **BAI** received an electronic message from **JIANG** stating that **JIANG** had seen what **BAI** had

14    done wrong, and that **JIANG** knew **BAI**'s secrets. **JIANG** informed **BAI** that "resistance was futile"

15    and that **BAI, JIANG,** and **PACIFIC** should have a parting of the ways. **BAI** understood this message

16    to be a threat and an attempt to extort **BAI**'s share of the business.

17    25.    At or about 5:00 p.m. on Sunday, June 16, 2019, **JIANG** posted on WeChat that

18    **PACIFIC** would be closing. **BAI** had no foreknowledge of this closing, and had not given his consent

19    or approval to this action.

20    26.    On or about this day, without **BAI'S** knowledge, **JIANG** prepared letters of resignation

21    for the employees of **PACIFIC**.

22    27.    Following this, **BAI** discovered that all of the passwords, accounts, social media,

23    websites, emails, and client information had been deleted, hidden, transferred, or taken over by **JIANG**

24    and/or **PSUL**.

25    28.    **PACIFIC**'s websites had been removed and transferred, and rendered unavailable.

26    29.    Plaintiff no longer had access to any of **PACIFIC's** documents, accounts, payroll

27    records, electronic information, cloud based programs, or information, ledgers, contracts, vendor

28    agreements, billings, or any other documents of the **LLC**, in direct violation of the operating

1  agreement.

2      30.    On or about Monday, June 17, 2019, **JIANG** contacted **BAI** and informed him that all

3  of the papers were drawn up, and that **BAI** must sign them, or **JIANG** would release unfavorable and

4  embarrassing personal information, photographs and videos of **BAI**.

5      31.    As intended, **BAI**, a returned veteran suffering from PTSD, who had a family to protect,

6  felt intimidated and as a result, because of the threats and coercion of **JIANG**, documents were signed

7  for the cancellation of **PACIFIC**.

8      32.    At or about this time, **PSUL** began soliciting employees from **PACIFIC**. Contracts

9  were transferred to **PSUL**, and confidential and secret information had been made available to **PSUL.**

10      33.    On or about June 19, 2019, **JIANG** prepared a letter instructing **PACIFIC's** medical

11  coordinator to send to the medical facilities doing business with **PACIFIC**. This letter instructed the

12  providers to communicate with **PSUL** instead of **PACIFIC**, and providing the address of "930

13  Roosevelt" as **PSUSA, LLC**'s new address. All of **PACIFIC's** former information was to go to that

14  address.

15      34.    On or about June 20, 2018, **PSUL** and **JIANG** sent letters to all **PACIFIC's** employees

16  informing them that **PACIFIC** had closed and was terminating all of its employees.

17      35.    Subsequent to these events, **PSUL** and **JIANG** informed all **PACIFIC** employees that

18  they possessed embarrassing photographs and videos of **BAI**, and that **BAI** had terminated **PACIFIC.**

19  Throughout this time period, **BAI** was denied his rights pursuant to California Corporations Code

20  section 17704.10 and under the operating agreement.

21      36.    **KEVIN LIU ("LIU")** acted as an attorney in the formation and organization of

22  **PACIFIC**, and, as such, owed a duty of care and loyalty and was a fiduciary with respect to **PACIFIC**,

23  At that time, **LIU** understood that he was retained by the Company, and that **BAI** and **JIANG**  were

24  equal stakeholders in the company. In addition, **LIU** was the personal attorney for **BAI** on unrelated

25  matters.

26      37.    On information and belief, in conjunction with **JIANG, LIU** assisted in the formation

27  of **PSUL**, with the knowledge that **PSUL** was organized to poach and ultimately take over business

28  from **PACIFIC** while squeezing **BAI** out of the business.

5

38.    **LIU** in conjunction with and under the direction of **JIANG**, informed employees of **PACIFIC**, that **BAI** had decided to terminate **PACIFIC** and that **BAI**'S actions had caused the employees not to receive their pay. In addition, **LIU** informed **PACIFIC** employees of embarrassing and harmful information concerning **BAI**.

