**WHGC, P.L.C.**
Jeffrey C.P. Wang (SBN 144414)
*JeffreyWang@WHGCLaw.com*
Michael G. York (SBN 89945)
*MichaelYork@WHGCLaw.com*
G. Brent Sims (SBN 179397)
*BrentSims@WHGCLaw.com*
Kathleen E. Alparce (SBN 230935)
*KathleenAlparce@WHGCLaw.com*
1301 Dove Street, Suite 1050
Newport Beach, CA 92660
Tel. (949) 833-8483; Fax: (866) 881-5007

Attorneys for Defendant
HAOTIAN BAI

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| PACIFIC SURROGACY USA, LLC, a California Limited Liability Company; YULUN JIANG, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>HAOTIAN BAI, an individual; DOES 1-25,<br><br>Defendants. | CASE NO. SA CV 19-1456-DOC (JDEx)<br><br>[The Honorable David O. Carter]<br><br>**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>**Date:** August 5, 2019<br>**Time:** 8:30 a.m.<br>**Ctrm:** 9D |

1

...

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 4

II. PROCEDURAL BACKGROUND ...................................................................... 4

III. BACKGROUND FACTS ................................................................................... 6

    A. JIANG FIRES BAI ........................................................................................ 7
    B. JIANG CLEANS HOUSE AT PACIFIC .................................................... 9

IV. RELEVANT LAW ........................................................................................... 10

V. APPLICATION .................................................................................................. 12

    A. MS. YU'S "IN PERSON DECEPTIONS" ................................................ 12
    B. THE LETTERS ARE NOT FALSE AND NOT ADVERTISING ............ 13
    1. Treatment of Surrogates and Trust Fund ................................................... 13
    2. Chinese Translation .................................................................................. 14

    3. Fitness of Pacific Surrogacy, USA ............................................................ 15
    4. BAI's Lawsuit ............................................................................................ 15
    5. Bai's Letters are Not Advertising .............................................................. 15
    6. A Retraction Letter is Unnecessary ........................................................... 16

VI. CONCLUSION ................................................................................................. 16

# Table of Authorities

**Cases**

*Avery Dennison Corp.* ............................................................................................................. 16

*Avery Dennison Corp. v. Acco Brands, Inc.*, 2000 U.S. Dist. LEXIS 3938, 2000 WL 986995, at *8 (C.D. Cal. Feb. 22, 2000) ............................................................................................. 12

*Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir. 1993) ........................................ 11

*Coastal Abstract Serv., Inc., First American Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) 11

*Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, No. 81 CIV 731(CSH), 1982 U.S. Dist. LEXIS 13594, 1982 WL 121559, *2 (S.D.N.Y. June 9, 1982) ............................................................ 11

*Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006.) ...................... 5

*Luxpro Corp. v. Apple Inc*, ....................................................................................................... 16

*Luxpro Corp. v. Apple Inc.*, 2011 U.S. Dist. LEXIS 89933, *12-13, 2011-2 Trade Cas. (CCH) P77,744, 2011 WL 3566616. ................................................................................................. 12

*Luxpro v. Apple*, CASE No. 08-cv-4092 .................................................................................. 12

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1054 (9th Cir. 2008) ................... 11

See *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) ............................................ 11

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citing 15 U.S.C. § 1125(a)(1)(B)). ....................................................................................................................... 10

*Zinus Inc. v. Simmons Bedding Co* .......................................................................................... 16

*Zinus Inc. v. Simmons Bedding Co.*, 2007 WL 4287391, at *5 (N.D. Cal. Dec. 6, 2007) .......... 12

**Other Authorities**

https://www.merriam-webster.com/dictionary/. ....................................................................... 14

https://www.merriam-webster.com/dictionary/filed ................................................................ 15

