**WHGC, P.L.C.**
Jeffrey C.P. Wang (SBN 144414)
*JeffreyWang@WHGCLaw.com*
Michael G. York (SBN 89945)
*MichaelYork@WHGCLaw.com*
G. Brent Sims (SBN 179397)
*BrentSims@WHGCLaw.com*
Kathleen E. Alparce (SBN 230935)
*KathleenAlparce@WHGCLaw.com*
1301 Dove Street, Suite 1050
Newport Beach, CA 92660
Tel. (949) 833-8483; Fax: (866) 881-5007

Attorneys for Defendant
HAOTIAN BAI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| PACIFIC SURROGACY USA, LLC, a California Limited Liability Company; YULUN JIANG, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> HAOTIAN BAI, an individual; DOES 1-25, <br><br> Defendants. | CASE NO. SA CV 19-1456-DOC (JDEx) <br><br> [The Honorable David O. Carter] <br><br> **DECLARATION OF HAOTIAN BAI** <br><br> **Date:** August 5, 2019 <br> **Time:** 8:30 a.m. <br> **Ctrm:** 9D |

I, Haotian Bai, declare as follows:

1. I am the Defendant in this matter. The matters stated herein are based on my own personal knowledge, except where stated on information and belief and, as to those, matters, I have a good-faith and belief that they are true. If called upon to do so, I could and would testify to the truth thereof.

2. I am a retired member of the United States armed forces. I served in Afghanistan through 2017. I have been diagnosed with PTSD, and I have been released from service to civilian life.

3. Upon my release from active service, I decided to enter an occupation where I would be able to continue to assist and protect others. That is when I decided to enter the surrogacy business to assist those who sought children to find a way to bring that blessing into their lives.

4. In going into the surrogacy business, I needed a partner, and decided to go into business with Yulun Jiang ("JIANG"). He and I put $10,000 each into PACIFIC SURROGACY, LLC, ("PACIFIC") and agreed to share the company equally.

5. We had planned that PACIFIC would provide services for those who desired surrogacy services and for potential surrogates. JIANG speaks no English, is not a citizen, and is in the country on a pending asylum claim. He informed me that he was very interested in the money that could be made from a surrogacy operation in the United States.

6. We organized PACIFIC on July 12, 2018. Attached hereto as **Exhibit F** is a true and correct copy of the first statement of information filed with the Secretary of State. This copy was printed from the California Secretary of State website.

7. PACIFIC operated utilizing cloud based business software. It maintained passwords and accounts. PACIFIC maintained proprietary information on, among other places, Zoho. The accounts and on-line presence of PACIFIC included the following:

    a. Company email accounts;

    b. Zoho documents, including excel worksheets;

    c. Project management system, maintained on Zoho Projects, this includes, but is not limited to surrogate applications, medical records, background checks, psychological evaluation reports, legal contracts for surrogacy, receipts and accounting;

    d. Client Relationship Management maintained on Zoho;

    e. China Construction Bank Account, with the account ending in 8073796;

    f. Social media accounts, including Facebook, YouTube, Instagram, WeChat, Twitter, and Magisto account, among others;

    g. Zoho Campaign;

    h. Zoho Showtime containing webinar training information;

    i. The PACIFIC website and domain;

    j. PACIFIC's Gmail account;

    k. PACIFIC's one drive and Microsoft Suite containing trade secret and business information;

    l. Gusto, an integrated human resource system which includes payroll and personnel information;

    m. Canva, a design tool utilized by PACIFIC in the creation of marketing material; and

    n. Banking account information.

8. PACIFIC maintained these materials utilizing password and security codes, and took adequate steps to protect this material to ensure that it was kept private and secret and this information provided value to PACIFIC in whole or in part because they were confidential and secret and allowed PACIFIC to operate with an advantage over those who lacked access to these materials.

9. PACIFIC charged customers a fee for surrogacy services. This initial fee would be taken directly by JIANG and wired into a bank account located in China on behalf of PACIFIC. Attached hereto as **Exhibit G** is a true and correct copy of wiring instructions given to clientele. JIANG has the sole access to that account. I am informed and believe that this account is his father's bank account. Despite the fact that JIANG claims asylum from China, he has multiple contacts with China and believed that this account would be the best place to store the bulk of PACIFIC's funds.