39.    **LIU**, as an attorney for both **PACIFIC** and **BAI**, had a duty to provide both with his highest loyalty, and to avoid actions designed to damage either one, and to avoid retention in matters adverse to **PACIFIC** or **BAI**. Both **JIANG** and **LIU** understood the facts surrounding **LIU**'s retention by **PACIFIC** and **BAI**.

40.    **LIU**, in conjunction with **JIANG**, also worked to hide company assets, accounts, contracts, paperwork, payroll documents, vendor accounts, on-line presence and cloud accounts from **BAI**, all to **BAI**'S detriment, and with the goal of stealing business, assets and customers from **BAI** and from **PACIFIC**.

41.    At all relevant times herein, Defendants and each of them have wrongfully and unfairly kept **BAI** from examining corporate property, books, contracts, accounts, intellectual property, payroll accounts and ledgers. Such denial has allowed Defendants and each of them to continue their series of thefts, fraud, and wrongdoings as alleged herein.

42.    **JIANG** has also instructed personnel to change the names of **PACIFIC**'s social media accounts to that of **PSUL.**

43.    On information and belief, **BAI** alleges that Defendant **PSUL** was the alter-ego of Defendant **JIANG**, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that Defendant **JIANG** completely controlled, dominated, managed, and operated the other Defendants to suit his convenience.

44.    In conducting the actions herein alleged, **PSUL** was aware that **JIANG** owed fiduciary obligations to **PACIFIC**, and **BAI**, and set out consciously and deliberately to assist in the breach of those obligations, and in the theft of material belonging to **PACIFIC**.

///

///

**FIRST CAUSE OF ACTION**

**(CONVERSION)**

**As to JIANG, PSUL, and DOES 1-25**

45.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs of this Complaint, as though fully set forth herein.

46.    **PACIFIC** operated under an operating agreement, and a series of agreements that entitled **BAI** to 50% of **PACIFIC**'s profits, accounts, contracts, accounts receivable and inventory.

47.    Following the putative cancellation of **PACIFIC**, **BAI** had an ownership right to an immediate 50% distribution of all funds, assets, and property of **PACIFIC**, as well as all physical property, files, computers, office equipment and bank accounts of **PACIFIC.**

48.    Defendants and each of them intentionally and substantially interfered with **BAI'S** property by taking possession of items of personal property belonging to **BAI**; by preventing **BAI** from accessing accounts, and funds which by right should be his; and by refusing to disclose the location of other assets.

49.    **BAI** did not consent to these actions.

50.    As a result, **BAI** was harmed in that he was denied the use and access to his rightful property.

51.    That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

52.    Defendants' conduct as described herein constitutes "oppression, fraud, or malice" as those terms are defined in California Civil Code Section 3294, and Plaintiff is therefore entitled to punitive damages in an amount according to proof.

**SECOND CAUSE OF ACTION**

**(BREACH OF FIDUCIARY DUTY/CONSTRUCTIVE FRAUD)**

**As to JIANG and DOES 1-25**

53.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs of this Complaint, as though fully set forth herein.

54.    Defendant **JIANG** was a Manager and/or officer of **PACIFIC** in accordance with the **PACIFIC** operating agreement, and the actions of the parties. At all times relevant herein, **JIANG** had

1  a fiduciary duty to act in the best interests of **PACIFIC**, and to place the interests of **PACIFIC** above

2  his own, and avoid self-dealing.

3      55.    **JIANG** violated this duty by taking substantially all of the assets of **PACIFIC**, and

4  using those assets for his own use and the benefit of **PSUL.**

5      56.    He further violated this duty by self-dealing and setting up **PSUL** with the intent to

6  convert all of **PACIFIC's** property, poach all of **PACIFIC'S** employees and assume all of

7  **PACIFIC's** contracts.

8      57.    The scope and extent of **JIANG**'s malfeasance is currently unknown in that **JIANG** has

9  precluded others from reviewing the books, contracts, documents, account information and other

10  property rightfully belonging to **PACIFIC**. As such, **JIANG** continues to plunder **PACIFIC's** assets,

11  customers and bank accounts with impunity.