## Memorandum of Points and Authorities

### I. INTRODUCTION

HAOTIAN BAI ("BAI") sent out two letters: one on July 1, 2019 that went to one person, and one on July 3, 2019 that went to several agencies he had done business with at PACIFIC SURROGACY, LLC ("PACIFIC.") PACIFIC was dissolved shortly after YULUN JIANG ("JIANG") told BAI that if BAI did not sign dissolution papers, JIANG would show illicit photographs and videotapes of BAI to his friends and family. Instead of dissolving the company and dividing assets, JIANG shifted all of PACIFIC's customers, assets, contracts and vendors to his new business PACIFIC SURROGACY, USA, LLC. BAI, completely shut out of the new business, sent letters to persons with whom PACIFIC had done business in an effort to protect himself from liability and to make those entities aware of the switch in company personnel.

JIANG has now brought suit alleging that these letters constitute false advertising under the Lanham Act. These letters, however, contain no advertisements, and are not false or misleading, therefore they are well outside the scope of the Lanham Act and not subject to the injunctive relief JIANG seeks.

### II. PROCEDURAL BACKGROUND

On June 24, 2019, YULUN JIANG ("JIANG"), and PACIFIC filed suit in Orange County Superior Court, Case No. 30-2019-01078573-CU-BT-CJC. Later that same week, and prior to his knowledge that another case had been filed, BAI filed suit in Orange County Superior Court, case number 30-219-0179615-CU-BT-CJC.

When BAI discovered the other suit pending against him, he contacted opposing counsel and attempted to work out service issues. Sims Decl., Exh. A. BAI understood that at some point these lawsuits would be in the same courtroom, and wished to work out the logistics. No response was received from JIANG.

BAI contemplated whether he should consolidate the actions, or simply dismiss his own case and respond in the JIANG case. Prior to either of these actions, however, BAI sought emergency assistance from the court. JIANG had possession of all company

accounts, assets, customers, intellectual property, and internet presence, and was consolidating and transferring all company assets to his own company, all the while informing former employees, business associates and vendors that BAI had left the company after having an affair with a subordinate and stealing from the company. (Bahena Decl., ¶¶ 2-5.) In fact, JIANG had extorted BAI into dissolving the company on exactly this basis. (BAI Decl., ¶¶ 21-23.)

Therefore, on July 23, 2019, before 10:00 a.m., BAI gave *ex parte* notice of an application for a temporary restraining order in hopes to gain access to PACIFIC's accounts and information stolen from him. Sims Decl., Exh. B. The ex parte papers were served on JIANG prior to 2:00 p.m. In the late afternoon of the same day, JIANG removed the case, and informed BAI that the *ex parte* would not go forward in that he had divested the state court of jurisdiction. Sims Decl., Exh. C.

The notice of removal itself was defective. Dckt #10; see also Case SACV19-01420 JLS (KESx), Dckt #1. Namely, the notice was brought on behalf of three entities all claiming to be California, citizens, thereby violating 28 USC 1442(b)(2). Case SACV19-01420 JLS (KESx), ECF # 1, ¶¶ 12 and 17. It claimed BAI was domiciled in Hawaii, but that PACIFIC, a Limited Liability Company, of whom BAI was a managing member, was a corporation headquartered in California, *id.* at ¶ 14, in contravention of well-established rules of diversity. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

BAI understood that JIANG had effectively removed any means for him to petition a court for emergency relief in that he had divested the state court of jurisdiction, and placed the case before a tribunal that ultimately statutorily lacked jurisdiction.

On July 25, 2019, JIANG filed his cross-complaint to JIANG's state court complaint, in that, as JIANG'S moving papers point out, this was a compulsory cross-complaint. See moving papers, p. 9:24-26. BAI served this cross-complaint, and brought his *ex parte* on July 26, at 8:30 a.m.