10. PACIFIC also maintained an account at Bank of America. This account did not have the majority of PACIFIC's money, as the bulk of the money had been taken by

1 JIANG and wired into his father's bank account in China.

2   11.   JIANG and I had discussed this situation. I informed JIANG that we would need to repatriate that money for use by PACIFIC. JIANG informed me that if we did that, the company would then need to pay taxes on the money. I told JIANG that the company should pay taxes on that money. We never reached a satisfactory resolution on this issue, and I am informed and believe that the bulk of the company's funds still are abroad.

   12.   JIANG has informed me on more than one occasion that his goal was to make as much money from the company as possible. He even told me that if there were any problems with the business, he would simply flee the country as he is not a citizen. These discussions began to cause a rift in our business arrangement.

   13.   I did not know at the time, but I have since learned that on or around May 26, 2019, JIANG filed paperwork for an entity called PACIFIC SURROGACY USA, LLC. A true and correct copy of documents obtained from the California Secretary of State website is attached hereto as **Exhibit H**.

   14.   The statement of information for PACIFIC SURROGACY USA, LLC was filed on or about June 9, 2019. A true and correct copy of documents obtained from the California Secretary of State website is attached hereto as **Exhibit I**. I had no knowledge that these documents were filed, or this entity was created until much later.

   15.   Kevin Liu served as both an attorney for PACIFIC, and as my personal attorney. He handled several matters for me, including unlawful detainers. He also drafted and filed paperwork on behalf of PACIFIC.

   16.   In addition to the accounts made by PACIFIC for services to be provided to their customers, PACIFIC customers created a trust account to hold funds for their continued care throughout the scope of their surrogacy. In or around the beginning of June 2019, this trust account contained over $1,000,000, and is overseen by attorney Henry Wang.

   17.   On or about June 16, 2019, I was returning to Los Angeles from Hawaii.

My travel plans were available to interested parties.

18. When I arrived in Los Angeles, I received a text from JIANG. JIANG informed me that it was useless to struggle. He stated that he had seen the things that I had done wrong, and that he was prepared to tell people about those things. Attached hereto as **Exhibit J** is a true and correct copy of that text.

19. At that time, I became very fearful that JIANG was attempting to blackmail me. I have since been informed that JIANG hired a private investigator to follow me and take photographs and videos of me. In fact, Kevin Liu, my attorney, had earlier requested a copy of the lease for PACIFIC, and my driver's license from me. He informed me that the driver's license was so that he could file a writ on my behalf. It did not occur to me at the time that Liu was requesting this information to assist in sabotaging PACIFIC, and in hiring a private investigator to follow me. A true and correct copy of that text is attached hereto as **Exhibit K.**

20. At or about 5:00 p.m. that same night, I pulled up my WeChat account and checked the PACIFIC link on WeChat. I was surprised to see that the account claimed that PACIFIC was closing. I had not given consent or approval for this action. In fact, that day, JIANG had sent a message out to all PACIFIC employees informing them that the business was closing. A true and correct copy of that message is attached hereto as **Exhibit L.**

21. I then telephoned JIANG. JIANG informed me that he knew of certain personal actions which occurred between me and another professional at PACIFIC. He said that if I did not sign documents to dissolve PACIFIC, he would make certain photographs and videos available to family, friends, and people associated with PACIFIC. I was fearful that this would occur, and so agreed to meet with him.

22. I then discovered that all of PACIFIC's accounts had either been deleted or moved, or that the passwords had been changed. I was unable to access any of PACIFIC's accounts, or information.

23. I met with JIANG on Monday, June 18, 2019. JIANG already had

**DECLARATION OF HAOTIAN BAI**

paperwork filled out for me to sign. He again told me that if I did not cooperate, he would expose my secrets to my family and friends. I felt I had no choice but to cooperate with JIANG.

24. I since have become aware that on June 19, 2019, forms were sent out requesting other medical institutions to release medical information to Pacific Surrogacy USA, LLC, JIANG's new business. Attached hereto as **Exhibit M** is a true and correct copy of one such request, redacted to hide personal information.