12      58.    As a direct and proximate result of the breach of this duty, Plaintiff has been damaged

13  in an amount to be proven at trial.

14      59.    Defendants' conduct as described herein constitutes "oppression, fraud, or malice" as

15  those terms are defined in California Civil Code Section 3294, and Plaintiff is therefore entitled to

16  punitive damages in an amount according to proof.

17                          **THIRD CAUSE OF ACTION**

18                              **(ACCOUNTING)**

19                          **AS TO JIANG and PACIFIC**

20      60.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

21  of this Complaint, as though fully set forth herein.

22      61.    In accordance with the **PACIFIC** operating agreement, and the actions of the

23  PARTIES, **BAI** was entitled to 50% of **PACIFIC**'s profits, accounts, contracts, accounts receivable

24  and inventory.

25      62.    As a duty of the operating agreement involves, among other things, a duty to account

26  for all income, revenues and profits derived from Defendants' business. It is not clear that the remedy

27  at law would be as full, adequate and expeditious as it is in equity.

28      63.    Defendants have received and continue to receive, profits and revenues in connection

---

1  with the operation of the surrogacy clinic.

2     64.    As a result of the operating agreement, and of the actions of the Defendants, Defendants

3  have received and are withholding money, a portion of which is due to Plaintiff.

4     65.    The amount of money due from Defendants to Plaintiff is unknown to Plaintiff and

5  cannot be ascertained without an accounting of the business receipts, inventory and accounts

6     66.    Plaintiff has demanded an accounting of the aforementioned receipts of the business, or

7  to the extent he has not demanded one, Defendants' actions have made it clear that such a demand

8  would be futile.

9                              **FOURTH CAUSE OF ACTION**

10                                **(UNJUST ENRICHMENT)**

11                                **As to all DEFENDANTS**

12     67.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

13  of this Complaint, as though fully set forth herein.

14     68.    As a result of the breaches by and wrongful acts of Defendants, Defendants have been

15  unjustly enriched at the expense of Plaintiff. Defendants have derived and continue to derive a benefit

16  from failing to perform their contractual obligations pursuant to the parties' business and company

17  agreements, from improperly utilizing Plaintiff's business equipment, accounts, and trade secrets, and

18  by secretly sabotaging Plaintiff's business and attempting to extort Plaintiff.

19     69.    Defendants are under an obligation to pay **BAI** forthwith all amounts by which they

20  have been unjustly enriched, in a sum to be determined at trial.

21                              **FIFTH CAUSE OF ACTION**

22                                **(DECLARATORY RELIEF)**

23                                **As to PACIFIC and PSUL**

24     70.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

25  of this Complaint, as though fully set forth herein.

26     71.    An actual and immediate controversy has arisen and now exists between Plaintiff and

27  Defendants concerning their rights and obligations of the individual parties with respect to the

28  **PACIFIC** operating agreement, the contracts entered into and still outstanding, both for services

1  **PACIFIC**, and those that **PACIFIC** was to provide, and the property of **PACIFIC**, including the

2  ongoing contracts, liabilities and benefits of the Defendants concerning the obligations and the

3  property, accounts and electronic information.

4        72.    As such, Plaintiff requests a judicial determination of the rights, privileges and

5  obligations of the parties with respect to these contracts.

6                              **SIXTH CAUSE OF ACTION**

7                  **(UNFAIR COMPETITION, BUSINESS & PROFESSIONS CODE 17200)**

8                              **AS TO ALL DEFENDANTS**

9        73.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

10  of this Complaint, as though fully set forth herein.

11        74.    The acts and conduct of Defendants as alleged above in this Complaint constitute

12  unfair, unlawful and/or fraudulent business acts or practices as defined by Cal. Bus.& Prof. Code

13  Section 17200, *et. seq.*

14        75.    Defendant's acts of unlawful, unfair, and fraudulent competition have caused harm to

15  competition, to consumers and to competitors. Defendants' acts have proximately caused damage to

16  persons having contracts with **PACIFIC**, to employees of **PACIFIC**, and to vendors of **PACIFIC**.