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

Pacific Surrogacy, Pacific Surrogacy USA, and JIANG were represented at the hearing by their attorney of record James Kim. At the hearing, Judge Moss informed the parties that he was reluctant to grant the relief requested without the parties talking it over, but that he saw no reason why the relief would not be granted. He ordered the parties to meet and confer in person and continued the hearing to August 7, 2019 to allow the parties to meet and confer. Following the hearing, counsel for the parties conferred in the hallway. Mr. Kim agreed to come to Bai's attorney's office and conduct the meet and confer. He also indicated that he would bring the company's documents to the meeting in that he planned on providing Bai with them. On July 26, counsel for Bai sent a letter attempting to nail down the specifics of the meet and confer.

On July 28, however, instead of confirming the specifics of the meeting, Mr. Kim sent a letter stating that he had been substituted out of the case, but had informed new counsel on the duty to meet and confer. Sims Decl., Exh. D.

Instead of meeting and conferring, as ordered by the state court, or instead of filing a compulsory cross-complaint, as required by Code of Civil Procedure section 426.30, counsel filed a brand new complaint in this court for an emergency restraining order. JIANG informed Bai that Bai had 24 hours to respond to its temporary restraining order. Sims Decl., Exh. E. This was, in fact, untrue in that the court granted the temporary restraining order within hours of receiving it, despite counsel's notice to the contrary. Dckt #12.

The court granted the ex parte application for Temporary Restraining Order, and ordered BAI to file any reply before August 3, 2019 at 1:00 p.m.

In that JIANG has failed to demonstrate that the letters in question were commercial advertising, or that they were false or misleading, BAI opposes this application.

### III. BACKGROUND FACTS

Upon his release from active military service, and return from Afghanistan, BAI went into business. He and JIANG put $10,000 each into PACIFIC (Bai Decl., ¶ 2.)

1  Their plan was to begin a center that would provide services for those who desired
2  surrogacy services, and for potential surrogates.
3    Defendant PACIFIC was organized on July 12, 2018 by BAI and JIANG on a
4  50/50 basis. (BAI Decl., ¶ 2.) On the first statement of information filed with the
5  Secretary of State, BAI was named the Manager, while JIANG was listed as the agent
6  for service of process, and as a member of the LLC. (BAI Decl., ¶ 4, Exh. F.) JIANG
7  claims they are both managing members, and, because BAI has no access to any
8  company documents, accepts this as true.
9    PACIFIC charged customers a fee for surrogacy services. This initial fee would be
10 taken directly by JIANG and wired into a bank account in China on behalf of PACIFIC.
11 (Bai Decl., ¶ 9, Exh. G.) JIANG had sole access to these accounts. Assisting PACIFIC in
12 its operations was attorney KEVIN LIU. LIU was also BAI's personal attorney. (BAI
13 Decl., ¶ 15.)
14   BAI became concerned about PACIFIC's off-shore accounts. He was concerned
15 that he had no access to these accounts, and informed JIANG regarding these concerns.
16 JIANG, who speaks no English, is in the country on an unresolved asylum claim. He
17 informed BAI that if anything went wrong with the business he would simply leave the
18 country. (BAI Decl., ¶¶ 11-13.)
19   This concerned BAI. While PACIFIC maintained a small account at the Bank of
20 America, for business expenses, the bulk of its assets resided in a bank account in China
21 under JIANG's name, to which BAI had no access. BAI requested to JIANG that
22 PACIFIC repatriate these funds. JIANG informed BAI that if PACIFIC were to
23 repatriate this money, it would be forced to pay taxes. BAI informed JIANG that the
24 company should then pay taxes.
25   **A. JIANG FIRES BAI**
26   Pacific was operating profitably, and things appeared to be running well in the
27 operation.
28

  Unbeknownst to BAI, JIANG prepared, filed and organized a Limited Liability Company called PACIFIC SURROGACY USA, LLC ("PSUL"). Paperwork for this LLC was filed on or about May 26, 2019 with the California Secretary of State. (BAI Decl., ¶ 13, Exh. H.) The statement of information was then filed June 9, 2019. (BAI Decl., ¶ 14, Exh. I.)