25. I was also informed that JIANG called a meeting of all employees of Pacific Surrogacy, LLC. Attached hereto as **Exhibit N** is a true and correct copy of a letter printed out for me by a PACIFIC employee. I am informed and believe that this letter was provided to all PACIFIC employees, and that a meeting took place wherein employees were informed that I had decided to break up the company.

26. I am informed and believe that at the June 20, 2019 meeting, my attorney Kevin Liu was present along with JIANG. I am informed and believe that Liu told the employees that I had decided to break up the company, that I had stolen money from the company to stop them from getting paid, and that I had inappropriate relations with a professional at PACIFIC, and that he would provide photographs and videos if anyone wanted to see them.

27. A true and correct copy of an email from Kevin Liu corroborating this is attached hereto as **Exhibit O.**

28. In addition, a text from a former employee talking about the meeting is attached hereto as **Exhibit P**.

29. On June 21, 2019, I attempted to gain access to PACIFIC's office. I went in to the office, and found the file cabinets empty. Attached hereto as **Exhibit Q** are true and correct copies of photographs I took of the file cabinets.

30. I discovered that most of the computers belonging to PACIFIC had already been removed from the office. I took possession of some of the remaining computers to determine if I could gain access to the company accounts or information that had been

deleted, but I could not.

31. I later discovered that JIANG and Liu had laid off all of the employees without paying them. A true and correct copy of a text I received from an employee is attached hereto as **Exhibit R.**

32. I extended an offer to assist in the payment of the employees because I wanted to be sure they were taken care of. A true and correct copy of that letter is attached hereto as **Exhibit S**.

33. Finally, one of the employees informed me that they had been given their final checks, but they were required to sign a Non-Disclosure Agreement prior to receiving them. A true and correct copy of that text is attached hereto as **Exhibit T.**

34. Next, I learned from a surrogate that JIANG and PACIFIC SURROGACY USA, LLC had sent letters to every surrogate at PACIFIC, informing them that there had been an ownership change in PACIFIC, rather than that there had been a dissolution and winding up.

35. I sent the letter dated July 1, 2019 to Xuyang Deng at Mengmei, INC. I was concerned that JIANG was continuing to service all of PACIFIC's surrogates, clients and vendors, and that I was not there to oversee the accounting, care or treatment. I was unsure of who was remaining at PACIFIC, and I was concerned regarding further liability on my part.

36. The second letter I had sent to various fertility clinic marketing firms similar to Mengmei in nature, including FSAC, LLC and Southern California Reproductive Confidant, LLC. I only sent letters to centers that we had conducted business with when I was at Pacific because I wanted to be sure that people understood that I was no longer at Pacific, and I wanted our former clients to be careful. The purpose of the letter was not to influence anyone to purchase anything from me. Notably, there is no company name, and no services, prices, or phone number mentioned.

37. I believed that the surrogates and mothers would not be properly cared for,

and, because I knew that JIANG had most of PACIFIC's cash overseas that he could leave the clients and surrogates unprotected. I was also concerned that the actions of LIU and JIANG may bleed over into the treatment of the trust account and the surrogates, and so I was concerned that the surrogates were in danger of poor care, and of being swindled.

38. I translated that letter myself. I am not a certified translator, nor am I familiar with the Unites State Court System. I attempted to state that I had filed a complaint in the Superior Court of Orange County. Because I am unfamiliar with U.S. legal terms in Chinese, I translated "Superior Court" with characters that could be used to say highest court.

39. In addition, when I stated that the court had accepted the complaint, my meaning was that the complaint had been filed with the court. These changes were not done to mislead, but rather reflect what I believed the proper translation was at the time.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct. This declaration is executed on August 3 , 2019.

_____*Haotian Bai*_____
HAOTIAN BAI

## CERTIFICATE OF SERVICE

The undersigned hereby certify that a true and correct copy of the **DECLARATION OF HAOTIAN BAI**, filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated on non-registered participants on **August 3, 2019**.

Executed on **August 3, 2019**, at Newport Beach, California.

/s/ Elena D. Romero
ELENA D. ROMERO

## SERVICE LIST

Malcolm S. McNeil
Ismael Bautista, Jr.
Stefan Bogdanovich
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: (213) 629-7400
Facsimile: (213) 629-7401
Emails: malcolm.mcneil@arentfox.com;
ismael.bautista@arentfox.com;
stefan.bogdanovich@arentfox.com