17        76.    In doing the things alleged herein, Defendants have violated HIPPA requirements,

18  violated contractual obligations and employment regulations, personally profited from others work and

19  have illegally and unfairly sought to steal a complete business from the Plaintiff.

20        77.    In addition, Defendants and each of them have wrongfully and unfairly kept **BAI** from

21  examining corporate property, books, contracts, accounts, intellectual property, payroll accounts and

22  ledgers. Such denial has allowed Defendants and each of them to continue their series of thefts, fraud,

23  and wrongdoings as alleged herein. Defendants' acts of so doing, in and of themselves, constitutes

24  unlawful, unfair, and fraudulent competition and have caused irreparable and incalculable injury to

25  **PACIFIC** and to **BAI**, and unless enjoined will continue. No adequate remedy exists at law for

26  Defendants' refusal to provide access to this material.

27        78.    In addition, Defendants' acts of unlawful, unfair, and fraudulent competition also have

28  caused irreparable and incalculable injury to **PACIFIC** and to **BAI**, and unless enjoined will cause

1    incalculable damage for which there is no adequate remedy at law.

2    <u>**PRAYER FOR RELIEF**</u>

3    **WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them as follows:

4    1.  For compensatory damages, disgorgement, and/or money, estimated to be, at a minimum,
5    $5,000,000;

6    2.  For prejudgment and post-judgment interest at the rate of interest under the law;

7    3.  For exemplary and punitive damages;

8    4.  For injunctive relief, allowing Plaintiff access to PACIFIC's books, accounts, electronic
9    accounts, payroll accounts, client files, vendor records and all of **PACIFIC's** documents;

10   5.  For injunctive relief, restoring all contracts, rights and property to **PACIFIC** to allow for a
11   lawful and fair winding up.

12   6.  For an accounting;

13   7.  For attorney's fees, expenses and costs incurred in pursuing the claims asserted herein,
14   against Defendants, jointly and severally, as may be provided by contract and/or law;

15   8.  For pre-judgment and post-judgment interest at the maximum allowable rate of interest
16   under the law; and

17   9.  For such other and further relief as the Court may deem just and proper.

18

19   DATED: June 27, 2019                          WHGC, P.L.C.

20

21                                                By: _____
22                                                   Jeffrey C.P. Wang
                                                    Michael G. York
23                                                   G. Brent Sims
                                                    Kathleen E. Alparce
24                                                Attorneys for Plaintiff HAOTIAN BAI

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2          Plaintiff hereby requests trial by jury.

3

4    DATED:  June 27, 2019                    WHGC, P.L.C.

5

6                                             By: _____
                                                  Jeffrey C.P. Wang
7                                                 Michael G. York
                                                  G. Brent Sims
8                                                 Kathleen E. Alparce
9                                             Attorneys for Plaintiff HAOTIAN BAI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 6

11:20



2019年7月3日 下午5:59

您好。我觉得我有必要让你知道一下现在的情况。我不知道allan有没有找过你，但是出于对进行中的case的责任，和IP以及代母的保障，我觉得您需要知道以及提早做预防。有什么问题可以联系我，或者可以联系我们的律师。

Letter to clients and partners(3).pdf
3M

 PDF

这什么情况

你们那边又是什么情况呢

这里提到的jiang和bai都是谁

还有我们的目前的案子客人的钱都被偷了吗？会出问题吗？

这个很重要

Business Partner: Hello ▮▮▮▮. I think it's necessary for me to let you know what's going on. I don't know if Allan has reached out, but out of responsibility for the ongoing case, and IP and protection of surrogate mothers, I think you need to know and take precautions early. If you have any questions you can contact me, or contact our lawyer.

Business Partner: Attachment "Letter to clients and partners (3).pdf"

Business Partner: What is the situation?

Business Partner: What's the situation on your side?

Business Partner: Who is Jiang and Bai mentioned in this?

Business Partner: Is there any money stolen from our clients in our current case? Will something go wrong?