  On or about June 16, 2019, Plaintiff BAI was on a plane returning from Hawaii. (BAI Decl., ¶¶ 17.)

  As his plane touched down in Los Angeles, he received a text from JIANG. JIANG informed him that it was useless to struggle. He stated that he had seen the things that BAI had done wrong, and was prepared to tell people about those things. (BAI Decl., Exh. J.) BAI knew exactly what indiscretions were referred to by the JIANG email and he was very concerned to keep this information from his family and friends.(BAI Decl., ¶ 5.)

  At or about 5:00 p.m. that same night, BAI discovered that the PACIFIC link on WECHAT, a social network with ties to China, claimed that PACIFIC was closing. BAI was shocked. Other than the mysterious text he had received he had no foreknowledge of this closing, and had not given his consent or approval to this action. (BAI Decl., ¶ 20.)

  All of the accounts, media presence, customer information, surrogate information, employment information and intellectual property was taken by JIANG and PACIFIC SURROGACY, USA. (BAI Decl., ¶ 22.)

  JIANG informed BAI that JIANG knew of certain personal actions which occurred between BAI and another professional at PACIFIC. JIANG informed BAI that if BAI did not sign documents to dissolve the corporation, JIANG would make photographs and videos of BAI's actions available to persons in BAI's family, and to employees, customers, and personnel associated with PACIFIC. (BAI decl., ¶ 21.)

  BAI met JIANG on Monday, June 18, 2019. At that point, JIANG had already filled out the paperwork dissolving PACIFIC. (BAI Decl., ¶ 23.) BAI felt as though he had no choice but to sign the document. (BAI Decl., ¶ 23.)

### B. JIANG CLEANS HOUSE AT PACIFIC

On June 19, 2019, JIANG began sending out requests to other medical institutions directing them to release medical information to PSUL, JIANG's new business. (BAI Decl., Exh. M and N.) In addition, on June 20, 2019, JIANG called a meeting of all employees of Pacific Surrogacy, LLC. (BAI Decl. ¶ 26.)

At the meeting, KEVIN LIU, personal attorney for BAI, and the attorney for PACIFIC, appeared, and informed PACIFIC's employees that BAI had decided to terminate the company. He informed them that BAI had stolen company money, and had engaged in inappropriate behavior. LIU offered to show photographs and videos of the behavior to those who wished to see them. (BAI Decl., Exh. O; P; Bahena Decl.)

On June 21, 2019, BAI attempted to gain access to PACIFIC's office. There was a sign there instructing him to keep out of the office. BAI went in anyway, and found the file cabinets empty. (BAI Decl., Exh. Q.)

BAI later discovered that JIANG and LIU laid off all of the employees without paying them. (BAI Decl., Exh. R.) BAI offered to pay the employees. (BAI Decl., Exh. S.) LIU and JIANG, however, required all of the employees sign non-disclosure agreements in order to receive final checks. (BAI Decl., Exh T.)

Next, BAI discovered that JIANG and PACIFIC SURROGACY USA, LLC had sent letters to every surrogate at PACIFIC, and informed them that there had been an ownership change in PACIFIC, rather than that there had been a dissolution and winding up. (BAI Decl., ¶ 34.)

In fact, this plan had been in place for a while. Jiang and Liu had told all of the employees at PACIFIC that BAI had stolen from the company, and offered to show everyone photographs and videos taken by a private investigator. (Bahena Decl., ¶¶ 4, 5.) In addition, JIANG had already shared these same photographs and lies with other employees, customers, and referral sources. (*Id.* at ¶ 3.)

To date, BAI has not been able to access the internet materials, accounts or materials he participated in developing for his company. He has been unable to see the

Company's books, contracts, correspondences, and communications with clients, vendors or other personnel. Instead, BAI has been left at the mercy of JIANG and his decision on what to do with company assets.