Business Partner: This is very important.

 5  茜茜🐳 •••

我了解一下 

 我发您的文件讲的很清楚 您可以看一下

OK 

05:26

 allan已经被serve了 我们会追究所有的法律责任 他需要在30天之内response 以前的case我们现在没有办法管理 因为系统和文件所有的资料全部被allan转移了 法官像网站邮箱追回需要时间 而且钱全部在allan和Kevin那边 即使有代母联系我说要跟我们 我们也没有办法现在管理

 我担心万一有什么事 所以还是决定和您说一下

05:37

谢谢 

Receiver: Let me know.

Yu: The document I sent you explains the situation very clearly. You can take a look.

Receiver: OK

Yu: Allan has already been served. We will pursue all legal liabilities. He needs to respond to the complaint in 30 days. We cannot manage the prior case right now because the information on the system and documents have all been transferred by Allan. It will take time for the Judge to require the return of the website and email. Also, all the money is with Allan and Kevin. Even if there is a surrogate mother who contacts me and tells me she wants to follow us, we can't manage it now.

Yu: I'm worried if anything happens, so I decided to talk to you about it.

Receiver: Thank you.

05:16 ✈                                          ••••• LTE

‹                    茜茜🐳                    •••

 但是我们律师在起诉Kevin的时候发现他被律师协会告了15条罪名

 具体你可以看我发您的第一个文件

 里面有Kevin的在网上公开的文件 和我们对allan的诉讼

 allan现在把所有东西illegal转移到Pacific USA

kevin又是谁 [Redacted Redacted Redacted]

05:12

我对你们内部不了解 [Redacted Redacted]

 我们其实并不想去抢什么 以后我们还是会用实力去竞争 只是不想他继续在外面诋毁我们 诬陷我们 我们只想争取我们的利益 然后确实我的案子大概30～40个 突然被转移 我都没机会对

 

Yu: But when our lawyer sued Kevin, he found out that the California Bar filed 15 counts against Kevin.

Yu: For specifics, you can look at the first document I sent you.

Yu: There are documents on Kevin that is part of the public record and our complaint against Allan.

Yu: Allan has illegal transferred everything to Pacific USA.

Receiver: Who is Kevin?

Receiver: I don't know anything about your company internally.

Yu: We really don't want to take anything. In the future, we will use our strength to compete. We just don't want him to continue slandering us outside, to defame us. We just want to fight for our interests. It's true that I have about 30-40 cases, suddenly transferred, I have no chance to respond.

05:16 ✈

.ııll LTE

< 　　　　　茜茜🐳　　　　　•••


我们其实并不想去抢什么 以后
我们还是会用实力去竞争 只是
不想他继续在外面诋毁我们 诬
陷我们 我们只想争取我们的利
益 然后确实我的案子大概30～
40个 突然被转移 我都没机会对
接 我是真担心的

嗯嗯 

Kevin和▓▓没历史吧

我对你们内部谁是老板完全没
概念


Kevin是太平洋的律师 是allan的
朋友 信托是Kevin的

哦哦

明白了 

谢谢了

 　　　　　　　　　　 

Yu: We really don't want to take anything. In the future, we will use our strength to compete. We just don't want him to continue slandering us outside, to defame us. We just want to fight for our interests. It's true that I have about 30-40 cases, suddenly transferred, I have no chance to respond. I'm really worried.

Receiver: uh huh

Receiver: There's no history between Kevin and ▆Redacted▆ right

Receiver: I have no idea who is the boss from inside your company.

Yu: Kevin is Pacific Surrogacy's lawyer, he is Allan's friend. Trust is Kevin's.

Receiver: oh

Receiver: I understand

Receiver: Thank you

# EXHIBIT 7

 Jul 9

Henry here are our requested changes.   It has been brought to our attention that there is an issue with Pacific Surrogacy, we need to know if the Agency has changed.   We also need to know who is holding escrow for these contracts.   Also, ▓▓▓▓▓▓ health insurance needs to reviewed to make sure it covers surrogacy.

Sincerely,



Exh 7, Page 86