JIANG was not shy about informing employees that the business would continue on as before, only without BAI. (*Id.* at 10.) But, it is clear from the actions of PACIFIC SURROGACY, USA with respect to their treatment of employees, that JIANG was not a stickler for adherence to employment laws.

## IV. RELEVANT LAW

In the Ninth Circuit, there are five elements to a false advertising claim:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citing 15 U.S.C. § 1125(a)(1)(B)).

To state a viable false advertising claim under the Lanham Act, a plaintiff must, as a threshold matter, allege that the defendant made a false statement of fact. *Id.* "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir. 1993).

OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

'To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context. *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, No. 81 CIV 731(CSH), 1982 U.S. Dist. LEXIS 13594, 1982 WL 121559, *2 (S.D.N.Y. June 9, 1982).

In order to be actionable under the Lanham Act, such a statement must be included in a commercial advertisement. A Plaintiff claiming a communication is a commercial advertisement must satisfy the four prong test adopted in *Coastal Abstract Serv., Inc., First American Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999):

> To constitute commercial advertising or a promotion, a statement of fact must be: (1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1054 (9th Cir. 2008).

Only misrepresentations that are made in the promotion or marketing of a defendant's product are actionable under the Lanham Act. See *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003).

This follows a line of cases determining that even mass mailings did not fall under the Lanham Act where there was no attempt to influence customers to buy from the defendant. For instance, in *Luxpro v. Apple, CASE No.* 08-cv-4092, Apple and Luxpro were in litigation surrounding MP3 players. During the litigation, Apple sent warning

letters to companies demanding that they stop doing business with Luxpro. Luxpro alleged these letters violated the Lanham Act.

The court dismissed the claim, concluding:

> ... Luxpro had not alleged facts to show that Apple's demand letters constituted "commercial advertising or promotion," because there were no facts to show that the letters were designed to influence Luxpro's customers to buy Apple's goods or services.

*Luxpro Corp. v. Apple Inc.*, 2011 U.S. Dist. LEXIS 89933, *12-13, 2011-2 Trade Cas. (CCH) P77,744, 2011 WL 3566616.

This follows a long line of cases with similar outcomes. In *Zinus Inc. v. Simmons Bedding Co.*, 2007 WL 4287391, at *5 (N.D. Cal. Dec. 6, 2007) the court concluded that that although letters sent by the defendant may have influenced customers to refrain from purchasing plaintiff's product, that alone was insufficient to state a Lanham Act claim for false advertising. Likewise, in *Avery Dennison Corp. v. Acco Brands, Inc.*, 2000 U.S. Dist. LEXIS 3938, 2000 WL 986995, at *8 (C.D. Cal. Feb. 22, 2000), the court concluded that cease and desist letters sent by the defendants' attorney were not a marketing and sales tool, but an attempt to protect the defendants' legal rights.

With these concepts in mind, we will consider the three areas which are sought to be curtailed in this motion: 1) Personal communications of Ms. Yu; 2) the July 1, 2019 letter; and 3) the July 3, 2019 letter.

## V. APPLICATION

### A. MS. YU'S "IN PERSON DECEPTIONS"

JIANG repeatedly calls the court's attention to "Ms. Yu's In person deceptions." (Moving Papers, p. 6:21.) BAI is the defendant. Therefore, it is unclear what injunction the court can issue as to BAI that will curtail the actions of YU.

Even still, any allegations as to YU are based solely on JIANG's declaration that he "suspects Qunyao Yu may have been contacting these surrogates directly." Jiang

Decl., p. 5:2-3. In other words, JIANG has no evidence or knowledge of any specific behavior he seeks to enjoin.

### B. THE LETTERS ARE NOT FALSE AND NOT ADVERTISING

Next turning to the two letters at issue. JIANG offers commentary on the letters he wishes the court to censor. First, he states, in bold, "**Mr. Bai's (sic.) Opens a New Venture with a False Advertising Campaign.** Moving papers, p. 3:11. Oddly though, JIANG's papers fails to cite to any portion of either letter announcing any new venture by BAI. In point of fact, there is nothing in those, or any communication, by BAI in this case giving the name of a new venture, offering any good or service for sale, or in any way seeking any receipiant of the letter from buying a product or service from Mr. BAI. JIANG has, essentially, been forced to use false and misleading statements in his claim that the letters were advertisements.

JIANG goes on to break down the letters and outline the false and misleading statements he finds in each.

### 1. Treatment of Surrogates and Trust Fund

JIANG lists several statements in the first letter that he claims are false. He claims the statement "Your surrogate mothers are in danger, so is your trust fund" is misleading. First, and most notably, this statement was contained in the July 1 letter, that was sent to one person.

But, in order to state that this is a false fact, rather than a statement of BAI's opinion, JIANG informs the court that the only possible meaning for this statement is that BAI has falsely claimed surrogates are in physical danger. (Moving papers, p. 8:5-23.). Merriam Webster's on-line dictionary defines "danger" as:

***

> 3 : exposure or liability to injury, pain, harm, or loss
> a place where children could play without danger
> was assured her job was not in danger.
> https://www.merriam-webster.com/dictionary/.

1    Obviously, BAI's statement, which also claims that trust funds are in danger, can also refer to financial danger. BAI had just had his entire business, including all of its assets stolen by JIANG, who had been preparing for over a month for the coup. BAI had no knowledge of whether all business contracts had been changed to reflect Pacific Surrogacy, USA, or whether JIANG would choose this time to make good on his threat to flee the country should adversity strike. Obviously, BAI was concerned about the financial well-being of the surrogates, as well as their mental well being, and therefore stated it in his letter. In addition, BAI was no longer there to safeguard the funds, as he had just been squeezed out of the business by his partner and his own lawyer. Therefore, BAI's statement of warning was well taken. The fact that BAI was concerned with both the financial and physical safety of the surrogates and mothers is bolstered by the complaints of credit card issues, communications, and appointment booking issues.

JIANG also claims that reviews sent with the letters were misleading because they could have been manipulated. He does not, however, provide any evidence that these statements are anything but what they claim to be.

## 2. Chinese Translation

JIANG claims that the Chinese translation of the letter, a translation prepared by BAI himself, informed the Chinese reader that BAI had filed suit, and that the suit had been accepted by the highest court in Orange County. (Moving Papers, p. 8:24-9:2.) BAI is not familiar with the United States Legal System, and is not a certified translator. (BAI Decl., ¶¶ 38-39.) He had attempted to translate the phrase the suit had been filed in the Superior Court in Orange County. This is not an unreasonable mistake. Again, the Merriam Webster dictionary defines superior as follows:

    1 : situated higher up : UPPER

    2 : of higher rank, quality, or importance

    3 : courageously or serenely indifferent (as to something painful or disheartening)

    4a : greater in quantity or numbers escaped by superior speed

    b : excellent of its kind : BETTER

https://www.merriam-webster.com/dictionary/filed

From these definitions, it is apparent that the term "superior" and the term "highest" are not that far removed as to claim that this was anything other than a translation less specific than JIANG's counsel would preferLikewise, it is not unreasonable for someone unfamiliar with technical terms to use the phrase, "the court accepted the complaint" instead of stating that the complaint was "filed." As BAI testified, the meaning he meant to convey was that the case had been filed in Superior Court.

### 3. Fitness of Pacific Surrogacy, USA

JIANG goes on to attempt to pick apart other items in the letters. He seeks to argue about BAI's knowledge of the fitness and expertise of Pacific USA, despite the fact that this is clearly a matter of opinion. BAI was completely shut out of PACIFIC, therefore he initially felt that JIANG was completely unqualified to run the business.

Upon reflection, BAI determined that he was unable to opine on their level of sophistication. JIANG cannot shuffle employees about, and then be surprised that BAI's opinion on the situation shifts.

### 4. BAI's Lawsuit

Finally, JIANG contends that BAI improperly informed others that he had filed a lawsuit in Orange County, because the lawsuit should have been filed as a compulsive counterclaim. Ironically, well after the letters were sent, BAI did file a cross-complaint to JIANG's STATE COMPLAINT, and now JIANG argues that this reshuffling of the claims was improper.

JIANG's argument is breathtaking for several reasons. First, it ignores the fact that the two parallel state complaints were filed days apart. JIANG pretends that once an item is filed, the world has absolute knowledge of it, but JIANG himself filed this current action despite the fact that it is a compulsory cross-complaint in the action he filed in Superior Court.

### 5. Bai's Letters are Not Advertising

OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

Notably absent in the complaint or the moving papers or the letters themselves, is any indication that the letters were any sort of advertisement. Rather, like the letters in *Luxpro Corp. v. Apple Inc*, *Zinus Inc. v. Simmons Bedding Co.*, and *Avery Dennison Corp.*, these are letters seeking not to court buyers, but to protect legal rights. BAI is attempting to alert the people he used to do business with that he is no longer at PACIFIC. This is particularly necessary because JIANG has quietly slipped in and taken his place in a manner that BAI cannot be responsible for.

In fact, despite the fact that there is not one word in either letter that could be construed as an advertisement, JIANG repeats the word "advertising" ad nauseum in his moving papers, as though he can fool the court by repeating a falsehood long enough. There is, simply, no advertisement in either letter.

### 6. A Retraction Letter is Unnecessary

Finally, JIANG requests a retraction letter. He spends ample time requesting a retraction of the "Danger" language in the July 1 letter, despite the fact that this letter was sent to one person, and that person has already spoken to Pacific Surrogacy USA about it. (See JIANG DECL., ¶ 13.)

Next, JIANG, the gentlemen who is attempting to pass off PACIFIC SURROGACY USA as PACIFIC SURROGACY, seeks a retraction letter to remedy any confusion between the two companies going forward. In point of fact, JIANG wants to enlist BAI's help to ensure that no one questions the complete theft of PACIFIC from BAI. This tactic would make BAI complicit in the on-going wrong being perpetrated against him. If there is consumer confusion in this matter, it was caused by JIANG's own machinations in taking over all of the business and assets of the company.

## VI. CONCLUSION

False advertising claims under the Lanham Act are to be brought for advertising. This avoids the first amendment concerns that arise in a case like this where an overzealous plaintiff wants to silence speech with which he disagrees.

Here, JIANG essentially ambushed BAI. He took away his company, all of its assets, and good name. BAI agreed to cooperate to keep JIANG quiet, but, in fact, JIANG showed photographs and videotapes to anyone he could get to look.

In response, BAI made an effort to attempt to alert his colleagues to his side of the story. But, JIANG refuses to allow him even that luxury. Instead, JIANG mislabels these letters as advertisements and asks the court to stop BAI from trying to save his good name. For these and all of the above stated reasons, HAOTIAN BAI respectfully requests that the court deny the herein motion.

DATED: August 3, 2019          WHGC, P.L.C.

By: _____
Jeffrey C.P. Wang
Michael G. York
G. Brent Sims
Kathleen E. Alparce
Attorneys for Defendant
HAOTIAN BAI

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

# CERTIFICATE OF SERVICE

The undersigned hereby certify that a true and correct copy of the **OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**, filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated on non-registered participants on **August 3, 2019**.

Executed on **August 3, 2019**, at Newport Beach, California.

/s/ G. Brent Sims
G. BRENT SIMS

## SERVICE LIST

Malcolm S. McNeil
Ismael Bautista, Jr.
Stefan Bogdanovich
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: (213) 629-7400
Facsimile: (213) 629-7401
Emails: malcolm.mcneil@arentfox.com;
ismael.bautista@arentfox.com;
stefan.bogdanovich@arentfox.com

**OPPOSITION TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**