**EXHIBIT 6**

1   Malcolm S. McNeil (SBN 109601)
    Ismael Bautista Jr. (SBN 252139)
2   Stefan Bogdanovich (SBN 324525)
    **ARENT FOX LLP**
3   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
4   Telephone:    213.629.7400
    Facsimile:    213.629.7401
5   Email:        malcolm.mcneil@arentfox.com
                  ismael.bautista@arentfox.com
6                 stefan.bogdanovich@arentfox.com

7   Attorneys for Plaintiffs and Cross-Defendants
    YULUN JIANG and PACIFIC
8   SURROGACY USA, LLC

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

08/07/2019 at 08:00:00 AM

Clerk of the Superior Court
By Dollie Campos, Deputy Clerk

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        COUNTY OF ORANGE

11

12   YULUN JIANG, an Individual; and
13   YULUN JIANG, an Individual derivatively
     on behalf of Defendant PACIFIC
14   SURROGACY, LLC, a California limited
     liability company;,
15
                    Plaintiffs,
16
         v.
17
     HAOTIAN BAI, an individual; PACIFIC
18   SURROGACY, LLC, a California limited
     liability company; and DOES 1 through 10,
19   Inclusive;,
20                  Defendants.
21
22   AND RELATED CROSS-ACTION.
23

Case No. 30-2019-01078573-CU-BT-CJC

**PLAINTIFFS' OPPOSITION TO
DEFENDANT HAOTIAN BAI'S *EX PARTE*
APPLICATION**

[Filed concurrently herewith Request for
Judicial Notice; Notice of Lodging;
Declarations of Yulun Jiang, Henry Wang,
Stefan Bogdanovich, and Wendy Qiu]

Date:    August 7, 2019
Time:    1:30 p.m.
Dept.:   C13
Judge:   The Hon. Melissa R. McCormick

Complaint filed:   June 24, 2019

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

I.    **INTRODUCTION**

Defendant Haotian Bai's *ex parte* application seeking to stop his ex-partner from winding up the business and effectively ceasing all operations should be denied. Mr. Jiang has a right to wind-up the business according to the dissolution agreement signed by both parties. Mr. Jiang has already offered to give Mr. Bai the financial information he is entitled to under the California Corporations Code, which preserves the status quo. And the weight of the evidence suggests Mr. Bai voluntarily entered into the dissolution, which means he is unlikely to succeed on the merits of his claims.

Troublingly, while Mr. Jiang has been attempting to proceed with this dissolution in good faith, Mr. Bai has not. On June 19, a day after signing the dissolution agreement, he stole $70,000 from the PS bank account. The next day, he and his attorney attempted to extort Mr. Jiang into handing over reigns to the entire business. Then, on July 1, Mr. Bai initiated a false advertising campaign directed at PS's largest clients, falsely accusing his ex-partner and his former colleagues of putting "surrogate mothers... in danger" and accusing Mr. Jiang of theft. He now comes before his Court with unclean hands, requesting relief which finishes his dirty work.

II.    **STATEMENT OF FACTS**

A.    **The Rise and Fall of Pacific Surrogacy, LLC**

Pacific Surrogacy, LLC ("PS") was organized on July 12, 2018, with Haotian Bai and Yulun "Allan" Jiang as equal 50/50 share members of a limited liability company. Declaration of Yulun Jiang ("Jiang Decl.") ¶ 1. While operative, PS provided surrogacy services to aspiring mothers and fathers by connecting them with surrogates. Jiang Decl., ¶ 2. Although Mr. Bai lived in Hawaii, between June 2018 and June 2019, Mr. Bai would typically visit California for one to two work-weeks per month. *Id*. During this time, it became clear Mr. Bai and Mr. Jiang had a fundamental disagreement regarding values and how a surrogacy business should be run. *Id*.

Aspiring parents—often married couples dealing with sensitive issues of infertility—pay considerable sums for surrogacy services. Jiang Decl., ¶ 3. They are often very anxious during the pregnancy, and seek frequent progress updates and other information from PS and PSUSA. *Id*. It is important to aspiring parents, and the business partners referring them, that the parents feel

1  comfortable with PS and PSUSA's services. *Id.* Given the nature of the business, Mr. Jiang

2  believed displaying appropriate tact and discretion in front of sensitive surrogacy clients and

3  business partners was necessary for the nascent business to thrive. Jiang Decl., ¶ 4.

4         Mr. Bai, however, made lewd remarks about the female anatomy of certain surrogates and

5  employees to other employees in the office. Jiang Decl., ¶ 5. Mr. Bai also bragged about his

6  sexual exploits to other employees in the office and during business hours. *Id.* At networking

7  events, he referred to business partners referring couples as "pimps." *Id.* Towards employees, he

8  often used profanity and threats. *Id.* Mr. Bai also engaged in other conduct with employees which

9  Mr. Jiang had long suspected and later confirmed. Jiang Decl., ¶ 8.

10        Even though the business was successful and growing, as far back as October 2018, Mr.

11  Bai expressed reservations about the business and openly considered dissolving the company.

12  Jiang Decl. ¶ 18, Ex. 12. In an October 31, 2018 email, Mr. Bai told Mr. Jiang his "motivation is

13  completely lost and [he had] no motivation to continue to do things." Ex. 12. He went on to say

14  "My wife said… I am heartless, indeed, I can go on Thursday and dissolve the company directly

15  and I'll have no problems falling asleep afterwards." *Id.*

16        Mr. Bai describes himself as "very casual, I do whatever I like; my mood has a great

17  impact on things." Ex. 12. On four separate occasions he withdrew several thousands of dollars

18  from the company's bank account without notifying Mr. Jiang nor asking for Mr. Jiang's

19  authorization. Jiang Decl., ¶ 17, Ex. 9-12. Mr. Bai also frequently brought up the fact he was a

20  US Army Veteran that had seen combat in Afghanistan. Jiang Decl., ¶ 20, *see* also Ex. 4, 5, 13.

21  Mr. Jiang sometimes felt uncomfortable discussing contentious issues with Mr. Bai. Jiang Decl., ¶

22  20. For this reason, Mr. Jiang did not immediately notify Mr. Bai of his own intentions to

23  dissolve the company after filing for a new LLC in May 26, 2019. *Id.* By June 11, 2019, Mr. Bai

24  expressed the same sentiments, and sent a WeChat message to another PS employee stating he

25  wanted to leave the company and break up operations. Jiang Decl., ¶ 21, Ex. 15. He also sent Mr.

26  Jiang an unsigned version of a dissolution document on June 17, 2019. Jiang Decl., ¶ 22, Ex. 16

27  and 17.

28

**B.    The Two Men Agree to Part Ways**

Mr. Jiang feared Mr. Bai's insensitive behavior exposed PS to liability from its employees, and jeopardized valuable business relationships with aspiring parents, surrogates, and business partners. Jiang Decl., ¶ 6. On June 17, 2019, Mr. Jiang finally decided to confront Mr. Bai about these instances and concerns, suggesting the two part ways. *Id.* Because he believed the two of them had irreconcilable differences, Mr. Jiang told Mr. Bai that it was "no need for the meaningless struggles." *Id.* The full text message read:

"Win-win is what I want, and part ways on good terms. No need for meaningless struggles. You will get whatever belongs to you. Do not worry! [handshake emoji] Also, as for your wrong doings, I can keep them a secret. I saw some things, and we will talk about the specifics when we meet in person!" Ex. 16.

Thereafter, the two mutually agreed to part ways and dissolve the company, and began negotiating a potential payout. Jiang Decl., ¶ 6.

Mr. Bai claims that during this June 18, 2019 meeting, he was extorted into signing the dissolution agreement. Bai Declaration In Support of *Ex Parte* Application, ¶ 7. Mr. Jiang flatly denies ever telling Mr. Bai he would expose his secrets or any photos. Jiang Decl., ¶ 8. Instead, Mr. Jiang, who personally knew Mr. Bai's family, says he had a man-to-man conversation, where he told  Mr. Bai he would keep his confidence. *Id.* However, Mr. Jiang also said because of Mr. Bai's behavior, he concluded the two men had different values and could not continue working together. *Id.*

Even though they began as equal 50/50 partners, during dissolution negotiations, Mr. Jiang offered Mr. Bai an approximately 56% payout to amicably resolve the dispute, memorialized in a signed, handwritten note. Jiang Decl., ¶ 7, Ex. 1. The written dissolution agreement, signed by both Mr. Bai and Mr. Jiang stated Mr. Jiang would be in charge of winding-up PS. Jiang Decl., ¶ 9, Ex. 2.

The very next day, on June 19, 2019, Mr. Bai withdrew $70,000 from the PS bank account, which hampered the ability of PS to finance its payroll for the rest of the month. Jiang Decl., ¶ 10, Ex. 8. Mr. Bai did this without notifying his ex-partner Mr. Jiang. *Id.* The next day,

1   on June 20, he came to the office of PS with his attorney Mr. Jeffrey Wang, who—as the only

2   attorney at the premises—threatened and screamed at PS employees that they would "go to jail

3   today" if they did not turn over all their computers and documents to Mr. Bai. Jiang Decl., ¶ 11,

4   Ex. 3.

5       During the encounter, Mr. Jeffrey Wang sought to frighten and intimidate and PSUSA

6   employees by virtue of his admission to the bar on multiple occasions, by saying "You are not an

7   attorney – shut up!" and "You are not an attorney – I'm suing you!" Ex. 3.  He also warned other

8   PSUSA employees that "I'm a litigator, I'm going after this dude. And you guys, if you want to

9   come along, please." Ex. 3. Mr. Jiang and the other employees did not submit to this coercion.

10   Jiang Decl. ¶ 10.

11      **C.**    **Mr. Bai's Opens a New Venture with a False Advertising Campaign**

12       Shortly thereafter, Mr. Bai began circulating a series of letters dated July 1 and July 3 to

13   aspiring parents, surrogates, and surrogacy agencies. Jiang Decl., ¶ 11-12, Ex. 4 and 5. The July 1

14   letter, addressed to "Clients and Partners," warns that "your surrogate mothers are in danger" and

15   "not in good hands." Ex. 4. Mr. Bai claims his former colleagues "have neither [the] expertise nor

16   experience to manage your surrogate mothers." *Id.* The July 1 letter was sent through WeChat – a

17   Chinese social media app. Jiang Decl. ¶ 13. Mr. Bai thereafter sent a July 3 letter to "Friends of

18   Pacific Surrogacy." Ex. 5. The letter states "PSUSA and PS… are not related to each other," and

19   that Mr. Bai is "unaware of and cannot speak towards PSUSA's experience or expertise, if any,

20   with managing your surrogate mothers." *Id.*

21       Both letters also accuse Mr. Jiang of theft. Ex. 4 ("My former associate… stole everything

22   from me."); Ex. 5 ("I, too, am a victim. I formally filed lawsuit… for… conversion."). Both

23   letters then attach, as Appendix C, Mr. Bai's complaint in this case, with a caption at the top of

24   the page reading "COMPLAINTS REGARDING YUNLUN [sic] JIANG'S MISDEEDS." The

25   Mandarin language version of the July 1 letter also states that "I [Mr. Bai] have formally filed a

26   lawsuit against my former associate, it has been accepted by the highest court in Orange County."

27   Qiu Decl., ¶ 3; Ex. 4.

28

1    The July 1 letter was sent to a business which refers approximately 50% of PSUSA's

2    aspiring parents. Jiang Decl., ¶ 21. The July 3 letter was sent to at least[1] another three businesses

3    which refer approximately 14-18% of all PSUSA's aspiring parents. *Id.*

4    The United States District Court issued a Temporary Restraining Order stopping Mr. Bai's false

5    advertising campaign. Request for Judicial Notice of Federal Court TRO. Nearly a week later,

6    after Mr. Bai filed an opposition and oral arguments during a hearing, the District Court granted a

7    preliminary injunction stopping and correcting Haotian Bai's false advertising. Request for

8    Judicial Notice of Federal Court Preliminary Injunction. The Court also ordered Haotian Bai to

9    send copies of the order to every known recipient of the deceptive July 1 and July 3 letters. *Id.*

10   **III.    ARGUMENT**

11       **A.    The Status Quo is Precisely What the Plaintiff is Offering**

12   The purpose a preliminary injunction is to preserve the status quo. *Continental Baking Co.*

13   *v. Katz* (1968) 68 Cal. 2d 512, 528. Here, Mr. Jiang has offered Mr. Bai access to the financial

14   information he is entitled to under the California Corporations Code,  as a managing member of

15   PS. The signed dissolution agreement states that Mr. Jiang is in charge of the wind-up of the

16   company, and so Mr. Jiang is entitled to oversee PS, manage its contracts, and distribute its assets

17   in due time. PS is still a functioning operation and the pregnancies must proceed. Mr. Jiang is

18   exercising his business judgement in winding up the business. An injunctive remedy intervening

19   in this would violate the  "'judicial policy of deference to the business judgment of corporate

20   directors in the exercise of their broad discretion in making corporate decisions." *Lee v.*

21   *Interinsurance Exch.* (1996) 50 Cal. App. 4th 694, 711. Moreover, prohibiting Mr. Jiang from

22   continuing to manage the accounts and perform contracts would expose PS to liability.

23       **B.    Haotian Bai is Unlikely to Succeed on the Merits of His Claim**

24   In order to avoid this outcome and harm any subsequent business Mr. Jiang engages in,

25   Mr. Bai claims he was coerced into signing the dissolution agreement during the June 18 meeting.

26   ———————————————

27   [1] Haotian Bai was ordered by the District Court to produce the names of the all known recipients by the August 5, 2019 hearing. Request for Judicial Notice of Federal Court TRO. He failed to do so at the hearing, and only produced some, but not all, of the names. Declaration of Stefan

28   Bogdanovich, ¶ 2.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1  However, Mr. Bai himself expressed desires to dissolve the business in a June 11 text. Ex. 15. He

2  also claims Mr. Jiang sent him an ominous text message that "resistance is futile." However, the

3  full translated text paints a different picture: "Win-win is what I want, and part ways on good

4  terms. No need for meaningless struggles. You will get whatever belongs to you. Do not worry!

5  Also, as for your wrong doings, I can keep them a secret. I saw some things, and we will talk

6  about the specifics when we meet in person." Ex. 16. Further, the text message shows Mr. Jiang

7  used a *handshake emoji*. *Id*. This hardly conveys coercion. Mr. Bai responded shortly thereafter

8  by sending back an unsigned dissolution form. Ex. 16 and 17.

9        Lest there be any doubt,  Mr. Bai's subsequent actions suggest it was highly unlikely that

10  he was cowed into signing the dissolution agreement during the June 18 meeting. On June 19, he

11  stole $70,000 from the PS bank account. If he was so frightened that Mr. Bai would reveal his

12  secrets when he signed the dissolution agreement, then it is implausible that just a day later, he

13  gathered the courage to steal most of the cash PS had at hand.

14        **C.    Haotian Bai's Unclean Hands Bars Any Injunctive Relief**

15        A party which asks a court for equitable relief must "act fairly in the matter for which he

16  seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be

17  denied relief, regardless of the merits of his claim." *Kendall-Jackson Winery, Ltd.* (1999) 76

18  Cal.App.4th 970, 978. The doctrine of unclean hands requires (1) conduct by plaintiff that was

19  unconscionable, bad faith, or inequitable; (2) in connection with the matter in controversy; and

20  (3) it would be inequitable to provide plaintiff relief. *Fladeboe v. American Isuzu Motors Inc.*

21  (2007) 150 Cal.App.4th 42, 56 (unclean hands is a complete defense to legal and equitable causes

22  of action).

23        **1.    Bai's Attempted Extortion**

24        Mr. Bai, through his agent Mr. Jeffrey Wang, attempted to threaten and coerce PSUSA

25  and Mr. Jiang into handing over much of the same information he now seeks. See Ex. 3. He now

26  comes before this court claiming to be irreparably harmed because he was unable to successfully

27  extort Plaintiffs PSUSA and Mr. Jiang into giving him this information, which he is not entitled

28  to under the signed dissolution agreement. He now asks this Court to finish his dirty work.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    This coercion is unconscionable and inequitable. It is directly connected to this dissolution

2    dispute. Moreover, allowing this court to grant him these documents would be inequitable,

3    because it would reward his failed attempt at extortion.

4         **2.    Bai's Theft**

5         Haotian Bai also stole $70,000 from the Pacific Surrogacy bank account a day after he

6    was allegedly extorted in to signing the dissolution agreement.  Jiang Decl., ¶ 10, Ex. 8. This

7    rendered Pacific Surrogacy temporarily insolvent and made it difficult for it to adequately

8    continue short-term operations, including paying its employees and making arrangements for the

9    surrogate mothers. Bai now claims he needs access to all of the company's files and documents so

10   that he may "ensure that his clients all have care provided for them [and] to ensure that his

11   employees have been adequately taken care of." This conduct is also inequitable and inextricably

12   linked with this dissolution dispute. It would be inequitable for the court to permit Bai access to

13   these documents.

14        **3.    Bai's False Advertising**

15        Mr. Bai's July 1 and July 3 letters also prohibit any equitable relief. In support of his *ex*

16   *parte* application, Bai claims he needs access to all of PS's "email accounts" and other client

17   communication software because "Surrogacy centers deal with clients and personnel in fragile

18   states—both physically and mentally." Bai's *Ex Parte* Application, at 9-10. Yet in his July 1 letter

19   addressed to those same "Clients and Partners" Mr. Bai falsely warned that "your surrogate

20   mothers are in danger." Ex. 4, See also Request for Judicial Notice of Federal Court TRO. He

21   tried to deceive Chinese readers unfamiliar with the American legal system by claiming that the

22   "highest court in Orange County" "accepted" his complaint in his July 1 letter. The District Court

23   Judge, previously an Orange County Superior Court judge himself, found this statement to be

24   "clearly misleading." Request for Judicial Notice of Federal Court TRO.

25        This, too is unconscionable and inequitable conduct. Mr. Bai's false advertising is also

26   done in connection with this same matter because the letters attached as Appendix C the same

27   complaint which is now Mr. Bai's cross-complaint in this proceeding. It would be inequitable for

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1  the Orange County Superior Court to now grant Mr. Bai's relief, after he sought to deceptively

2  misappropriate the Court's approval.

3        4.        **Awarding Bai the Relief He Seeks Would Result in a Grave Inequity**

4        For the time being, Bai must not be given access to the China Construction Bank Account.

5  He has already pilfered $70,000 from the other PS bank account.  Bai must also not be given

6  access to the PS email accounts, social media, and other software where he can  access all of PS's

7  clientele. He has already deceptively disparaged his ex-partner and former colleagues through

8  whatever means at his disposal. And even though a federal court has preliminarily enjoined from

9  Bai from making any more false or misleading statements, Bai has shown no intent to comply. He

10  already violated the Temporary Restraining Order by failing to provide the District Court with a

11  full list of all the known recipients of the July 3 letter. Bogdanovich Decl. ¶ 2. Instead, it is up to

12  Mr. Jiang to distribute the assets in due time as he is charge of winding up of PS under the

13  dissolution agreement.

14  **IV.    CONCLUSION.**

15        For the foregoing reasons, Defendant's *Ex Parte* Application must be denied.

16  Dated: August 6, 2019                      Respectfully submitted

17                                             **ARENT FOX LLP**

18

19                                             By: _____

20                                                  Malcolm S. McNeil
                                                   Ismael Bautista, Jr.
21                                                  Stefan Bogdanovich
                                             Attorneys for Plaintiffs and Cross-Defendants
22                                           YULUN JIANG and PACIFIC SURROGACY
                                             USA, LLC
23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' OPPOSITION TO DEFENDANT HAOTIAN BAI'S *EX PARTE* APPLICATION

# EXHIBIT 1



6/17/2019

EXHIBIT 1
- 11 -

# EXHIBIT 2

## RESOLUTION OF PACIFIC SURROGACY, LLC.
## FOR DISSOLUTION OF COMPANY

The undersigned members of **PACIFIC SURROGACY, LLC.**, a California limited liability company (the "Company"), acting by unanimous written consent as authorized by the Operating Agreement do hereby adopt the following resolutions effective June 17, 2019:

**WHEREAS**, the Company has determined that it is in the best interest to wind down and dissolve the Company;

**WHEREAS**, pursuant to Paragraph 8.1 of the Company's Operating Agreement, or such other applicable provisions, the Company shall be dissolved, its assets disposed of, and its affairs wound up upon the resolution of the Members entitled to vote on its dissolution;

**WHEREAS**, the Managers Yulun Jiang and Haotian Bai shall execute the Certificate of Dissolution and file said document with the California Secretary of State;

**WHEREAS**, the Manager Yulun Jiang shall be responsible for the wind up of the Company;

**RESOLVED**, that the Members of the Company hereby unanimously authorize, approve and adopt the dissolution of the Company.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be duly executed as of the date first written above.

EXHIBIT 2

Dated: June ⅃7, 2019

**YULUN JIANG**

By: _____
     Yulun Jiang, Member

**HAOTIAN BAI**

By: _____
     Haotian Bai, Member

**Company: PACIFIC SURROGACY, LLC.**

By: _____
     Yulun Jiang, Manager

By: _____
     Haotian Bai, Manager

| | Secretary of State | LLC-4/7 |
|---|---|---|
| (SEAL) | **Certificate of Cancellation**<br>**Limited Liability Company (LLC)** | |

**IMPORTANT** — Read Instructions before completing this form.

There is **No Fee** for filing a Certificate of Cancellation

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

This Space For Office Use Only

| 1.  Limited Liability Company Name (Enter the exact name of the LLC as it is recorded with the California Secretary of State) | 2.  12-Digit Secretary of State File Number |
|---|---|
| Pacific Surrogacy, LLC. | 201819710525 |

**3.  Dissolution** (California LLCs ONLY: Check the box if the vote to dissolve was made by the vote of **ALL** the members.)

[✓] The dissolution was made by a vote of **ALL** of the members of the California Limited Liability Company.

**Note:** If the above box is not checked, a Certificate of Dissolution (Form LLC-3) must be filed prior to or together with this Certificate of Cancellation.  (California Corporations Code section 17707.08(a).)

**4.  Tax Liability Statement** (Do not alter the Tax Liability Statement.)

All final returns required under the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

**5.  Cancellation Statement** (Do not alter the Cancellation Statement.)

Upon the effective date of this Certificate of Cancellation, the Limited Liability Company's registration is cancelled and its powers, rights and privileges will cease in California.

**6.  Read and Sign Below** (See instructions for signature requirements.  Do not use a computer generated signature.)

By signing this document, I certify that the information is true and that I am authorized by California law to sign.

| | |
|---|---|
| _____<br>Signature | Yulun Jiang<br>Type or Print Name |
| _____<br>Signature | Haotian Bai<br>Type or Print Name |
| _____<br>Signature | _____<br>Type or Print Name |

LLC-4/7 (REV 05/2017)

2017 California Secretary of State
www.sos.ca.gov/business/be

EXHIBIT 2

- 15 -



Secretary of State
Business Programs Division
Business Entities, P.O. Box 944228, Sacramento, CA 94244-2280

# Mail Submission Cover Sheet

**Instructions:**

- Complete and include this form with your submission. **This information only will be used to communicate with you in writing about the submission**. This form will be treated as correspondence and will not be made part of the filed document.
- Make all **checks or money orders** payable to the Secretary of State.
- Do not include a $15 counter fee when submitting documents by mail.
- Standard processing time for **submissions** to this office is approximately 5 business days from receipt. All **submissions** are reviewed in the date order of receipt. For updated processing time information, visit www.sos.ca.gov/business/be/processing-times.

**Optional Copy and Certification Fees:**

- If applicable, include optional copy and certification fees with your submission.
- For applicable copy and certification fee information, refer to the instructions of the specific form you are submitting.

---

**Contact Person:** (Please type or print legibly)

First Name: Yulun                                   Last Name: Jiang

Phone (optional): (626)826-7965

**Entity Information:** (Please type or print legibly)

Name: Pacific Surrogacy, LLC.

Entity Number (if applicable): 201819710525

Comments: Enclosed please find the "Certificate of Cancellation" (Form LLC-4/7) for the business entity

Pacific Surrogacy, LLC. The decision was made by ALL the Members. We ask that a conformed

copy be sent back to our office. Thank you.

---

**Return Address:** For written communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address.

Name:          ⌐Yulun Jiang                                         ⌐

Company:        Pacific Surrogacy, LLC.

Address:        930 Roosevelt, Suite 210

City/State/Zip: ⌐Irvine, CA 92620                                   ⌐

| Secretary of State Use Only | |
|---|---|
| T/TR: | |
| AMT REC'D: | $ |

Doc Submission Cover - OBE (Rev. 09/2016)

EXHIBIT 2

- 16 -

MINUTES OF LLC MEETING
for
# PACIFIC SURROGACY, LLC.

A Meeting for **Pacific Surrogacy, LLC.**, a California limited liability company ("Company")
was held on June 1̲7̲ , 2019 at 3̲ :3̲0̲ AM/PM at the location of 930 Roosevelt, Irvine,
California 92620.


The following members were present at this meeting:

Yulun Jiang

Haotian Bai

The following other people were present at this meeting:

NONE

1. The Meeting was called to order. It was determined that a quorum was present either in
   person or by proxy, and the meeting could conduct business.
2. The Secretary determined and reported that notice of the meeting had been properly
   given or waived by Members in accordance with the Operating Agreement or Company
   resolution.
3. A motion was made and carried, and the Secretary was ordered to attach the
   documentation (if any) or the appropriate affidavit of mailing of notice or waiver of
   notice to the meeting minutes. If no notice is attached, all Members present agreed that
   proper notice of the meeting has been given.
4. <u>Agenda #1:</u> Whereas, a proposed resolution to wind down and dissolve the Company
   was brought before the Members and presented at the meeting. Motion was made to
   approve the dissolution of the Company, and motion was duly made and seconded.
5. The documents presented at the meeting was as follows:
   a. Resolution for the Dissolution of the Company
   b. Certificate of Cancellation (Form LLC-4/7)
6. **RESOLVED**: The resolution to wind down and dissolve the Company was approved by
   unanimous vote.


\*\*\* SIGNATURE PAGE TO FOLLOW \*\*\*


PACIFIC SURROGACY, LLC.                    1        Minutes of Meeting for LLC. re: Dissolution


EXHIBIT 2

There being no further business to discuss, upon motion by unanimous decision and carried, the meeting was adjourned.

Dated: June 17, 2019

Member name:                              Member signature:

Yulun Jiang                               _____

Haotian Bai                               _____

Signature of Secretary of this meeting that documented this form:

_____        Dated: 06.17/19
Yulun Jiang

# EXHIBIT 3

# VIDEO FILE TO BE LODGED SEPARATELY
# WITH THE COURT AT THE *EX PARTE* HEARING.

EXHIBIT 3

- 20 -

# EXHIBIT 4

July 1, 2019

Dearest Client and Partners,

   My name is Haotian Bai and I'm a U.S. Army veteran who served two combat tours in Afghanistan. I was also the former co-founder and co-owner of Pacific Surrogacy, LLC (PS). My company had undergone a series course of events since the mid of June and it was illegally canceled as of June 19th. I'm writing in a strong sense of urgency: Your surrogate mothers are in danger, so is your trust fund.

Pacific Surrogacy, LLC is gone, so are your retainer agreements with PS. In short, your surrogate mothers are not in good hands. My former associate who stole everything from me created a new company named Pacific Surrogacy USA, LLC (PSUSA). Please be aware this is a brand-new entity that has nothing to do with PS. They will NOT be responsible, should anything happen to the surrogates. I created PS from scratch and I can responsibly tell you, they have neither expertise nor experience to manage your surrogate mothers. The complaints from surrogate mothers are in Appendix A.

The Safety of your money deposited in the trust account is questionable, too. The attorney-client trust account was set up by CHH Law, PC. I believe many of you had one of their lawyers to draft and review the surrogacy agreements. The California Bar has filed a formal complaint against one of the main attorneys on May 28, 2019, in which this person is accused of 15 counts of professional misconduct. He was also the one who aided and abetted the plot that created PSUSA. The public record is attached in Appendix B.

In hindsight, I cared less about personal loss. However, it is people like my former associate who make this country more divided and intolerant, it is various misdeeds as he committed incur discrimination, hatred, and bigotries towards underrepresented Chinese American communities. The United States has always been a country of the immigrants, for the immigrants, and by the immigrants. In fact, half of the army were foreigners when we fought and won the Revolutionary War in 1776. I regretted and saddened by his misdeeds that put on an extra label of stigma on Chinese American owned businesses.

I have formally filed a lawsuit against my former associate's misdeeds including conversion, breach of fiduciary duty, accounting, unjust enrichment, declaratory relief, and unfair competition. The full detail can be found in Appendix C. Thanks to our judicial system, I will receive a fair and unbiased jury trial. While justice will serve one day, I want to make sure that your surrogates are healthy and sound, and your money is in good hands.

Warmest regards,

Haotian Bai

EXHIBIT 4

- 22 -

2019 年 7 月 1 日

尊敬的客户和合作方,

　　　我叫白昊天, 我是一名美国陆军退役的老兵, 曾经在阿富汗执行过两次战斗任务。我也是太平洋辅助生育有限责任公司的创始人和持有人。我的公司从六月中旬开始经历了一系列调整, 在 6 月 19 被非法的取消掉。我带着强烈地急迫性, 想告诉你们: 你们的代孕妈妈和信托账户的钱岌岌可危。

　　　太平洋辅助生育有限责任公司没有了, 你们之前所签的准父母合作协议也随之失效了。简单说, 你们的代母现在并没有被管理好。我的前共事在事情发生的一个月前建立了"太平洋辅助生育 USA 有限责任公司, 并偷走了前太平洋的所有。请注意, 这个公司和前太平洋没有任何关系, 所以如果代母出现了任何状况, 它并不会负法律责任。太平洋从无到有是我一手创建的, 现在我可以很负责任的告诉你, 无论从经验还是技术上, 他们都无法经营和管理好代母们。我收集了一些代母的抱怨, 并放在了附录 A

　　　你们存在信托账户里的钱也是需要额外注意的; 信托账户的持有法人, CHH PC 里面的律师也是帮大多数客户起草和审阅合同的。加州法律协会在 5 月 28 日正式在律师协会法庭起诉 CHH 的主要律师之一, 并控诉了他 15 项职业不规范罪名。这份文件是在律师协会的官网公开的, 我也在信的附录 B 里附上了原文件和连接。

　　　回首望去, 我并不太在乎个人的损失。但是, 正式我前共事这种人让美国社会更分裂, 更排外; 正式他的种种罪行让社会对本身就已经失去声音的美国华人更加歧视, 憎恨, 和不兼容。美国是一个移民有、移民享、移民治的政府。打赢美国独立战争的军队更是有一半以上是非出生在美国的移民。我共事的行为为华人商业在美国的地位抹上了一层臭名, 令我感到非常懊恼和难过。

　　　我已经向我的前共事提出诉讼, 并已经被加州橙县最高法院接受。指控包括资产和知识产权的转移、违背信托义务、清算公司财务、不当得利、宣告性救济和不公平竞争。整条故事线和详细均在附录 C。我相信我们健全的司法系统会给我一个公正并无偏见的陪审团, 并带来最后的公道。与此同时, 我会尽自己的全力帮助你们保障代母的健康和资金的安全。

此致


　　　　敬礼
　　　　白昊天

EXHIBIT 4
- 23 -

APPENDIX A: SURROGATE COMPLAINTS





EXHIBIT 4

APPENDIX B: CHH LAW Complaints by California Bar
Source: http://members.calbar.ca.gov/fal/Licensee/
Detail/280454

# Public Matter

1  STATE BAR OF CALIFORNIA
   OFFICE OF CHIEF TRIAL COUNSEL
2  MELANIE J. LAWRENCE, No. 230102
   INTERIM CHIEF TRIAL COUNSEL
3  MIA R. ELLIS, No. 228235
   ASSISTANT CHIEF TRIAL COUNSEL
4  DREW MASSEY, No. 244350
   SUPERVISING ATTORNEY
5  ANGIE ESQUIVEL, No. 286432
   SENIOR TRIAL COUNSEL
6  845 South Figueroa Street
   Los Angeles, California 90017-2515
7  Telephone: (213) 765-1080

**FILED**
5/28/2019

**STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES**

8

9                    STATE BAR COURT

10         HEARING DEPARTMENT - LOS ANGELES

11

12  In the Matter of:                    )  Case No.  **SBC-19-O-30244**
                                          )
13  KEVIN LIU,                            )  NOTICE OF DISCIPLINARY CHARGES
                                          )
14  No. 280454,                           )  OCTC Case Nos. [16-O-12098, 16-O-13444,
                                          )  16-O-13589, 16-O-15584 and 17-O-00092]
15                                        )
    A Member of the State Bar.            )
16

17           **NOTICE - FAILURE TO RESPOND!**

18  IF YOU FAIL TO FILE A WRITTEN ANSWER TO THIS NOTICE
    WITHIN 20 DAYS AFTER SERVICE, OR IF YOU FAIL TO APPEAR AT
19  THE STATE BAR COURT TRIAL:

20  (1) YOUR DEFAULT WILL BE ENTERED;
    (2) YOUR STATUS WILL BE CHANGED TO INACTIVE AND YOU
21      WILL NOT BE PERMITTED TO PRACTICE LAW;
    (3) YOU WILL NOT BE PERMITTED TO PARTICIPATE FURTHER IN
22      THESE PROCEEDINGS UNLESS YOU MAKE A TIMELY MOTION
        AND THE DEFAULT IS SET ASIDE, AND;
23  (4) YOU SHALL BE SUBJECT TO ADDITIONAL DISCIPLINE.
        SPECIFICALLY, IF YOU FAIL TO TIMELY MOVE TO SET ASIDE
24      OR VACATE YOUR DEFAULT, THIS COURT WILL ENTER AN
        ORDER RECOMMENDING YOUR DISBARMENT WITHOUT
25      FURTHER HEARING OR PROCEEDING.  SEE RULE 5.80 ET SEQ.,
        RULES OF PROCEDURE OF THE STATE BAR OF CALIFORNIA.

26

27

28
                                    -1-
                                                kwiktag®    241 073 096

EXHIBIT 4
- 25 -

The State Bar of California alleges:

JURISDICTION

1.  Kevin Liu ("respondent") was admitted to the practice of law in the State of California on December 9, 2011, was a member at all times pertinent to these charges, and is currently a member of the State Bar of California.

COUNT ONE

Case No. 16-O-12098<br>Former Rules of Professional Conduct, Rule 1-300(B)<br>[Unauthorized Practice of Law in Other Jurisdiction]

2.  From in or about June 2015 through in or about December 2015, respondent practiced law in Wyoming by agreeing to perform pre-litigation and loan modification work on behalf of his clients, Mariano and Norma Fonseca, in connection with their property located in Wyoming, when to do so was in violation of the regulations of the profession in Wyoming, namely, Wyoming Rules of Professional Conduct 5.5, in willful violation of the former Rules of Professional Conduct, rule 1-300(B).

COUNT TWO

Case No. 16-O-12098<br>Former Rules of Professional Conduct, Rule 4-200(A)<br>[Illegal Fee]

3.  From on or about June 2015 to October 2015, respondent entered into an agreement for, charged and/or collected from Wyoming residents Mariano and Norma Fonseca a fee of approximately $2,400 to perform legal services that were illegal because respondent was not entitled to practice law in Wyoming, in willful violation of the former Rules of Professional Conduct, rule 4-200(A).

//

//

//

//

//

-2-

EXHIBIT 4<br>- 26 -

COUNT THREE

Case No.16-O-13444
Former Rules of Professional Conduct, Rule 1-300(B)
[Unauthorized Practice of Law in Other Jurisdiction]

4. From on or about March 5, 2015 through in or about September 16, 2015, respondent practiced law in Texas by agreeing to perform pre-litigation and loan modification work on behalf of his client, Paul Benson in connection with his property located in Texas, when to do so was in violation of the regulations of the profession in Texas, namely, Texas Disciplinary Rules of Professional Conduct 5.05, in willful violation of former Rules of Professional Conduct, rule 1-300(B).

COUNT FOUR

Case No. 16-O-13444
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

5. From on or about March 5, 2015 through on or about June 28, 2015, respondent entered into an agreement for, charged and/or collected from Texas resident Paul Benson a fee of approximately $3,600 to perform legal services that were illegal because respondent was not entitled to practice law in in Texas, in willful violation of the former Rules of Professional Conduct, rule 4-200(A).

COUNT FIVE

Case No. 16-O-13589
Business and Professions Code section 6106.3(a)
[Violation of Civil Code section 2944.6(a)]

6. On or about July 31, 2014, respondent negotiated, arranged, or offered to perform a mortgage loan modification or other form of mortgage loan forbearance for a fee paid by a borrower and client, namely Faye Bon Shirazi, in advance of any service and thereafter entered into a fee agreement with the client without providing the client, prior to entering into that agreement, the following as a separate written statement, in not less than 14-point bold type, as required by Civil Code section 2944.6(a), in willful violation of Business and Professions Code section 6106.3:

-3-

EXHIBIT 4
- 27 -

1   It is not necessary to pay a third party to arrange for a loan modification
2   or other form of forbearance from your mortgage lender or servicer.
    You may call your lender directly to ask for a change in your loan terms.
3   Nonprofit housing counseling agencies also offer these and other forms
4   of borrower assistance free of charge.  A list of nonprofit housing counseling
    agencies approved by the United States Department of Housing and Urban
5   Development (HUD) is available from your local HUD office or by visiting
    www.hud.gov.

6                              COUNT SIX

7                          Case No. 16-O-13589
                 Former Business and Professions Code, section 6106.3(a)
8            [Violation of Civil Code § 2944.7(a)(1) – Illegal Advanced Fee]

9      7.  On or about August 4, 2014, respondent agreed to negotiate and perform a mortgage

10  loan modification or other mortgage loan forbearance for a fee for his client, Faye Bon Shirazi,

11  and on or about August 4, 2014 received approximately $3,300 from the client before respondent

12  had fully performed each and every service respondent had been contracted to perform or

13  represented to the client that respondent would perform, in violation of Civil Code, section

14  2944.7, and in willful violation of former Business and Professions Code, section 6106.3.

15                             COUNT SEVEN

16                         Case No. 16-O-13589
                  Business and Professions Code, section 6068(a)
17                [Violation of Civil Code § 2944.7(a)(1)]

18     8.  On or about August 4, 2014, Faye Bon Shirazi hired respondent to attempt to

19  negotiate a mortgage loan modification or other mortgage loan forbearance for an advance fee.

20  On or about August 4, 2014, respondent received approximately $3,300 from the client before

21  respondent had fully performed each and every service respondent had been contracted to

22  perform or represented to the client that respondent would perform, in violation of Civil Code,

23  section 2944.7, and in willful violation of Business and Professions Code, section 6068(a).

24  //

25  //

26  //

27  //

28
                                   -4-

EXHIBIT 4
- 28 -

## COUNT EIGHT

Case No. 16-O-13589
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

9.  On or about August 4, 2014, Faye Bon Shirazi hired respondent to attempt to negotiate a mortgage loan modification or other mortgage loan forbearance for an advance fee. On or about August 4, 2014, respondent received approximately $3,300 from the client before respondent had fully performed each and every service respondent had been contracted to perform or represented to the client that respondent would perform, in willful violation of the former Rules of Professional Conduct, rule 4-200(A).

## COUNT NINE

Case No. 16-O-13589
Former Rules of Professional Conduct, Rule 1-400(C)
[Solicitation of a Prospective Client]

10.  In or about July of 2014, respondent made a solicitation, or allowed one to be made on respondent's behalf by a representative of respondent's law firm, Pinepoint Law Group ("PLG") to Faye Bon Shirazi, a prospective client, by communication delivered by telephone, with whom neither respondent nor his law firm had any family or prior professional relationship, in willful violation of former Rules of Professional Conduct, rule 1-400(C).

## COUNT TEN

Case No.16-O-15584
Former Rules of Professional Conduct, Rule 1-300(B)
[Unauthorized Practice of Law in Other Jurisdiction]

11.  From on or about October 30, 2013 through in or about December of 2013, respondent practiced law in Wisconsin by agreeing to perform pre-litigation and loan modification work on behalf of his client, Wanda Soto in connection with her property located in Wisconsin, when to do so was in violation of the regulations of the profession in Wisconsin, namely, Wisconsin Rules of Professional Conduct 5.5, in willful violation of former Rules of Professional Conduct, rule 1-300(B).

//

-5-

EXHIBIT 4
- 29 -



## COUNT ELEVEN

Case No.16-O-15584
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

12.   From on or about October 30, 2013 through December 11, 2013, respondent entered into an agreement for, charged and/or collected from Wisconsin resident Wanda Soto a fee of approximately $3,000 to perform legal services that were illegal because respondent was not entitled to practice law in in Wisconsin, in willful violation of the former Rules of Professional Conduct, rule 4-200(A).

## COUNT TWELVE

Case No. 17-O-00092
Business and Professions Code section 6106.3(a)
[Violation of Civil Code section 2944.6(a)]

13.   On or about September 26, 2014, respondent negotiated, arranged, or offered  to perform a mortgage loan modification or other form of mortgage loan forbearance for a fee paid by a borrower and client, namely Dennis Middleton, in advance of any service and thereafter entered into a fee agreement with the client without providing the client, prior to entering into that agreement, the following as a separate written statement, in not less than 14-point bold type, as required by Civil Code section 2944.6(a), in willful violation of Business and Professions Code section 6106.3:

> It is not necessary to pay a third party to arrange for a loan modification or other form of forbearance from your mortgage lender or servicer.
> You may call your lender directly to ask for a change in your loan terms. Nonprofit housing counseling agencies also offer these and other forms of borrower assistance free of charge.  A list of nonprofit housing counseling agencies approved by the United States Department of Housing and Urban Development (HUD) is available from your local HUD office or by visiting www.hud.gov.

//
//
//
//

-6-

EXHIBIT 4

- 30 -

## COUNT THIRTEEN

Case No. 17-O-00092
Former Business and Professions Code, section 6106.3(a)
[Violation of Civil Code § 2944.7(a)(1) – Illegal Advanced Fee]

14.   On or about September 26, 2014, respondent agreed to negotiate and perform a mortgage loan modification or other mortgage loan forbearance for a fee for his client, Dennis Middleton, and between on or about October 1, 2014 and November 15, 2014 received approximately $3,600 from the client before respondent had fully performed each and every service respondent had been contracted to perform or represented to the client that respondent would perform, in violation of Civil Code, section 2944.7, and in willful violation of former Business and Professions Code, section 6106.3.

## COUNT FOURTEEN

Case No. 17-O-00092
Business and Professions Code, section 6068(a)
[Violation of Civil Code § 2944.7(a)(1)]

15.   On or about September 26, 2014, Dennis Middleton hired respondent to attempt to negotiate mortgage loan modification or other mortgage loan forbearance for an advance fee. Between on or about October 1, 2014 and November 15, 2014, respondent received approximately $3,600 from the client before respondent had fully performed each and every service respondent had been contracted to perform or represented to the client that respondent would perform, in violation of Civil Code, section 2944.7, and in willful violation of Business and Professions Code, section 6068(a).

## COUNT FIFTEEN

Case No. 17-O-00092
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

16.   On or about September 26, 2014, Dennis Middleton hired respondent to attempt to negotiate mortgage loan modification or other mortgage loan forbearance for an advance fee. Between on or about October 1, 2014 and November 15, 2014, respondent received approximately $3,600 from the client before respondent had fully performed each and every

-7-

EXHIBIT 4
- 31 -

1    service respondent had been contracted to perform or represented to the client that respondent

2    would perform, in violation of Civil Code, section 2944.7, in willful violation of the former

3    Rules of Professional Conduct, rule 4-200(A).

4                    <u>NOTICE - INACTIVE ENROLLMENT!</u>

5        **YOU ARE HEREBY FURTHER NOTIFIED THAT IF THE STATE BAR**
         **COURT FINDS, PURSUANT TO BUSINESS AND PROFESSIONS CODE**
6        **SECTION 6007(c), THAT YOUR CONDUCT POSES A SUBSTANTIAL**
         **THREAT OF HARM TO THE INTERESTS OF YOUR CLIENTS OR TO**
7        **THE PUBLIC, YOU MAY BE INVOLUNTARILY ENROLLED AS AN**
         **INACTIVE MEMBER OF THE STATE BAR.   YOUR INACTIVE**
8        **ENROLLMENT WOULD BE IN ADDITION TO ANY DISCIPLINE**
         **RECOMMENDED BY THE COURT.**

9

10                    <u>NOTICE - COST ASSESSMENT!</u>

11       **IN   THE   EVENT   THESE   PROCEDURES   RESULT   IN   PUBLIC**
         **DISCIPLINE, YOU MAY BE SUBJECT TO THE PAYMENT OF COSTS**
         **INCURRED BY THE STATE BAR IN THE INVESTIGATION, HEARING**
12       **AND REVIEW OF THIS MATTER PURSUANT TO BUSINESS AND**
         **PROFESSIONS CODE SECTION 6086.10.**

13                                    Respectfully submitted,

14

15                                    THE STATE BAR OF CALIFORNIA
                                      OFFICE OF CHIEF TRIAL COUNSEL

16

17
     DATED:   5/28/19            By:
18                                    Angie Esquivel
                                      Deputy Trial Counsel
19

20

21

22

23

24

25

26

27

28

                                      -8-

EXHIBIT 4
- 32 -

1

## DECLARATION OF SERVICE BY CERTIFIED MAIL

2

CASE NUMBER:

3

(OCTC Case Nos.: 16-O-12098, 16-O-13444, 16-O-13589, 16-O-15584, 17-O-00092)

4

   I, the undersigned, over the age of eighteen (18) years, whose business address and place

5

of employment is the State Bar of California, 845 South Figueroa Street, Los Angeles, California
90017, declare that I am not a party to the within action; that I am readily familiar with the State

6

Bar of California's practice for collection and processing of correspondence for mailing with the
United States Postal Service; that in the ordinary course of the State Bar of California's practice,

7

correspondence collected and processed by the State Bar of California would be deposited with
the United States Postal Service that same day; that I am aware that on motion of party served,

8

service is presumed invalid if postal cancellation date or postage meter date on the envelope or
package is more than one day after date of deposit for mailing contained in the affidavit; and that

9

in accordance with the practice of the State Bar of California for collection and processing of
mail, I deposited or placed for collection and mailing in the City and County of Los Angeles, on
the date shown below, a true copy of the within

10

11

NOTICE OF DISCIPLINARY CHARGES

12

in a sealed envelope placed for collection and mailing as certified mail, return receipt requested,
Article No.: 9414 7266 9904 2111 0165 55, at Los Angeles, on the date shown below, addressed

13

to:

14

Kevin Liu
801 S Garfield Ave Ste 338

15

Alhambra, CA 91801-4486

16

in an inter-office mail facility regularly maintained by the State Bar of California addressed to:

17

   N/A

18

   I declare under penalty of perjury under the laws of the State of California that the

19

foregoing is true and correct.  Executed at Los Angeles, California, on the date shown below.

20

DATED: May 28, 2019          Signed: _____

21

                                                     Max Carranza
                                                     Declarant

22

23

24

25

26

27

28

-1-

EXHIBIT 4
- 33 -

APPENDIX C: COMPLAINTS REGARDING YUNLUN JIANG'S MISDEEDS

<table>
<tr><td>1</td><td><b>WHGC, P.L.C.</b><br>Jeffrey C.P. Wang (SBN 144414)</td></tr>
<tr><td>2</td><td><i>JeffreyWang@WHGCLaw.com</i><br>Michael G. York (SBN 89945)</td></tr>
<tr><td>3</td><td><i>MichaelYork@WHGCLaw.com</i><br>G. Brent Sims (SBN 179397)</td></tr>
<tr><td>4</td><td><i>BrentSims@WHGCLaw.com</i><br>Kathleen E. Alparce (SBN 230935)</td></tr>
<tr><td>5</td><td><i>KathleenAlparce@WHGCLaw.com</i><br>1301 Dove Street, Suite 1050</td></tr>
<tr><td>6</td><td>Newport Beach, CA 92660<br>Tel. (949) 833-8483; Fax: (866) 881-5007</td></tr>
</table>

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**06/27/2019** at 12:33:53 PM

Clerk of the Superior Court
By Miriam Cruz,Deputy Clerk

8  Attorneys for Plaintiff
HAOTIAN BAI

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF ORANGE**

HAOTIAN BAI, an individual;

         Plaintiff

vs.

PACIFIC SURROGACY, LLC, a California Limited Liability Company; PACIFIC SURROGACY USA, LLC, a California Limited Liability Company; YULUN JIANG, an individual; and DOES 1-25, inclusive,

         Defendants.

CASE NO. 30-2019-01079615-CU-BT-CJC

Judge Deborah Servino

**COMPLAINT FOR:**

  1)  **CONVERSION;**
  2)  **BREACH OF FIDUCIARY DUTY;**
  3)  **ACCOUNTING;**
  4)  **UNJUST ENRICHMENT;**
  5)  **DECLARATORY RELIEF;**
  6)  **UNFAIR COMPETITION**

**DEMAND FOR JURY TRIAL**

    1.    Plaintiff HAOTIAN BAI (**"BAI"**) for his Complaint against Defendants **PACIFIC SURROGACY, LLC**, a California Limited Liability Company (**"PACIFIC"**); **PACIFC SURROGACY USA, LLC**, a California Limited Liability Company (**"PSUL"**), **YULUN JIANG**, (**"JIANG"**), and DOES 1-25, hereby bring his claims seeking relief, allege on personal knowledge as to all facts known to him, and on information and belief as to all other facts, as follows:

1

COMPLAINT

EXHIBIT 4

- 34 -

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action in that the Defendants **PACIFIC** and **PSUL** are both California Limited Liability Companies, organized under the laws of the State of California, with their headquarters in Orange County.

3.    Defendant **JIANG** is an individual residing and/or conducting business in this state and county. Venue is proper pursuant to California Code of Civil Procedure section 395.5 because the Limited Liability Corporations are defendants herein, and are headquartered in Orange County. The amount in controversy is in excess of the jurisdictional minimum.

## PARTIES

4.    Plaintiff **BAI** is an individual, and was a member, officer and founding member of **PACIFIC**.

5.    Defendant **PACIFIC** is a Limited Liability Company, organized under the laws of the State of California, with its principal place of business in Irvine, California.

6.    Defendant **PSUL** is a Limited Liability Company, organized under the laws of the State of California, with its principal place of business in Irvine, California.

7.    Defendant **JIANG** is an individual who at all times relevant to this Complaint resides in Irvine, CA.

8.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 25, inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

9.    Plaintiff is informed and believe and thereon alleges that at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

## GENERAL ALEGATIONS

10.    Defendant **PACIFIC** was organized on July 12, 2018 by **BAI** and **JIANG** on a 50/50 basis. **PACIFIC** was established to provide services to persons serving as surrogates, as outlined under California Family Law section 7960, *et. seq.* **PACIFIC** retained skilled service providers, had the proper licenses, proper facilities, expertise and knowledge on caring for and advising persons desiring

2

COMPLAINT

EXHIBIT 4

- 35 -

1   to provide these services.

2        11.     **PACIFIC** also had knowledge regarding compliance with state and federal laws and

3   complied with all California regulations, including HIPPA and other regulations.

4        12.     Both **BAI** and **JIANG** had invested substantial sums of money into **PACIFIC**, and

5   each was set to benefit from the continued successful operation of the center.

6        13.     **PACIFIC** operated utilizing cloud based business software. **PACIFIC** maintained

7   passwords and accounts. Among other things **PACIFIC** operated and maintained email accounts,

8   document files, excel spreadsheets, project management systems, client relationship management

9   documents and accounts on this system.

10       14.     **PACIFIC** also maintained under password and security codes confidential information

11  including but not limited to, surrogate applications, medical information, personal background checks,

12  psychological evaluation reports, legal contracts, receipts and accounting.

13       15.     **PACIFIC** also maintained under password and security codes, confidential information

14  including but not limited to, client relationship and management folders, 1099 documents for surrogate

15  recruits, management tools, documents surrogate applications, Customer Relationship Management

16  technology information, medical information, personal background checks, psychological evaluation

17  reports, legal contracts, receipts and accounting, as well as payroll and confidential employment

18  information.

19       16.     **PACIFIC** also maintained social media accounts, including Facebook, Instagram,

20  Twitter, WeChat and Youtube. It maintained websites and MS suite one drives including information

21  that was used in business and provided an economic advantage over competitors who did not know or

22  use it.

23       17.     All of this information was maintained by **PACIFIC** who, at all relevant times,

24  maintained all of this information utilizing security protocols and passwords designed to keep such

25  information private and secure.

26       18.     **PACIFIC** also maintained physical property, including computer monitors, business

27  equipment, and office furnishings.

28       19.     **PACIFIC** charged customers a fee for surrogacy services. This initial fee would be

1    taken directly by **JIANG** and wired into a bank account located in China on behalf of **PACIFIC**.

2          20.    In addition, **PACIFIC** customers created a trust account to hold funds for their

3    continued care throughout the scope of their surrogacy. In or around the beginning of June 2019, this

4    trust account contained over $1,000,000.

5          21.    Unknown to **BAI**, or other persons at **PACIFIC**, **JIANG** prepared, filed and organized

6    a Limited Liability Company called **PACIFIC SURROGACY USA, LLC** ("**PSUL**"). Paperwork for

7    this LLC was filed on or about May 26, 2019 with the California Secretary of State.

8          22.    On or about June 16, 2019, Plaintiff **BAI** was on a plane returning from Hawaii.

9          23.    **JIANG** waited until **BAI** boarded the plane, and then, without authorization,

10   permission, notice, or provocation began destroying, stealing, transferring and/or hiding assets

11   belonging to **PACIFIC**.

12         24.    On June 16, 2019, at or about 4:30 p.m., **BAI** arrived in Los Angeles. At about this

13   time, **BAI** received an electronic message from **JIANG** stating that **JIANG** had seen what **BAI** had

14   done wrong, and that **JIANG** knew **BAI**'s secrets. **JIANG** informed **BAI** that "resistance was futile"

15   and that **BAI, JIANG**, and **PACIFIC** should have a parting of the ways. **BAI** understood this message

16   to be a threat and an attempt to extort **BAI**'s share of the business.

17         25.    At or about 5:00 p.m. on Sunday, June 16, 2019, **JIANG** posted on WeChat that

18   **PACIFIC** would be closing. **BAI** had no foreknowledge of this closing, and had not given his consent

19   or approval to this action.

20         26.    On or about this day, without **BAI'S** knowledge, **JIANG** prepared letters of resignation

21   for the employees of **PACIFIC**.

22         27.    Following this, **BAI** discovered that all of the passwords, accounts, social media,

23   websites, emails, and client information had been deleted, hidden, transferred, or taken over by **JIANG**

24   and/or **PSUL**.

25         28.    **PACIFIC**'s websites had been removed and transferred, and rendered unavailable.

26         29.    Plaintiff no longer had access to any of **PACIFIC**'s documents, accounts, payroll

27   records, electronic information, cloud based programs, or information, ledgers, contracts, vendor

28   agreements, billings, or any other documents of the **LLC**, in direct violation of the operating

4

COMPLAINT

EXHIBIT 4

- 37 -

1   agreement.

2        30.    On or about Monday, June 17, 2019, **JIANG** contacted **BAI** and informed him that all

3   of the papers were drawn up, and that **BAI** must sign them, or **JIANG** would release unfavorable and

4   embarrassing personal information, photographs and videos of **BAI**.

5        31.    As intended, **BAI**, a returned veteran suffering from PTSD, who had a family to protect,

6   felt intimidated and as a result, because of the threats and coercion of **JIANG**, documents were signed

7   for the cancellation of **PACIFIC**.

8        32.    At or about this time, **PSUL** began soliciting employees from **PACIFIC**. Contracts

9   were transferred to **PSUL**, and confidential and secret information had been made available to **PSUL**.

10       33.    On or about June 19, 2019, **JIANG** prepared a letter instructing **PACIFIC's** medical

11  coordinator to send to the medical facilities doing business with **PACIFIC**. This letter instructed the

12  providers to communicate with **PSUL** instead of **PACIFIC**, and providing the address of "930

13  Roosevelt" as **PSUSA, LLC's** new address. All of **PACIFIC's** former information was to go to that

14  address.

15       34.    On or about June 20, 2018, **PSUL** and **JIANG** sent letters to all **PACIFIC's** employees

16  informing them that **PACIFIC** had closed and was terminating all of its employees.

17       35.    Subsequent to these events, **PSUL** and **JIANG** informed all **PACIFIC** employees that

18  they possessed embarrassing photographs and videos of **BAI**, and that **BAI** had terminated **PACIFIC**.

19  Throughout this time period, **BAI** was denied his rights pursuant to California Corporations Code

20  section 17704.10 and under the operating agreement.

21       36.    **KEVIN LIU ("LIU")** acted as an attorney in the formation and organization of

22  **PACIFIC**, and, as such, owed a duty of care and loyalty and was a fiduciary with respect to **PACIFIC**,

23  At that time, **LIU** understood that he was retained by the Company, and that **BAI** and **JIANG**  were

24  equal stakeholders in the company. In addition, **LIU** was the personal attorney for **BAI** on unrelated

25  matters.

26       37.    On information and belief, in conjunction with **JIANG, LIU** assisted in the formation

27  of **PSUL**, with the knowledge that **PSUL** was organized to poach and ultimately take over business

28  from **PACIFIC** while squeezing **BAI** out of the business.

5
COMPLAINT

EXHIBIT 4

- 38 -

38.     **LIU** in conjunction with and under the direction of **JIANG**, informed employees of **PACIFIC**, that **BAI** had decided to terminate **PACIFIC** and that **BAI'S** actions had caused the employees not to receive their pay. In addition, **LIU** informed **PACIFIC** employees of embarrassing and harmful information concerning **BAI**.

39.     **LIU**, as an attorney for both **PACIFIC** and **BAI,** had a duty to provide both with his highest loyalty, and to avoid actions designed to damage either one, and to avoid retention in matters adverse to **PACIFIC** or **BAI**. Both **JIANG** and **LIU** understood the facts surrounding **LIU**'s retention by **PACIFIC** and **BAI.**

40.     **LIU**, in conjunction with **JIANG**, also worked to hide company assets, accounts, contracts, paperwork, payroll documents, vendor accounts, on-line presence and cloud accounts from **BAI**, all to **BAI'S** detriment, and with the goal of stealing business, assets and customers from **BAI** and from **PACIFIC.**

41.     At all relevant times herein, Defendants and each of them have wrongfully and unfairly kept **BAI** from examining corporate property, books, contracts, accounts, intellectual property, payroll accounts and ledgers. Such denial has allowed Defendants and each of them to continue their series of thefts, fraud, and wrongdoings as alleged herein.

42.     **JIANG** has also instructed personnel to change the names of **PACIFIC**'s social media accounts to that of **PSUL.**

43.     On information and belief, **BAI** alleges that Defendant **PSUL** was the alter-ego of Defendant **JIANG**, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that Defendant **JIANG** completely controlled, dominated, managed, and operated the other Defendants to suit his convenience.

44.     In conducting the actions herein alleged, **PSUL** was aware that **JIANG** owed fiduciary obligations to **PACIFIC**, and **BAI**, and set out consciously and deliberately to assist in the breach of those obligations, and in the theft of material belonging to **PACIFIC.**

///

///

---

6

COMPLAINT

EXHIBIT 4

- 39 -

# FIRST CAUSE OF ACTION

## (CONVERSION)

### As to JIANG, PSUL, and DOES 1-25

45.     Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs of this Complaint, as though fully set forth herein.

46.     **PACIFIC** operated under an operating agreement, and a series of agreements that entitled **BAI** to 50% of **PACIFIC**'s profits, accounts, contracts, accounts receivable and inventory.

47.     Following the putative cancellation of **PACIFIC**, **BAI** had an ownership right to an immediate 50% distribution of all funds, assets, and property of **PACIFIC**, as well as all physical property, files, computers, office equipment and bank accounts of **PACIFIC**.

48.     Defendants and each of them intentionally and substantially interfered with **BAI'S** property by taking possession of items of personal property belonging to **BAI**; by preventing **BAI** from accessing accounts, and funds which by right should be his; and by refusing to disclose the location of other assets.

49.     **BAI** did not consent to these actions.

50.     As a result, **BAI** was harmed in that he was denied the use and access to his rightful property.

51.     That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

52.     Defendants' conduct as described herein constitutes "oppression, fraud, or malice" as those terms are defined in California Civil Code Section 3294, and Plaintiff is therefore entitled to punitive damages in an amount according to proof.

# SECOND CAUSE OF ACTION

## (BREACH OF FIDUCIARY DUTY/CONSTRUCTIVE FRAUD)

### As to JIANG and DOES 1-25

53.     Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs of this Complaint, as though fully set forth herein.

54.     Defendant **JIANG** was a Manager and/or officer of **PACIFIC** in accordance with the **PACIFIC** operating agreement, and the actions of the parties. At all times relevant herein, **JIANG** had

1    a fiduciary duty to act in the best interests of **PACIFIC**, and to place the interests of **PACIFIC** above
2    his own, and avoid self-dealing.

3        55.    **JIANG** violated this duty by taking substantially all of the assets of **PACIFIC**, and
4    using those assets for his own use and the benefit of **PSUL.**

5        56.    He further violated this duty by self-dealing and setting up **PSUL** with the intent to
6    convert all of **PACIFIC's** property, poach all of **PACIFIC'S** employees and assume all of
7    **PACIFIC's** contracts.

8        57.    The scope and extent of **JIANG**'s malfeasance is currently unknown in that **JIANG** has
9    precluded others from reviewing the books, contracts, documents, account information and other
10   property rightfully belonging to **PACIFIC**. As such, **JIANG** continues to plunder **PACIFIC's** assets,
11   customers and bank accounts with impunity.

12       58.    As a direct and proximate result of the breach of this duty, Plaintiff has been damaged
13   in an amount to be proven at trial.

14       59.    Defendants' conduct as described herein constitutes "oppression, fraud, or malice" as
15   those terms are defined in California Civil Code Section 3294, and Plaintiff is therefore entitled to
16   punitive damages in an amount according to proof.

17                            **THIRD CAUSE OF ACTION**
18                                **(ACCOUNTING)**
19                            **AS TO JIANG and PACIFIC**

20       60.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs
21   of this Complaint, as though fully set forth herein.

22       61.    In accordance with the **PACIFIC** operating agreement, and the actions of the
23   PARTIES, **BAI** was entitled to 50% of **PACIFIC**'s profits, accounts, contracts, accounts receivable
24   and inventory.

25       62.    As a duty of the operating agreement involves, among other things, a duty to account
26   for all income, revenues and profits derived from Defendants' business. It is not clear that the remedy
27   at law would be as full, adequate and expeditious as it is in equity.

28       63.    Defendants have received and continue to receive, profits and revenues in connection

EXHIBIT 4
- 41 -

1   with the operation of the surrogacy clinic.

2       64.    As a result of the operating agreement, and of the actions of the Defendants, Defendants

3   have received and are withholding money, a portion of which is due to Plaintiff.

4       65.    The amount of money due from Defendants to Plaintiff is unknown to Plaintiff and

5   cannot be ascertained without an accounting of the business receipts, inventory and accounts

6       66.    Plaintiff has demanded an accounting of the aforementioned receipts of the business, or

7   to the extent he has not demanded one, Defendants' actions have made it clear that such a demand

8   would be futile.

9                     **FOURTH CAUSE OF ACTION**

10                    **(UNJUST ENRICHMENT)**

11                    **As to all DEFENDANTS**

12       67.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

13   of this Complaint, as though fully set forth herein.

14       68.    As a result of the breaches by and wrongful acts of Defendants, Defendants have been

15   unjustly enriched at the expense of Plaintiff. Defendants have derived and continue to derive a benefit

16   from failing to perform their contractual obligations pursuant to the parties' business and company

17   agreements, from improperly utilizing Plaintiff's business equipment, accounts, and trade secrets, and

18   by secretly sabotaging Plaintiff's business and attempting to extort Plaintiff.

19       69.    Defendants are under an obligation to pay **BAI** forthwith all amounts by which they

20   have been unjustly enriched, in a sum to be determined at trial.

21                     **FIFTH CAUSE OF ACTION**

22                    **(DECLARATORY RELIEF)**

23                  **As to PACIFIC and PSUL**

24       70.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

25   of this Complaint, as though fully set forth herein.

26       71.    An actual and immediate controversy has arisen and now exists between Plaintiff and

27   Defendants concerning their rights and obligations of the individual parties with respect to the

28   **PACIFIC** operating agreement, the contracts entered into and still outstanding, both for services

1   PACIFIC, and those that **PACIFIC** was to provide, and the property of **PACIFIC**, including the

2   ongoing contracts, liabilities and benefits of the Defendants concerning the obligations and the

3   property, accounts and electronic information.

4        72.    As such, Plaintiff requests a judicial determination of the rights, privileges and

5   obligations of the parties with respect to these contracts.

6                            **<ins>SIXTH CAUSE OF ACTION</ins>**

7        **(UNFAIR COMPETITION, BUSINESS & PROFESSIONS CODE 17200)**

8                    **AS TO ALL DEFENDANTS**

9        73.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

10  of this Complaint, as though fully set forth herein.

11       74.    The acts and conduct of Defendants as alleged above in this Complaint constitute

12  unfair, unlawful and/or fraudulent business acts or practices as defined by Cal. Bus.& Prof. Code

13  Section 17200, *et. seq.*

14       75.    Defendant's acts of unlawful, unfair, and fraudulent competition have caused harm to

15  competition, to consumers and to competitors. Defendants' acts have proximately caused damage to

16  persons having contracts with **PACIFIC**, to employees of **PACIFIC**, and to vendors of **PACIFIC**.

17       76.    In doing the things alleged herein, Defendants have violated HIPPA requirements,

18  violated contractual obligations and employment regulations, personally profited from others work and

19  have illegally and unfairly sought to steal a complete business from the Plaintiff.

20       77.    In addition, Defendants and each of them have wrongfully and unfairly kept **BAI** from

21  examining corporate property, books, contracts, accounts, intellectual property, payroll accounts and

22  ledgers. Such denial has allowed Defendants and each of them to continue their series of thefts, fraud,

23  and wrongdoings as alleged herein. Defendants' acts of so doing, in and of themselves, constitutes

24  unlawful, unfair, and fraudulent competition and have caused irreparable and incalculable injury to

25  **PACIFIC** and to **BAI**, and unless enjoined will continue. No adequate remedy exists at law for

26  Defendants' refusal to provide access to this material.

27       78.    In addition, Defendants' acts of unlawful, unfair, and fraudulent competition also have

28  caused irreparable and incalculable injury to **PACIFIC** and to **BAI**, and unless enjoined will cause

10

COMPLAINT

EXHIBIT 4

1  incalculable damage for which there is no adequate remedy at law.

2  **PRAYER FOR RELIEF**

3  **WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them as follows:

4  1. For compensatory damages, disgorgement, and/or money, estimated to be, at a minimum,
5     $5,000,000;

6  2. For prejudgment and post-judgment interest at the rate of interest under the law;

7  3. For exemplary and punitive damages;

8  4. For injunctive relief, allowing Plaintiff access to PACIFIC's books, accounts, electronic
9     accounts, payroll accounts, client files, vendor records and all of **PACIFIC's** documents;

10 5. For injunctive relief, restoring all contracts, rights and property to **PACIFIC** to allow for a
11    lawful and fair winding up.

12 6. For an accounting;

13 7. For attorney's fees, expenses and costs incurred in pursuing the claims asserted herein,
14    against Defendants, jointly and severally, as may be provided by contract and/or law;

15 8. For pre-judgment and post-judgment interest at the maximum allowable rate of interest
16    under the law; and

17 9. For such other and further relief as the Court may deem just and proper.

18

19 DATED:  June 27, 2019                          WHGC, P.L.C.

20

21                                               By: _____
22                                                   Jeffrey C.P. Wang
                                                     Michael G. York
23                                                   G. Brent Sims
                                                     Kathleen E. Alparce
24                                               Attorneys for Plaintiff HAOTIAN BAI

25

26

27

28

11

COMPLAINT

EXHIBIT 4

- 44 -

1                           <u>DEMAND FOR JURY TRIAL</u>

2          Plaintiff hereby requests trial by jury.

3

4    DATED:  June 27, 2019                WHGC, P.L.C.

5

6                                    By: _____
                                         Jeffrey C.P. Wang
7                                        Michael G. York
                                         G. Brent Sims
8                                        Kathleen E. Alparce
9                                        Attorneys for Plaintiff HAOTIAN BAI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        12

# EXHIBIT 5

July 3, 2019

Dear Friends of Pacific Surrogacy, LLC:

My name is Haotian Bai, and I am a U.S. Army veteran who served two combat tours in Afghanistan. I am one of the founders and owners of Pacific Surrogacy, LLC (PS). While we may not have interacted directly in your dealings with PS, I was involved with the company's regular operations, management, and oversight until recently. However, within the last month, PS has undergone a series of changes — most, if not all, of which occurred without my knowledge, involvement, and/or approval. I have been ousted from any involvement much to your and your surrogate's detriment. I write you now with a sense of urgency to seek your cooperation and patience in my attempt to salvage all business and personal relationships that have been, and will be, affected.

Within the last month, Pacific Surrogacy, LLC has ceased all business operations. I have been blocked from access regarding all of PS's files, accounts, and other materials, including those regarding your surrogates and their continued care. Please do not be too alarmed, but I wanted you to know that I have been informed that these same files, accounts, and other materials are now in the hands of new company Pacific Surrogacy USA, LLC (PSUSA). It is my understanding that they have been taken without your knowledge or consent as well. PSUSA and PS are separate companies and are not related to each other. I am unaware of and cannot speak towards PSUSA's experience or expertise, if any, with managing your surrogate mothers or any part of the surrogacy process. Your files, retainer agreements, and the care of the surrogate mothers are not within my access or control. Again, this has all happened without my involvement, knowledge, or consent. Therefore, I am unable to provide you with any information regarding the surrogates — the status of their care, files, and money included. I have received complaints from the surrogate mothers regarding PSUSA, copies of which I have included with this letter for your review in Appendix A attached.

The money you provided for the care of the surrogates was deposited by PS in the trust account held by the law firm of CHH Law, PC, specifically attorney Kevin Liu of CHH Law, PC. Attorney Kevin Liu is currently under the investigation of the California Bar. The public record of this investigation is attached in Appendix B. I am requesting information from Attorney Kevin Liu pertaining to PS and your trust account, and you have the right to do the same.

I care about protecting your and your surrogates' interests. I provide you with this information with the hope that you will recognize that I, too, am a victim. I formally filed a lawsuit against those responsible for claims of conversion, breach of fiduciary duty, accounting, unjust enrichment, declaratory relief, and unfair competition. The full details of my lawsuit can be found in Appendix C attached. Through our judicial system, I am hoping that justice will prevail. Meanwhile, I want to make sure that you are aware of what is going on, so that you can also take action against those responsible for any harm their conduct has caused you or your surrogates.


Warmest regards,



Haotian Bai


EXHIBIT 5

太平洋辅助生育有限责任公司相关的伙伴们：

　　　　我叫白昊天，是一名美国陆军退役的老兵，曾经两次在阿富汗执行战斗任务。我是太平洋辅助生育有限责任公司（PS）的创始人和持有人之一。我们可能没有接触过，但我自始至终在进行公司内部的操作、管理、和监护。就在上个月，太平洋在我不知情也没有批准的情况下，进行了一系列变迁。我在被挤出的期间，因为公司没有被妥善管理，或许对您或者您的代母有了怠慢。我今天或者急切的心情写出这封信，希望得到您的支持和配合来尝试挽回我们被影响的商业及个人关系。

　　　　就在上个月中旬，太平洋辅助生育有限责任公司突然停止了所有商业活动。我的各种商业管理、材料、和代母的管理系统的权限也在一瞬间被禁止或者删除。但请不要太过于担心，因为据我所知，这些文件、材料、和账户已经被转入新的太平洋辅助生育 USA 有限责任公司。（PSUSA）我理解这个转移也是为你们所不知情或者授权的；太平洋和太平洋 USA 是两个独立的公司并没有任何的关系。因为我的整个权限被封锁和转移，我并不了解，也不能评价太平洋 USA 有任何的经验和技术来管理好您的代母。你们的文件、合同、和代母的协调和管理已经完全脱离了我的掌控。我想再次声明，这些事情的发生和我没有任何的管理、知晓和批准。正因为如此，我也没有能力来提供任何的代母信息——包括她们的进程、文件和补偿金。我在此期间收到了一些代母对太平洋 USA 管理的负面评价，并放入了附录 A 中。

　　　　您为代母所预存的资金是由 CHH 律师事务所的信托账户所保管，由该事务的律师 Kevin Liu 所设立。Kevin Liu 律师正在被美国加利福尼亚州州律师协会进行职业道德调查。这份调查的公开信息被我放到了附录 B。我正在向 Kevin 索取所有有关太平洋和信托账户的信息，你们也有着相同的法律权力。

　　　　我非常关心如果保护您和代母们的利益。之所以向你们提供这些信息，也是希望可以得到你们的公正评价——我也是受害人之一。我正式向有关人士进行了诉讼——包括资产和知识产权的转移、违背信托义务、清算公司财务、不当得利、宣告性救济和不公平竞争。所有有关我诉状的详细信息可以在附录 C 中找到。通过我们的司法程序，我希望公正可以压倒邪恶。同时，我也希望您可以通过我所提供的信息来了解太平洋内部发生的一些情况，也对损害您和您代母利益的相关人事采取行动。

　　　　此致

　　　　　　　　　　　　敬礼

　　　　　　　　　　*Haotian Bai*

　　　　　　　　　　白昊天

　　　　　　　　　　2019 年 7 月 3 日

EXHIBIT 5

- 48 -

APPENDIX A: SURROGATE COMPLAINTS





EXHIBIT 5

APPENDIX B: CHH LAW Complaints by California Bar
Source: http://members.calbar.ca.gov/fal/Licensee/
Detail/280454

# Public Matter

1   STATE BAR OF CALIFORNIA
    OFFICE OF CHIEF TRIAL COUNSEL
2   MELANIE J. LAWRENCE, No. 230102
    INTERIM CHIEF TRIAL COUNSEL
3   MIA R. ELLIS, No. 228235
    ASSISTANT CHIEF TRIAL COUNSEL
4   DREW MASSEY, No. 244350
    SUPERVISING ATTORNEY
5   ANGIE ESQUIVEL, No. 286432
    SENIOR TRIAL COUNSEL
6   845 South Figueroa Street
    Los Angeles, California 90017-2515
7   Telephone: (213) 765-1080

**FILED**

5/28/2019

**STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES**

8

9                      STATE BAR COURT

10          HEARING DEPARTMENT - LOS ANGELES

11

12   In the Matter of:                    )   Case No.  SBC-19-O-30244
                                          )
13   KEVIN LIU,                           )   NOTICE OF DISCIPLINARY CHARGES
                                          )
14   No. 280454,                          )   OCTC Case Nos. [16-O-12098, 16-O-13444,
                                          )   16-O-13589, 16-O-15584 and 17-O-00092]
15                                        )
     A Member of the State Bar.           )
16

17              **NOTICE - FAILURE TO RESPOND!**

18       IF YOU FAIL TO FILE A WRITTEN ANSWER TO THIS NOTICE
     WITHIN 20 DAYS AFTER SERVICE, OR IF YOU FAIL TO APPEAR AT
19   THE STATE BAR COURT TRIAL:

20       (1) YOUR DEFAULT WILL BE ENTERED;
         (2) YOUR STATUS WILL BE CHANGED TO INACTIVE AND YOU
21           WILL NOT BE PERMITTED TO PRACTICE LAW;
         (3) YOU WILL NOT BE PERMITTED TO PARTICIPATE FURTHER IN
22           THESE PROCEEDINGS UNLESS YOU MAKE A TIMELY MOTION
             AND THE DEFAULT IS SET ASIDE, AND;
23       (4) YOU SHALL BE SUBJECT TO ADDITIONAL DISCIPLINE.
             SPECIFICALLY, IF YOU FAIL TO TIMELY MOVE TO SET ASIDE
24           OR VACATE YOUR DEFAULT, THIS COURT WILL ENTER AN
             ORDER RECOMMENDING YOUR DISBARMENT WITHOUT
25           FURTHER HEARING OR PROCEEDING.  SEE RULE 5.80 ET SEQ.,
             RULES OF PROCEDURE OF THE STATE BAR OF CALIFORNIA.
26

27

28
                              -1-

kwiktag®    241 073 095

EXHIBIT 5

- 50 -

The State Bar of California alleges:

## JURISDICTION

1. Kevin Liu ("respondent") was admitted to the practice of law in the State of California on December 9, 2011, was a member at all times pertinent to these charges, and is currently a member of the State Bar of California.

## COUNT ONE

Case No. 16-O-12098
Former Rules of Professional Conduct, Rule 1-300(B)
[Unauthorized Practice of Law in Other Jurisdiction]

2. From in or about June 2015 through in or about December 2015, respondent practiced law in Wyoming by agreeing to perform pre-litigation and loan modification work on behalf of his clients, Mariano and Norma Fonseca, in connection with their property located in Wyoming, when to do so was in violation of the regulations of the profession in Wyoming, namely, Wyoming Rules of Professional Conduct 5.5, in willful violation of the former Rules of Professional Conduct, rule 1-300(B).

## COUNT TWO

Case No. 16-O-12098
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

3. From on or about June 2015 to October 2015, respondent entered into an agreement for, charged and/or collected from Wyoming residents Mariano and Norma Fonseca a fee of approximately $2,400 to perform legal services that were illegal because respondent was not entitled to practice law in Wyoming, in willful violation of the former Rules of Professional Conduct, rule 4-200(A).

//
//
//
//
//

-2-

EXHIBIT 5
- 51 -

## COUNT THREE

Case No.16-O-13444
Former Rules of Professional Conduct, Rule 1-300(B)
[Unauthorized Practice of Law in Other Jurisdiction]

4.  From on or about March 5, 2015 through in or about September 16, 2015, respondent practiced law in Texas by agreeing to perform pre-litigation and loan modification work on behalf of his client, Paul Benson in connection with his property located in Texas, when to do so was in violation of the regulations of the profession in Texas, namely, Texas Disciplinary Rules of Professional Conduct 5.05, in willful violation of former Rules of Professional Conduct, rule 1-300(B).

## COUNT FOUR

Case No. 16-O-13444
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

5.  From on or about March 5, 2015 through on or about June 28, 2015, respondent entered into an agreement for, charged and/or collected from Texas resident Paul Benson a fee of approximately $3,600 to perform legal services that were illegal because respondent was not entitled to practice law in in Texas, in willful violation of the former Rules of Professional Conduct, rule 4-200(A).

## COUNT FIVE

Case No. 16-O-13589
Business and Professions Code section 6106.3(a)
[Violation of Civil Code section 2944.6(a)]

6.  On or about July 31, 2014, respondent negotiated, arranged, or offered to perform a mortgage loan modification or other form of mortgage loan forbearance for a fee paid by a borrower and client, namely Faye Bon Shirazi, in advance of any service and thereafter entered into a fee agreement with the client without providing the client, prior to entering into that agreement, the following as a separate written statement, in not less than 14-point bold type, as required by Civil Code section 2944.6(a), in willful violation of Business and Professions Code section 6106.3:

-3-

EXHIBIT 5
- 52 -

1   It is not necessary to pay a third party to arrange for a loan modification
2   or other form of forbearance from your mortgage lender or servicer.
    You may call your lender directly to ask for a change in your loan terms.
3   Nonprofit housing counseling agencies also offer these and other forms
    of borrower assistance free of charge.  A list of nonprofit housing counseling
4   agencies approved by the United States Department of Housing and Urban
    Development (HUD) is available from your local HUD office or by visiting
5   www.hud.gov.

6                           COUNT SIX

7                        Case No. 16-O-13589
          Former Business and Professions Code, section 6106.3(a)
8          [Violation of Civil Code § 2944.7(a)(1) – Illegal Advanced Fee]

9       7.  On or about August 4, 2014, respondent agreed to negotiate and perform a mortgage

10   loan modification or other mortgage loan forbearance for a fee for his client, Faye Bon Shirazi,

11   and on or about August 4, 2014 received approximately $3,300 from the client before respondent

12   had fully performed each and every service respondent had been contracted to perform or

13   represented to the client that respondent would perform, in violation of Civil Code, section

14   2944.7, and in willful violation of former Business and Professions Code, section 6106.3.

15                          COUNT SEVEN

16                        Case No. 16-O-13589
             Business and Professions Code, section 6068(a)
17             [Violation of Civil Code § 2944.7(a)(1)]

18      8.  On or about August 4, 2014, Faye Bon Shirazi hired respondent to attempt to

19   negotiate a mortgage loan modification or other mortgage loan forbearance for an advance fee.

20   On or about August 4, 2014, respondent received approximately $3,300 from the client before

21   respondent had fully performed each and every service respondent had been contracted to

22   perform or represented to the client that respondent would perform, in violation of Civil Code,

23   section 2944.7, and in willful violation of Business and Professions Code, section 6068(a).

24   //
25   //
26   //
27   //
28

                              -4-

EXHIBIT 5
- 53 -

COUNT EIGHT

Case No. 16-O-13589
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

9.   On or about August 4, 2014, Faye Bon Shirazi hired respondent to attempt to negotiate a mortgage loan modification or other mortgage loan forbearance for an advance fee. On or about August 4, 2014, respondent received approximately $3,300 from the client before respondent had fully performed each and every service respondent had been contracted to perform or represented to the client that respondent would perform, in willful violation of the former Rules of Professional Conduct, rule 4-200(A).

COUNT NINE

Case No. 16-O-13589
Former Rules of Professional Conduct, Rule 1-400(C)
[Solicitation of a Prospective Client]

10.   In or about July of 2014, respondent made a solicitation, or allowed one to be made on respondent's behalf by a representative of respondent's law firm, Pinepoint Law Group ("PLG") to Faye Bon Shirazi, a prospective client, by communication delivered by telephone, with whom neither respondent nor his law firm had any family or prior professional relationship, in willful violation of former Rules of Professional Conduct, rule 1-400(C).

COUNT TEN

Case No.16-O-15584
Former Rules of Professional Conduct, Rule 1-300(B)
[Unauthorized Practice of Law in Other Jurisdiction]

11.   From on or about October 30, 2013 through in or about December of 2013, respondent practiced law in Wisconsin by agreeing to perform pre-litigation and loan modification work on behalf of his client, Wanda Soto in connection with her property located in Wisconsin, when to do so was in violation of the regulations of the profession in Wisconsin, namely, Wisconsin Rules of Professional Conduct 5.5, in willful violation of former Rules of Professional Conduct, rule 1-300(B).

//

-5-

EXHIBIT 5
- 54 -

1

2

3
## COUNT ELEVEN

Case No.16-O-15584
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

4      12.   From on or about October 30, 2013 through December 11, 2013, respondent entered

5   into an agreement for, charged and/or collected from Wisconsin resident Wanda Soto a fee of

6   approximately $3,000 to perform legal services that were illegal because respondent was not

7   entitled to practice law in in Wisconsin, in willful violation of the former Rules of Professional

8   Conduct, rule 4-200(A).

9
## COUNT TWELVE

Case No. 17-O-00092
Business and Professions Code section 6106.3(a)
[Violation of Civil Code section 2944.6(a)]

12      13.   On or about September 26, 2014, respondent negotiated, arranged, or offered  to

13   perform a mortgage loan modification or other form of mortgage loan forbearance for a fee paid

14   by a borrower and client, namely Dennis Middleton, in advance of any service and thereafter

15   entered into a fee agreement with the client without providing the client, prior to entering into

16   that agreement, the following as a separate written statement, in not less than 14-point bold type,

17   as required by Civil Code section 2944.6(a), in willful violation of Business and Professions

18   Code section 6106.3:

> It is not necessary to pay a third party to arrange for a loan modification
> or other form of forbearance from your mortgage lender or servicer.
> You may call your lender directly to ask for a change in your loan terms.
> Nonprofit housing counseling agencies also offer these and other forms
> of borrower assistance free of charge.  A list of nonprofit housing counseling
> agencies approved by the United States Department of Housing and Urban
> Development (HUD) is available from your local HUD office or by visiting
> www.hud.gov.

24   //

25   //

26   //

27   //

28

-6-

EXHIBIT 5
- 55 -

## COUNT THIRTEEN

Case No. 17-O-00092
Former Business and Professions Code, section 6106.3(a)
[Violation of Civil Code § 2944.7(a)(1) – Illegal Advanced Fee]

14.   On or about September 26, 2014, respondent agreed to negotiate and perform a mortgage loan modification or other mortgage loan forbearance for a fee for his client, Dennis Middleton, and between on or about October 1, 2014 and November 15, 2014 received approximately $3,600 from the client before respondent had fully performed each and every service respondent had been contracted to perform or represented to the client that respondent would perform, in violation of Civil Code, section 2944.7, and in willful violation of former Business and Professions Code, section 6106.3.

## COUNT FOURTEEN

Case No. 17-O-00092
Business and Professions Code, section 6068(a)
[Violation of Civil Code § 2944.7(a)(1)]

15.   On or about September 26, 2014, Dennis Middleton hired respondent to attempt to negotiate mortgage loan modification or other mortgage loan forbearance for an advance fee. Between on or about October 1, 2014 and November 15, 2014, respondent received approximately $3,600 from the client before respondent had fully performed each and every service respondent had been contracted to perform or represented to the client that respondent would perform, in violation of Civil Code, section 2944.7, and in willful violation of Business and Professions Code, section 6068(a).

## COUNT FIFTEEN

Case No. 17-O-00092
Former Rules of Professional Conduct, Rule 4-200(A)
[Illegal Fee]

16.   On or about September 26, 2014, Dennis Middleton hired respondent to attempt to negotiate mortgage loan modification or other mortgage loan forbearance for an advance fee. Between on or about October 1, 2014 and November 15, 2014, respondent received approximately $3,600 from the client before respondent had fully performed each and every

-7-

EXHIBIT 5
- 56 -

1  service respondent had been contracted to perform or represented to the client that respondent

2  would perform, in violation of Civil Code, section 2944.7, in willful violation of the former

3  Rules of Professional Conduct, rule 4-200(A).

4  <u>NOTICE - INACTIVE ENROLLMENT!</u>

5  YOU ARE HEREBY FURTHER NOTIFIED THAT IF THE STATE BAR
COURT FINDS, PURSUANT TO BUSINESS AND PROFESSIONS CODE

6  SECTION 6007(c), THAT YOUR CONDUCT POSES A SUBSTANTIAL
THREAT OF HARM TO THE INTERESTS OF YOUR CLIENTS OR TO

7  THE PUBLIC, YOU MAY BE INVOLUNTARILY ENROLLED AS AN
INACTIVE MEMBER OF THE STATE BAR.    YOUR INACTIVE

8  ENROLLMENT WOULD BE IN ADDITION TO ANY DISCIPLINE
RECOMMENDED BY THE COURT.

9

10  <u>NOTICE - COST ASSESSMENT!</u>

IN THE EVENT THESE PROCEDURES RESULT IN PUBLIC
11  DISCIPLINE, YOU MAY BE SUBJECT TO THE PAYMENT OF COSTS
INCURRED BY THE STATE BAR IN THE INVESTIGATION, HEARING

12  AND REVIEW OF THIS MATTER PURSUANT TO BUSINESS AND
PROFESSIONS CODE SECTION 6086.10.

13

14                          Respectfully submitted,

15                          THE STATE BAR OF CALIFORNIA
                           OFFICE OF CHIEF TRIAL COUNSEL

16

17  DATED: 5/28/19          By: 

18                          Angie Esquivel
                           Deputy Trial Counsel

19

20

21

22

23

24

25

26

27

28
                                    -8-

EXHIBIT 5

- 57 -

1   | ## DECLARATION OF SERVICE BY CERTIFIED MAIL

2   | CASE NUMBER:

3   | (OCTC Case Nos.: 16-O-12098, 16-O-13444, 16-O-13589, 16-O-15584, 17-O-00092)

4   | I, the undersigned, over the age of eighteen (18) years, whose business address and place
of employment is the State Bar of California, 845 South Figueroa Street, Los Angeles, California

5   | 90017, declare that I am not a party to the within action; that I am readily familiar with the State
Bar of California's practice for collection and processing of correspondence for mailing with the

6   | United States Postal Service; that in the ordinary course of the State Bar of California's practice,
correspondence collected and processed by the State Bar of California would be deposited with

7   | the United States Postal Service that same day; that I am aware that on motion of party served,
service is presumed invalid if postal cancellation date or postage meter date on the envelope or

8   | package is more than one day after date of deposit for mailing contained in the affidavit; and that
in accordance with the practice of the State Bar of California for collection and processing of

9   | mail, I deposited or placed for collection and mailing in the City and County of Los Angeles, on
the date shown below, a true copy of the within

10  |

11  | **NOTICE OF DISCIPLINARY CHARGES**

12  | in a sealed envelope placed for collection and mailing as certified mail, return receipt requested,
Article No.: 9414 7266 9904 2111 0165 55, at Los Angeles, on the date shown below, addressed

13  | to:

14  | **Kevin Liu**
**801 S Garfield Ave Ste 338**

15  | **Alhambra, CA 91801-4486**

16  |

17  | in an inter-office mail facility regularly maintained by the State Bar of California addressed to:

18  | N/A

19  | I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct. Executed at Los Angeles, California, on the date shown below.

20  |

21  | DATED: May 28, 2019          Signed: _____
Max Carranza

22  | Declarant

23  |

24  |

25  |

26  |

27  |

28  |                                    -1-

EXHIBIT 5

APPENDIX C: COMPLAINTS REGARDING YUNLUN JIANG'S MISDEEDS

| | |
|---|---|
| 1 | **WHGC, P.L.C.**<br>Jeffrey C.P. Wang (SBN 144414)<br>*JeffreyWang@WHGCLaw.com* |
| 2 | Michael G. York (SBN 89945) |
| 3 | *MichaelYork@WHGCLaw.com*<br>G. Brent Sims (SBN 179397) |
| 4 | *BrentSims@WHGCLaw.com*<br>Kathleen E. Alparce (SBN 230935) |
| 5 | *KathleenAlparce@WHGCLaw.com*<br>1301 Dove Street, Suite 1050 |
| 6 | Newport Beach, CA 92660<br>Tel. (949) 833-8483; Fax: (866) 881-5007 |
| 7 | |
| 8 | Attorneys for Plaintiff<br>HAOTIAN BAI |
| 9 | |

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/27/2019** at 12:33:53 PM
Clerk of the Superior Court
By Miriam Cruz, Deputy Clerk

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF ORANGE**

HAOTIAN BAI, an individual;

Plaintiff

vs.

PACIFIC SURROGACY, LLC, a California Limited Liability Company; PACIFIC SURROGACY USA, LLC, a California Limited Liability Company; YULUN JIANG, an individual; and DOES 1-25, inclusive,

Defendants.

CASE NO. 30-2019-01079615-CU-BT-CJC

Judge Deborah Servino

**COMPLAINT FOR:**

    1)  **CONVERSION;**
    2)  **BREACH OF FIDUCIARY DUTY;**
    3)  **ACCOUNTING;**
    4)  **UNJUST ENRICHMENT;**
    5)  **DECLARATORY RELIEF;**
    6)  **UNFAIR COMPETITION**

**DEMAND FOR JURY TRIAL**

    1.    Plaintiff HAOTIAN BAI (**"BAI"**) for his Complaint against Defendants **PACIFIC SURROGACY, LLC,** a California Limited Liability Company (**"PACIFIC"**); **PACIFC SURROGACY USA, LLC,** a California Limited Liability Company (**"PSUL"**), **YULUN JIANG,** (**"JIANG"**), and DOES 1-25, hereby bring his claims seeking relief, allege on personal knowledge as to all facts known to him, and on information and belief as to all other facts, as follows:

---

1

COMPLAINT

EXHIBIT 5
- 59 -

**JURISDICTION AND VENUE**

2.    This Court has jurisdiction over the subject matter of this action in that the Defendants **PACIFIC** and **PSUL** are both California Limited Liability Companies, organized under the laws of the State of California, with their headquarters in Orange County.

3.    Defendant **JIANG** is an individual residing and/or conducting business in this state and county. Venue is proper pursuant to California Code of Civil Procedure section 395.5 because the Limited Liability Corporations are defendants herein, and are headquartered in Orange County. The amount in controversy is in excess of the jurisdictional minimum.

**PARTIES**

4.    Plaintiff **BAI** is an individual, and was a member, officer and founding member of **PACIFIC**.

5.    Defendant **PACIFIC** is a Limited Liability Company, organized under the laws of the State of California, with its principal place of business in Irvine, California.

6.    Defendant **PSUL** is a Limited Liability Company, organized under the laws of the State of California, with its principal place of business in Irvine, California.

7.    Defendant **JIANG** is an individual who at all times relevant to this Complaint resides in Irvine, CA.

8.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 25, inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

9.    Plaintiff is informed and believe and thereon alleges that at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

**GENERAL ALEGATIONS**

10.    Defendant **PACIFIC** was organized on July 12, 2018 by **BAI** and **JIANG** on a 50/50 basis. **PACIFIC** was established to provide services to persons serving as surrogates, as outlined under California Family Law section 7960, *et. seq.* **PACIFIC** retained skilled service providers, had the proper licenses, proper facilities, expertise and knowledge on caring for and advising persons desiring

1   to provide these services.

2       11.    **PACIFIC** also had knowledge regarding compliance with state and federal laws and
3   complied with all California regulations, including HIPPA and other regulations.

4       12.    Both **BAI** and **JIANG** had invested substantial sums of money into **PACIFIC**, and
5   each was set to benefit from the continued successful operation of the center.

6       13.    **PACIFIC** operated utilizing cloud based business software. **PACIFIC** maintained
7   passwords and accounts. Among other things **PACIFIC** operated and maintained email accounts,
8   document files, excel spreadsheets, project management systems, client relationship management
9   documents and accounts on this system.

10      14.    **PACIFIC** also maintained under password and security codes confidential information
11  including but not limited to, surrogate applications, medical information, personal background checks,
12  psychological evaluation reports, legal contracts, receipts and accounting.

13      15.    **PACIFIC** also maintained under password and security codes, confidential information
14  including but not limited to, client relationship and management folders, 1099 documents for surrogate
15  recruits, management tools, documents surrogate applications, Customer Relationship Management
16  technology information, medical information, personal background checks, psychological evaluation
17  reports, legal contracts, receipts and accounting, as well as payroll and confidential employment
18  information.

19      16.    **PACIFIC** also maintained social media accounts, including Facebook, Instagram,
20  Twitter, WeChat and Youtube. It maintained websites and MS suite one drives including information
21  that was used in business and provided an economic advantage over competitors who did not know or
22  use it.

23      17.    All of this information was maintained by **PACIFIC** who, at all relevant times,
24  maintained all of this information utilizing security protocols and passwords designed to keep such
25  information private and secure.

26      18.    **PACIFIC** also maintained physical property, including computer monitors, business
27  equipment, and office furnishings.

28      19.    **PACIFIC** charged customers a fee for surrogacy services. This initial fee would be

3
COMPLAINT

EXHIBIT 5

- 61 -

1   taken directly by **JIANG** and wired into a bank account located in China on behalf of **PACIFIC.**

2   20.   In addition, **PACIFIC** customers created a trust account to hold funds for their

3   continued care throughout the scope of their surrogacy. In or around the beginning of June 2019, this

4   trust account contained over $1,000,000.

5   21.   Unknown to **BAI**, or other persons at **PACIFIC**, **JIANG** prepared, filed and organized

6   a Limited Liability Company called **PACIFIC SURROGACY USA, LLC ("PSUL").** Paperwork for

7   this LLC was filed on or about May 26, 2019 with the California Secretary of State.

8   22.   On or about June 16, 2019, Plaintiff **BAI** was on a plane returning from Hawaii.

9   23.   **JIANG** waited until **BAI** boarded the plane, and then, without authorization,

10  permission, notice, or provocation began destroying, stealing, transferring and/or hiding assets

11  belonging to **PACIFIC.**

12  24.   On June 16, 2019, at or about 4:30 p.m., **BAI** arrived in Los Angeles. At about this

13  time, **BAI** received an electronic message from **JIANG** stating that **JIANG** had seen what **BAI** had

14  done wrong, and that **JIANG** knew **BAI**'s secrets. **JIANG** informed **BAI** that "resistance was futile"

15  and that **BAI, JIANG,** and **PACIFIC** should have a parting of the ways. **BAI** understood this message

16  to be a threat and an attempt to extort **BAI**'s share of the business.

17  25.   At or about 5:00 p.m. on Sunday, June 16, 2019, **JIANG** posted on WeChat that

18  **PACIFIC** would be closing. **BAI** had no foreknowledge of this closing, and had not given his consent

19  or approval to this action.

20  26.   On or about this day, without **BAI'S** knowledge, **JIANG** prepared letters of resignation

21  for the employees of **PACIFIC.**

22  27.   Following this, **BAI** discovered that all of the passwords, accounts, social media,

23  websites, emails, and client information had been deleted, hidden, transferred, or taken over by **JIANG**

24  and/or **PSUL**.

25  28.   **PACIFIC**'s websites had been removed and transferred, and rendered unavailable.

26  29.   Plaintiff no longer had access to any of **PACIFIC's** documents, accounts, payroll

27  records, electronic information, cloud based programs, or information, ledgers, contracts, vendor

28  agreements, billings, or any other documents of the **LLC**, in direct violation of the operating

4

**COMPLAINT**

EXHIBIT 5

1    agreement.

2          30.    On or about Monday, June 17, 2019, **JIANG** contacted **BAI** and informed him that all

3    of the papers were drawn up, and that **BAI** must sign them, or **JIANG** would release unfavorable and

4    embarrassing personal information, photographs and videos of **BAI**.

5          31.    As intended, **BAI**, a returned veteran suffering from PTSD, who had a family to protect,

6    felt intimidated and as a result, because of the threats and coercion of **JIANG**, documents were signed

7    for the cancellation of **PACIFIC**.

8          32.    At or about this time, **PSUL** began soliciting employees from **PACIFIC**. Contracts

9    were transferred to **PSUL**, and confidential and secret information had been made available to **PSUL**.

10         33.    On or about June 19, 2019, **JIANG** prepared a letter instructing **PACIFIC's** medical

11   coordinator to send to the medical facilities doing business with **PACIFIC**. This letter instructed the

12   providers to communicate with **PSUL** instead of **PACIFIC**, and providing the address of "930

13   Roosevelt" as **PSUSA, LLC's** new address. All of **PACIFIC's** former information was to go to that

14   address.

15         34.    On or about June 20, 2018, **PSUL** and **JIANG** sent letters to all **PACIFIC's** employees

16   informing them that **PACIFIC** had closed and was terminating all of its employees.

17         35.    Subsequent to these events, **PSUL** and **JIANG** informed all **PACIFIC** employees that

18   they possessed embarrassing photographs and videos of **BAI**, and that **BAI** had terminated **PACIFIC**.

19   Throughout this time period, **BAI** was denied his rights pursuant to California Corporations Code

20   section 17704.10 and under the operating agreement.

21         36.    **KEVIN LIU ("LIU")** acted as an attorney in the formation and organization of

22   **PACIFIC**, and, as such, owed a duty of care and loyalty and was a fiduciary with respect to **PACIFIC**,

23   At that time, **LIU** understood that he was retained by the Company, and that **BAI** and **JIANG**  were

24   equal stakeholders in the company. In addition, **LIU** was the personal attorney for **BAI** on unrelated

25   matters.

26         37.    On information and belief, in conjunction with **JIANG, LIU** assisted in the formation

27   of **PSUL**, with the knowledge that **PSUL** was organized to poach and ultimately take over business

28   from **PACIFIC** while squeezing **BAI** out of the business.

5

COMPLAINT

EXHIBIT 5

- 63 -

38.    **LIU** in conjunction with and under the direction of **JIANG**, informed employees of **PACIFIC**, that **BAI** had decided to terminate **PACIFIC** and that **BAI'S** actions had caused the employees not to receive their pay. In addition, **LIU** informed **PACIFIC** employees of embarrassing and harmful information concerning **BAI**.

39.    **LIU**, as an attorney for both **PACIFIC** and **BAI,** had a duty to provide both with his highest loyalty, and to avoid actions designed to damage either one, and to avoid retention in matters adverse to **PACIFIC** or **BAI**. Both **JIANG** and **LIU** understood the facts surrounding **LIU**'s retention by **PACIFIC** and **BAI.**

40.    **LIU**, in conjunction with **JIANG**, also worked to hide company assets, accounts, contracts, paperwork, payroll documents, vendor accounts, on-line presence and cloud accounts from **BAI**, all to **BAI'S** detriment, and with the goal of stealing business, assets and customers from **BAI** and from **PACIFIC**.

41.    At all relevant times herein, Defendants and each of them have wrongfully and unfairly kept **BAI** from examining corporate property, books, contracts, accounts, intellectual property, payroll accounts and ledgers. Such denial has allowed Defendants and each of them to continue their series of thefts, fraud, and wrongdoings as alleged herein.

42.    **JIANG** has also instructed personnel to change the names of **PACIFIC**'s social media accounts to that of **PSUL.**

43.    On information and belief, **BAI** alleges that Defendant **PSUL** was the alter-ego of Defendant **JIANG**, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that Defendant **JIANG** completely controlled, dominated, managed, and operated the other Defendants to suit his convenience.

44.    In conducting the actions herein alleged, **PSUL** was aware that **JIANG** owed fiduciary obligations to **PACIFIC**, and **BAI**, and set out consciously and deliberately to assist in the breach of those obligations, and in the theft of material belonging to **PACIFIC**.

///

///

6

COMPLAINT

EXHIBIT 5

- 64 -

## FIRST CAUSE OF ACTION

### (CONVERSION)

### As to JIANG, PSUL, and DOES 1-25

45.     Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs of this Complaint, as though fully set forth herein.

46.     **PACIFIC** operated under an operating agreement, and a series of agreements that entitled **BAI** to 50% of **PACIFIC**'s profits, accounts, contracts, accounts receivable and inventory.

47.     Following the putative cancellation of **PACIFIC**, **BAI** had an ownership right to an immediate 50% distribution of all funds, assets, and property of **PACIFIC**, as well as all physical property, files, computers, office equipment and bank accounts of **PACIFIC**.

48.     Defendants and each of them intentionally and substantially interfered with **BAI'S** property by taking possession of items of personal property belonging to **BAI**; by preventing **BAI** from accessing accounts, and funds which by right should be his; and by refusing to disclose the location of other assets.

49.     **BAI** did not consent to these actions.

50.     As a result, **BAI** was harmed in that he was denied the use and access to his rightful property.

51.     That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

52.     Defendants' conduct as described herein constitutes "oppression, fraud, or malice" as those terms are defined in California Civil Code Section 3294, and Plaintiff is therefore entitled to punitive damages in an amount according to proof.

## SECOND CAUSE OF ACTION

### (BREACH OF FIDUCIARY DUTY/CONSTRUCTIVE FRAUD)

### As to JIANG and DOES 1-25

53.     Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs of this Complaint, as though fully set forth herein.

54.     Defendant **JIANG** was a Manager and/or officer of **PACIFIC** in accordance with the **PACIFIC** operating agreement, and the actions of the parties. At all times relevant herein, **JIANG** had

7

COMPLAINT

EXHIBIT 5

1  a fiduciary duty to act in the best interests of **PACIFIC**, and to place the interests of **PACIFIC** above

2  his own, and avoid self-dealing.

3      55.    **JIANG** violated this duty by taking substantially all of the assets of **PACIFIC**, and

4  using those assets for his own use and the benefit of **PSUL.**

5      56.    He further violated this duty by self-dealing and setting up **PSUL** with the intent to

6  convert all of **PACIFIC's** property, poach all of **PACIFIC'S** employees and assume all of

7  **PACIFIC's** contracts.

8      57.    The scope and extent of **JIANG's** malfeasance is currently unknown in that **JIANG** has

9  precluded others from reviewing the books, contracts, documents, account information and other

10  property rightfully belonging to **PACIFIC**. As such, **JIANG** continues to plunder **PACIFIC's** assets,

11  customers and bank accounts with impunity.

12      58.    As a direct and proximate result of the breach of this duty, Plaintiff has been damaged

13  in an amount to be proven at trial.

14      59.    Defendants' conduct as described herein constitutes "oppression, fraud, or malice" as

15  those terms are defined in California Civil Code Section 3294, and Plaintiff is therefore entitled to

16  punitive damages in an amount according to proof.

17                          **THIRD CAUSE OF ACTION**

18                              (ACCOUNTING)

19                          AS TO JIANG and PACIFIC

20      60.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

21  of this Complaint, as though fully set forth herein.

22      61.    In accordance with the **PACIFIC** operating agreement, and the actions of the

23  PARTIES, **BAI** was entitled to 50% of **PACIFIC's** profits, accounts, contracts, accounts receivable

24  and inventory.

25      62.    As a duty of the operating agreement involves, among other things, a duty to account

26  for all income, revenues and profits derived from Defendants' business. It is not clear that the remedy

27  at law would be as full, adequate and expeditious as it is in equity.

28      63.    Defendants have received and continue to receive, profits and revenues in connection

---

8

COMPLAINT

EXHIBIT 5

- 66 -

1  with the operation of the surrogacy clinic.

2      64.    As a result of the operating agreement, and of the actions of the Defendants, Defendants

3  have received and are withholding money, a portion of which is due to Plaintiff.

4      65.    The amount of money due from Defendants to Plaintiff is unknown to Plaintiff and

5  cannot be ascertained without an accounting of the business receipts, inventory and accounts

6      66.    Plaintiff has demanded an accounting of the aforementioned receipts of the business, or

7  to the extent he has not demanded one, Defendants' actions have made it clear that such a demand

8  would be futile.

9                  **FOURTH CAUSE OF ACTION**

10                    **(UNJUST ENRICHMENT)**

11                    **As to all DEFENDANTS**

12      67.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

13  of this Complaint, as though fully set forth herein.

14      68.    As a result of the breaches by and wrongful acts of Defendants, Defendants have been

15  unjustly enriched at the expense of Plaintiff. Defendants have derived and continue to derive a benefit

16  from failing to perform their contractual obligations pursuant to the parties' business and company

17  agreements, from improperly utilizing Plaintiff's business equipment, accounts, and trade secrets, and

18  by secretly sabotaging Plaintiff's business and attempting to extort Plaintiff.

19      69.    Defendants are under an obligation to pay **BAI** forthwith all amounts by which they

20  have been unjustly enriched, in a sum to be determined at trial.

21                  **FIFTH CAUSE OF ACTION**

22                    **(DECLARATORY RELIEF)**

23                    **As to PACIFIC and PSUL**

24      70.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

25  of this Complaint, as though fully set forth herein.

26      71.    An actual and immediate controversy has arisen and now exists between Plaintiff and

27  Defendants concerning their rights and obligations of the individual parties with respect to the

28  **PACIFIC** operating agreement, the contracts entered into and still outstanding, both for services

1   PACIFIC, and those that **PACIFIC** was to provide, and the property of **PACIFIC**, including the

2   ongoing contracts, liabilities and benefits of the Defendants concerning the obligations and the

3   property, accounts and electronic information.

4       72.    As such, Plaintiff requests a judicial determination of the rights, privileges and

5   obligations of the parties with respect to these contracts.

6                          **SIXTH CAUSE OF ACTION**

7           **(UNFAIR COMPETITION, BUSINESS & PROFESSIONS CODE 17200)**

8                          **AS TO ALL DEFENDANTS**

9       73.    Plaintiff re-alleges and incorporates herein by reference, all of the previous paragraphs

10  of this Complaint, as though fully set forth herein.

11      74.    The acts and conduct of Defendants as alleged above in this Complaint constitute

12  unfair, unlawful and/or fraudulent business acts or practices as defined by Cal. Bus.& Prof. Code

13  Section 17200, *et. seq.*

14      75.    Defendant's acts of unlawful, unfair, and fraudulent competition have caused harm to

15  competition, to consumers and to competitors. Defendants' acts have proximately caused damage to

16  persons having contracts with **PACIFIC**, to employees of **PACIFIC**, and to vendors of **PACIFIC**.

17      76.    In doing the things alleged herein, Defendants have violated HIPPA requirements,

18  violated contractual obligations and employment regulations, personally profited from others work and

19  have illegally and unfairly sought to steal a complete business from the Plaintiff.

20      77.    In addition, Defendants and each of them have wrongfully and unfairly kept **BAI** from

21  examining corporate property, books, contracts, accounts, intellectual property, payroll accounts and

22  ledgers. Such denial has allowed Defendants and each of them to continue their series of thefts, fraud,

23  and wrongdoings as alleged herein. Defendants' acts of so doing, in and of themselves, constitutes

24  unlawful, unfair, and fraudulent competition and have caused irreparable and incalculable injury to

25  **PACIFIC** and to **BAI**, and unless enjoined will continue. No adequate remedy exists at law for

26  Defendants' refusal to provide access to this material.

27      78.    In addition, Defendants' acts of unlawful, unfair, and fraudulent competition also have

28  caused irreparable and incalculable injury to **PACIFIC** and to **BAI**, and unless enjoined will cause

incalculable damage for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them as follows:

1. For compensatory damages, disgorgement, and/or money, estimated to be, at a minimum, $5,000,000;

2. For prejudgment and post-judgment interest at the rate of interest under the law;

3. For exemplary and punitive damages;

4. For injunctive relief, allowing Plaintiff access to PACIFIC's books, accounts, electronic accounts, payroll accounts, client files, vendor records and all of **PACIFIC's** documents;

5. For injunctive relief, restoring all contracts, rights and property to **PACIFIC** to allow for a lawful and fair winding up.

6. For an accounting;

7. For attorney's fees, expenses and costs incurred in pursuing the claims asserted herein, against Defendants, jointly and severally, as may be provided by contract and/or law;

8. For pre-judgment and post-judgment interest at the maximum allowable rate of interest under the law; and

9. For such other and further relief as the Court may deem just and proper.

DATED: June 27, 2019                    WHGC, P.L.C.

                                        By: _____
                                            Jeffrey C.P. Wang
                                            Michael G. York
                                            G. Brent Sims
                                            Kathleen E. Alparce
                                            Attorneys for Plaintiff HAOTIAN BAI

11

COMPLAINT

EXHIBIT 5
- 69 -



1                              <u>**DEMAND FOR JURY TRIAL**</u>

2       Plaintiff hereby requests trial by jury.

3

4   DATED:  June 27, 2019                    WHGC, P.L.C.

5

6                             By: _____
                               Jeffrey C.P. Wang

7                                Michael G. York

                               G. Brent Sims

8                                Kathleen E. Alparce

9                         Attorneys for Plaintiff HAOTIAN BAI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12
COMPLAINT

EXHIBIT 5

EXHIBIT 6

11:20

< 🇺🇸邓絮阳 – 梦美创始人    · · ·

2019年7月3日 下午5:59

█████您好。我觉得我有必要让你知道一下现在的情况。我不知道allan有没有找过你，但是出于对进行中的case的责任，和IP以及代母的保障，我觉得您需要知道以及提早做预防。有什么问题可以联系我，或者可以联系我们的律师。

Letter to clients and partners(3).pdf
3M


这什么情况

你们那边又是什么情况呢

这里提到的jiang和bai都是谁

还有我们的目前的案子客人的钱都被偷了吗？会出问题吗？

这个很重要

 

EXHIBIT 6
- 72 -

Yu: Hello [Redacted Redacted]. I think it's necessary for me to let you know what's going on. I don't know if Allan has reached out, but out of responsibility for the ongoing case, and IP and protection of surrogate mothers, I think you need to know and take precautions early. If you have any questions you can contact me, or contact our lawyer.

Yu: Attachment "Letter to clients and partners (3).pdf"

Yu: What is the situation?

Yu: What's the situation on your side?

Yu: Who is Jiang and Bai mentioned in this?

Yu: Is there any money stolen from our clients in our current case? Will something go wrong?

Yu: This is very important.

EXHIBIT 6

- 73 -

05:37

‖‖ LTE 🔋

< 5 茜茜 🐬 ・・・

我了解一下



我发您的文件讲的很清楚 您可以看一下

OK

05:26



allan已经被serve了 我们会追究所有的法律责任 他需要在30天之内response 以前的case我们现在没有办法管理 因为系统和文件所有的资料全部被allan转移了 法官像网站邮箱追回需要时间 而且钱全部在allan和Kevin那边 即使有代母联系我说要跟我们 我们也没有办法现在管理



我担心万一有什么事 所以还是决定和您说一下

05:37

谢谢

 

EXHIBIT 6
74

Receiver: Let me know.

Yu: The document I sent you explains the situation very clearly. You can take a look.

Receiver: OK

Yu: Allan has already been served. We will pursue all legal liabilities. He needs to respond to the complaint in 30 days. We cannot manage the prior case right now because the information on the system and documents have all been transferred by Allan. It will take time for the Judge to require the return of the website and email. Also, all the money is with Allan and Kevin. Even if there is a surrogate mother who contacts me and tells me she wants to follow us, we can't manage it now.

Yu: I'm worried if anything happens, so I decided to talk to you about it.

Receiver: Thank you.

EXHIBIT 6

- 75 -

05:16 ✈

••ıll LTE 🔋

< 　　　茜茜🐳　　　•••

 但是我们律师在起诉Kevin的时候发现他被律师协会告了15条罪名

 具体你可以看我发您的第一个文件

 里面有Kevin的在网上公开的文件 和我们对allan的诉讼

 allan现在把所有东西illegal转移到Pacific USA

kevin又是谁 Redacted Redacted Redacted

05:12

我对你们内部不了解 Redacted Redacted

 我们其实并不想去抢什么 以后我们还是会用实力去竞争 只是不想他继续在外面诋毁我们 诬陷我们 我们只想争取我们的利益 然后确实我的案子大概30～40个 突然被转移 我都没机会对

⊙))　　　　　　　　 

EXHIBIT 6

76

Yu: But when our lawyer sued Kevin, he found out that the California Bar filed 15 counts against Kevin.

Yu: For specifics, you can look at the first document I sent you.

Yu: There are documents on Kevin that is part of the public record and our complaint against Allan.

Yu: Allan has illegal transferred everything to Pacific USA.

Receiver: Who is Kevin?

Receiver: I don't know anything about your company internally.

Yu: We really don't want to take anything. In the future, we will use our strength to compete. We just don't want him to continue slandering us outside, to defame us. We just want to fight for our interests. It's true that I have about 30-40 cases, suddenly transferred, I have no chance to respond.

EXHIBIT 6

- 77 -

05:16 ✈

．ıl LTE 🔋

‹                        茜茜🐳                        ···

 我们其实并不想去抢什么 以后我们还是会用实力去竞争 只是不想他继续在外面诋毁我们 诬陷我们 我们只想争取我们的利益 然后确实我的案子大概30～40个 突然被转移 我都没机会对接 我是真担心的



嗯嗯

Kevin和▉▉没历史吧

我对你们内部谁是老板完全没概念

 Kevin是太平洋的律师 是allan的朋友 信托是Kevin的



哦哦

明白了

谢谢了

EXHIBIT 6

78

Yu: We really don't want to take anything. In the future, we will use our strength to compete. We just don't want him to continue slandering us outside, to defame us. We just want to fight for our interests. It's true that I have about 30-40 cases, suddenly transferred, I have no chance to respond. I'm really worried.

Receiver: uh huh

Receiver: There's no history between Kevin and Redacted right

Receiver: I have no idea who is the boss from inside your company.

Yu: Kevin is Pacific Surrogacy's lawyer, he is Allan's friend. Trust is Kevin's.

Receiver: oh

Receiver: I understand

Receiver: Thank you

EXHIBIT 6

- 79 -

EXHIBIT 7

  Jul 9

Henry here are our requested changes.   It has been brought to our attention that there is an issue with Pacific Surrogacy, we need to know if the Agency has changed.   We also need to know who is holding escrow for these contracts.   Also, ▮▮▮▮▮▮▮▮ health insurance needs to reviewed to make sure it covers surrogacy.

Sincerely,



EXHIBIT 7
- 81 -

# EXHIBIT 8

7/26/2019

Bank of America | Online Banking | Accounts | Account Details | Account Activity



Online Banking

**Business Fundamentals Chk – 7735: Account Activity Transaction Details**

| | |
|---|---|
| **Post date:** | 06/19/2019 |
| **Amount:** | -70,000.00 |
| **Type:** | Withdrawal |
| **Description:** | Customer Withdrawal Image |
| **Merchant name:** | Customer Withdrawal Image |
| **Transaction category:** | Cash, Checks & Misc: Other Expenses |



EXHIBIT 8

- 83 -

# EXHIBIT 9

6/20/2019



Bank of America | Online Banking | Accounts | Account Details | Account Activity

Online Banking

**Business Fundamentals Chk - 7735: Account Activity Transaction Details**

|  |  |
|---|---|
| **Post date:** | 06/07/2019 |
| **Amount:** | -8,866.43 |
| **Type:** | Other payment |
| **Description:** | AMERICAN EXPRESS DES:ACH PMT ID:W8492 INDN:Haotian Bai CO ID:1133133497 WEB |
| **Merchant name:** | AMERICAN EXPRESS |
| **Transaction category:** | Finance: Credit Card Payments |

# EXHIBIT 10

6/20/2019

**Bank of America** 

Bank of America I Online Banking I Accounts I Account Details I Account Activity

Online Banking

**Business Fundamentals Chk – 7735: Account Activity Transaction Details**

**Post date:** 05/17/2019

**Amount:** -2,038.93

**Type:** Other payment

**Description:** AMERICAN EXPRESS DES:ACH PMT ID:W8830
INDN:Haotian Bai CO ID:1133133497 WEB

**Merchant name:** AMERICAN EXPRESS

**Transaction category:** Finance: Credit Card Payments

EXHIBIT 10
- 87 -

# EXHIBIT 11

6/20/2019

**Bank of America** 

Bank of America | Online Banking | Accounts | Account Details | Account Activity

Online Banking

**Business Fundamentals Chk - 7735: Account Activity Transaction Details**

|  |  |
|---|---|
| Post date: | 05/07/2019 |
| Amount: | -6,254.41 |
| Type: | Other payment |
| Description: | AMERICAN EXPRESS DES:ACH PMT ID:W2656 INDN:Haotian Bai CO ID:1133133497 WEB |
| Merchant name: | AMERICAN EXPRESS |
| Transaction category: | Finance: Credit Card Payments |

EXHIBIT 11

- 89 -

# EXHIBIT 12

6/20/2019



Bank of America I Online Banking I Accounts I Account Details I Account Activity

Online Banking

**Business Fundamentals Chk - 7735: Account Activity Transaction Details**

| | |
|---|---|
| **Post date:** | 04/25/2019 |
| **Amount:** | -6,042.87 |
| **Type:** | Other payment |
| **Description:** | AMERICAN EXPRESS DES:ACH PMT ID:W0400 INDN:Haotian Bai CO ID:1133133497 WEB |
| **Merchant name:** | AMERICAN EXPRESS |
| **Transaction category:** | Finance: Credit Card Payments |

EXHIBIT 12

- 91 -

# EXHIBIT 13

| | |
|---|---|
| **From:** | Haotian Bai <bai@pacificsurro.com> |
| **Sent:** | Wednesday, October 31, 2018 5:24 AM |
| **To:** | Yulun Jiang |
| **Subject:** | 需审阅，需标注，需回复。 |

原则：共赢，商讨，看问题两面化；进行合理质化和量化。

要求：用有颜色的字体进行补充和响应

1.) 固定员工

　　a.) ▇▇▇▇▇▇

　　　　职责：公司电话接听（英文），邮件发送与回复，预约面试，员工上岗资料，背景调查，医疗资料索取，社交媒体
制作与更新

　　　　学历：UCI 本科，文学新闻学 （中偏上）

　　　　薪资：$15

　　　　工作重要性：90

　　　　可取代性：中偏高

　　　　可塑造性：中

　　　　可提升空间：低

　　　　评价：工作级别较低，有一定英文写作水平，人际交往能力较差，电话沟通中但可提高，有一点医疗资料索取经
验，可取代但需时间成本。

　　b.) ▇▇▇▇

　　　　职责：编辑资料，协调准父母，协调代母

　　　　学历：野鸡

　　　　工作重要性：100

　　　　可塑造性：低，接近无

　　　　可取代性：高（除诊所经验，相信何英文好，沟通能力强的人，去过一次诊所就可取代）

　　　　可提升空间：低，接近无

　　　　评价：工作重要性特别高，直接关系到准父母和代母的满意，以及对企业的反馈，不适合担任这种重要职务，需
要人辅佐同时进行，浪费部分时间成本和机会成本，但是态度端正，肯吃苦。

　　c.) ▇▇▇▇

　　　　职责：网站制作和更新，各种宣传材料制作，图片修改与编辑，文件制作与编辑

　　　　学历：一般，未完成，

　　　　薪资：$18，但时长，等效15

　　　　工作重要性：70，最大优点为灵活，学习能力强

　　　　可取代性：低

　　　　可塑造性：高

　　　　可提升空间：高

　　　　评价：学习能力最强，可靠性最高，可用性最高，对业务最熟悉，可做为办公室管理。

1

**EXHIBIT 13**

d.) ███ （她为什么存在？？？？）

　　职责：视频撰稿、拍摄、及制作；

　　学历：野鸡

　　工作重要性：70

　　可塑造性：未知

　　可取代性：高。

　　可提升空间：未知

　　评价：视频制作找标、技术水平一般、专业性不高、可取代性高、态度恶劣、经常迟到；已婚、没有弹性空间、到点就离职、可辞。Allan：未经商量即雇佣、完全没有双方相互尊重、不满。

e.) ███████

　　评价：目前需要能力很高的协调员、作为主力 ███ 为辅。与我视频不到几分钟、初步感觉满意、英文一般、比███稀差。面试出题显示汉语速度一般、解决方法不好、Allan：被告知还有下轮面试、提出让 ███████第二天测试英文能力、第二天被直接通知直接被雇佣。我被完全忽视、极为不满。

2.) 招募

a.) 直接广告 Google $400 Facebook $1000：效果、除了可能的品牌推广、零。

b.) 招聘员 （最有效、低成本）

　　1.)面试：白可以留住70%、50%当场答应、直接选择训练时间；

　　2.)训练：需要改进、目前活跃的是已经有能力的招募员、大部分为自觉和少许寻引

　　　　下一步：a.)原则上还是需要考、需要刷出有能力的人 b.)训练可以改变的是中间偏上、花最少的时间和机会成本来提高已经有一定能力的人 c.) 我初步训练 ███ 第二步培训、███████包括心理辅导

3.) 效果：每天2-3个短表、今天更是达到了新高：10个。

c.) 事实：目前我公司无代母、除了初步属咪、其他全部来自于互联网。（第一个代母麦琳为例外）尤其是社交媒体。代母招聘员也印过名片、发过传单（教堂、学校、穷人超市）没有任何效果。

引申：遵循20/80原则、锁定互联网和社交媒体、不浪费时间、金钱、和精力在其他渠道、不仅仅是代孕、目前所有销售行业的第一来源都是互联网。公立学校是很糟糕的不切实际的想法。

d.) 重心：训练、需要集中有限的资源来完善训练系统、比如、上星期如果不是 ███被占用、我会让他去学习美国前三大销售团队系统、并总结出毒家的系统。

e.) 你招募的事实：1.）没有任何计划（最起码我没有看到）2.）低效、不知所谓、盲目套用我的套路 3.）完全没有效果、且不说代母、目前没有面试的要加入我们 4.）之所以我的成功率高、因为我自己本身美国化的做事方式、英文水平、英文习惯、身体语言、和参军经历；面试的人对我有认同感、视我为自己人、最好的证明就是 ███ ███ 或者 ███████不会听从公司里其他任何一个人、你或者小李在这点上完全无法取代。

f.) 行动：立刻停止、集中资源做好训练和激励系统。

3.) 销售

a.) 目前为止代母从来没有枯竭过、

b.) 急需：可以随时问讯的护士/医生、来解决招募的问题。

c.) 改变：不能只围绕 ███、代母资料也需要填进我们自己的资料表、如果使用其他渠道、我们自己的表也有品牌效应、也更全面。

d.)准父母需要填我们的长表、目前为止除了 ███之外非常业余。

2

EXHIBIT 13
- 94 -

总结：1.) 这个生意的核心就是招募、我花最少的成本，（三千到五千，对比一万到两万）用最有效的方式，反到被否定，资源被拆散。

2.) 你的销售打溜，实际是我们花钱买别人的准父母，我这里没有否定你的辛苦，技能，可是你拿我直接招代母，（我去ec或者其他中介直接买你怎么想），拿你用一至两万买准父母比，本身就没可比性，老牌代孕中介都是自己的准父母，我们初期当然这样接力/合作更直接，更有效，我没有否定你的做法，但是你反过来说我，我当然不爽，你说你有意放缓没事做，难道这不是事？

3.) 一个月前我自己会怎么做，什么效果：集中办公室人员经理、调研、考察，并完善招聘系统，直接的效果就是代母的数量可能会是今天的两到三倍。

4.) 我这些问题早就有，你年龄大，我不爱点破，我本身对什么都无所谓，我明知道会走弯路，也无所畏惧，到了后期我完全没有想做的心思，我自己推掉了很多面试和训练，完全没心情，你对我没有基本的尊重，我每一步，不管再小，都去找你商量，你完全按照自己的意思，忽略我的感受，你所谓的销售我从来没有插过手，我从来没管过■■■还是■■■还是■■■■生。我还■■■■的表妹过来你都要管，换位思考你怎么想？你有时间为什么不去完善我们直销准父母的系统？■■■本身是我可以发挥最大作用的人，被你炒了就急，现在又在做功效很小的工作；

5.) 巴菲特说做生意的本质是冒计算过的风险，你完全凭感觉雇人，不尊重我的意见，做事没有任何计划，更谈不上计算。

6.) 我们是不是可以一致认为我们需要各自发挥所长？我从来没有跟你提过上述任一点，但是我现在已经完全心灰意冷，没有任何和你做事的动力了；我相信你也慢慢注意到了这个过程。现在完全是恶性循环，我不否认你的长处，有点：术业有专攻，何况我每一步都去找你商讨，反之你很多东西直接忽略我。

7.) 我的缺点很明显，我直爽，对员工要求严格，心里不爽直接就骂。我做事经常欠考虑，想做什么就做什么，想说什么就说什么，做事随心所欲，忽冷忽热，忽高忽低，其实我们公司很多杂项我后面就没管，信一封没看，会记那边欠了很多收据，和金融表格。

我希望你仔细思考上述每一点，当然每个人都有自己的偏见，如果我说错了，请在后面标注，或者附上自己的评论。我们现在在代母逐渐多起来，现金流也会多起来，但是我的动力却完全丧失，完全没有想继续做事的动力，我很随性，爱做什么就做什么；我心情对做事影响很大，别人跟我发信息我可以一下不回，心里完全没压力；我老婆说我是射手座，没心没肺，确实，<u>我周四可以回去直接把公司注销了，</u>回来完全不会瞎不爽，这本来是很好的事情，相遇到做事都不容易，希望可以在商讨下做出相应的改变。

3

EXHIBIT 13
- 95 -

EXHIBIT 14

From: Haotian Bai <bai@pacificsurro.com>
Sent: Wednesday, October 31, 2018 5:24 AM
To: Yulun Jiang
Subject: Needs check and approval; needs commenting; needs reply

Principles: win-win, business discussion, look at both sides of the problem; rationalize and quantify.
Requirements: Supplement and respond with colored fonts.

1）Permanent Employee
    a) 
    Duties: Company telephone reception (English), deliver and reply to emails, set up appointments for interview, employee employment information, background check, medical information retrieval, social media posting and update.
    Education: UCI undergrad, Literary Journalism (upper medium)
    Salary: $15
    Importance of Work: 90
    Substitutability: medium to high
    Mouldability: medium
    Promotion/Advancement Room: low
    Evaluation: Work rank is low, have some English writing skills, poor interpersonal skills, can be improve on telephone communication. A little experience in medical data acquisition, can be substituted but will be time-consuming.
    b)
    Duties: Edit materials, coordinate expecting parents, coordinate surrogate mothers
    Education: pheasant
    Importance of Work: 100
    Mouldability: low, to none
    Substitutability: high (besides clinic experience, believe someone with good English, communication skills, and have been to clinic once can replace)
    Promotion/Advancement Room: low, to none
    Evaluation: importance of work is especially high as it directly relates to the satisfaction of expecting parents and surrogates, and feedback to the business. Unsuited for this type of important post, requires support. Waste of time and opportunity cost. But has a good attitude and is willing to work hard.

    c)
    Duties: website production and update. Various promotional material production, image modification and editing; document production and editing.
    Education: average, not complete
    Salary: $18, but usually equivalent to $15
    Importance of Work: 70, strongest advantage is flexibility, and learning ability
    Substitutability: low
    Mouldability: high
    Promotion/Advancement Room: high

Evaluation: learning ability is high, highest reliability, highest usability, familiarity with business, can do office management.

d) ▮ (why does she exist????)
Duties: write, shoot and produce video document
Education: pheasant
Importance of Work: 70
Mouldability: unknown
Substitutability: high
Promotion/Advancement Room: unknown
Evaluation: video production level is standard, technique level is average, not very professional, can be easily replace. Bad attitude and often late; married, no flexibility, leaves right on the dot. Disposable. Allan: hired without consultation, no mutual respect, dissatisfied.
e) ▮▮▮▮▮▮
Evaluation: currently need a highly talented coordinator as the main force, ▮▮ is support. Video chatted with me for a few minutes, initial feeling is satisfied, average English, a little worse than ▮'s. Interview questions reveal average flexibility and bad solutions. Allan: was told that there would be a next round of interviews, asked ▮▮▮ to test English skills the next day. Was notified directly that she is hired, I was completely ignored, extremely dissatisfied.

2) Recruitment
a) Direct Advertising Google $400 Facebook $1000: Effect, besides possible brand promotion, zero.
b) Recruiters (most effective, low cost)
1) interview: Bai can keep 70%, 50% agree on the spot, directly chose training time.
2) training: Needs improvement. Current active recruiters are competent, majority of them are self-sufficient and require little guidance.
Next steps: a) In principle we need quantity, need to find competent people b) Training can be changed in the middle, spend the least amount of time and opportunity cost to improve people who are already competent and have some ability c) I will conduct initial training, ▮▮▮ will conduct second stage of training. ▮▮▮ includes counseling.
3) The effect: 2-3 short forms per day, reach a new high of 10 today
c) Fact: Currently the surrogates for our company, except for the initial ▮▮▮▮▮, all come from the internet (except the first surrogate), especially social media. Surrogate recruiters have printed business cards, and leaflets have been distributed (at church, school, poor people's supermarket) without any effect.
Extend: follow the 20/80 principle. Lockdown internet and social media, don't waste time, money, or effort on other channels. Not only surrogacy, the primary source of all sales is the internet. Public schools are a bad and impractical idea.
d) Focus: training, requires pooling limited resources to refine the training system. For example, if ▮ had not been occupied last week, I would have asked him to study the top three sales team systems in the United States, and summarize each system.
e) Facts regarding your recruitment: 1) There is no plan (at least I don't see any) 2) Inefficient and overwhelmed. Blindly copying my routine. 3) Completely ineffective. Not to mention surrogate mothers, we have no interviews to join us at present. 4) My success rate is

EXHIBIT 14
- 98 -

high because of my Americanized way of doing things, English level, English habits, body language and military experience; the interviewee identifies with me, see me as one of their own. Best example is ▓▓▓, ▓▓▓ or ▓▓▓, they won't listen to anyone else in the company. You or ▓ on this point cannot replace.

      f) Action: Stop now and focus resources on training and motivation systems.

3) Sales

      a) So far, surrogate mothers have never been exhausted.

      b) Urgent: a nurse/doctor who can answer questions any time to resolve the recruitment problem.

      c) Change: we can't just focus on ▓▓▓. Surrogacy data needs to be added to our own form, if we use other channels, our own form is also brand-specific and more comprehensive.

      d) Expecting parents need to fill in our long form. So far, besides ▓▓▓ it's very amateurish.

Conclusion: 1) The focus of this business is to recruit, I spent the least cost (3000 to 5000, as opposed to 10,000 to 20,000) in the most effective way. Instead, I get denied and resources are broken up.

      2) Your sales are done by us paying for someone else's expecting parents. I'm not denying that you work hard, and have skills. But you cannot compare the fact that I directly hire surrogates (what would you think if I went to ec or some other agency to buy), and you using 10,000 to 20,000 to by expecting parents, there is no comparison. Old surrogate agencies are their own expectant parents. Our initial stage is more direct and effective. I'm not denying your behavior, but you are talking back to me. Of course I'm upset. You said you intentionally slowed things down, isn't this a thing?

      3) What I would've done a month ago, and what effect: centralize office staff managers, research, study and improve the recruitment system. The immediate effect is that the number of surrogacy may be two or three times as many as today.

      4) I have had these problems for a long time. You are old, I don't like to point out bluntly, I don't care about anything, I know I will take detours, I'm not afraid. By the end I have absolutely no intention of doing this, I put off a lot of interviews and training, completely depending on my mood. You have no basic respect for me. Every step I take, no matter how small, I go to you to discuss; you do exactly as you please, ignore my feelings; I've never been involved in your so-called sales, I've never managed ▓▓▓ or ▓▓▓ or ▓▓▓▓▓ or ▓▓▓ or Doctor ▓▓▓ I even let you manage ▓▓ 's cousin when she came over. Think about it, what would you do in my position? Why don't you take the time to perfect our line of direct selling to expecting parents. ▓ was someone with the most useful role to me and he was fired by you, and now he is doing a very ineffective job;

      5) Buffett said that the nature of business is to take calculated risks, you totally hire people based on your feelings, don't respect my opinions, there's no planning, not to mention calculation.

      6) Can we agree that we need to develop our respective strengths? I've never mentioned this to you before, but I am down in the dumps, I have no motivation to do anything with you, I'm sure you've noticed the process slowly. Now it is a vicious cycle. I don't deny

your strengths. Besides, I go to you every step of the way, and you ignore me through a lot of things.

        7) My shortcoming is obvious. I am straightforward. I am strict with employees, if I'm upset I will scold directly. I often do thing thoughtlessly, I do what I want, say what I want. I do as I please. Our company has a lot of miscellaneous things that I just stopped caring about, I didn't read a single letter, and owe a lot of receipts and financial forms to accounting.

I want you to think about each of these points above carefully. Of course, everyone has his own prejudices. If I'm wrong, please mark it after my comments or attach your own comments. We have more surrogate mothers and more cash flow now, but my motivation is completely lost and I have no motivation to continue to do things. I'm very casual, I do whatever I like; my mood has a great impact on things; I can not respond to messages from others immediately without any pressure at all; my wife said I'm a Sagittarius, and that I am heartless, indeed, I can go on Thursday and dissolve the company directly, and I'll have no problems falling asleep afterwards. This is a very good thing but it's not great for business, so I hope to make corresponding changes when discussing business.

AFDOCS/20722253.1

EXHIBIT 14

# EXHIBIT 15

20:30

LTE

<       Big Poppa       •••

Jun 10, 2019 21:31

 Scripts写完了吗

Jun 11, 2019 10:29

 

Jun 11, 2019 13:07

 在办公室吗

Jun 11, 2019 14:40

 我不干了小李 招募关了吧 你身份我说到做到 已经帮你联系好了

Jun 11, 2019 14:46

 哈？ 

  +

EXHIBIT 15

- 102 -

20:30 ⌁    ▪ LTE 🔋

‹    Big Poppa    ⋯

Jun 10, 2019 21:31

 Did you finish writing
the script

Jun 11, 2019 10:29

 

Jun 11, 2019 13:07

 In the office?

Jun 11, 2019 14:40

 I quit, Li. Shutdown the recruitment. I will
take care of your status as promised. I
already made the contacts for you.

Jun 11, 2019 14:46

 Hah? 

     

EXHIBIT 15
- 103 -

# EXHIBIT 16

11:44

< Big Poppa ···

2019年6月16日 下午4:20

双赢是我要的结果，好聚好散，不要在做无谓的挣扎，应该是你的，一样不少，放心！🍪另外你做的错事，我可以保密，我看到了一些东西，具体见面说！ 

2019年6月17日 下午12:42

 Dissolution_PS.pdf
720K



💬 微信电脑版

2019年6月17日 下午12:43

 给加州政府的公司解散声明 详细的再谈吧

 

文件我已经准备好了 

见面签就行， 

 

EXHIBIT 16

- 105 -

11:44

‹          Big Poppa          •••

June 16, 2019 4:20 PM

Win-win is what I want, and part ways on good terms. No need for meaningless struggles. You will get whatever belongs to you. Do not worry! Also, as for your wrong doings, I can keep them a secret. I saw some things, and we will talk about the specifics when we meet in person! 

June 17, 2019 12:42 PM

 Dissolution_PS.pdf          
729K

🍃 WeChat for PC

June 17, 2019 12:43 PM

 The dissolution declaration for submission to the California government. More discussion on the details later.

 

I have already prepared the documents. 

Just need to sign when we meet in person 

 

EXHIBIT 16

- 106 -

# EXHIBIT 17



Secretary of State
Business Programs Division
Business Entities, 1500 11th Street, Sacramento, CA 95814

# Limited Liability Company (LLC)
## Cancellation Requirements – What Form to File

What form do I file to cancel my Limited Liability Company's registration in California?

| Form to Use | Entity | Requirements |
|---|---|---|
| **Short Form Cancellation Certificate -**<br><br>**Form LLC-4/8** | ONLY **LLCs** formed in California (Domestic) | **All** of the following statements about the California LLC must be true in order to file Form LLC-4/8:<br><br>a) Was registered in California **within the last 12 months**;<br>b) Has no debts or other liabilities, except as provided in Item c;<br>c) All required California final tax returns have been or will be filed with the California Franchise Tax Board;<br>d) The assets have been distributed or acquired no known assets.<br>e) No business has been conducted from the date of registration;<br>f) 50 percent or more of the voting interests of the managers or members voted, or if no managers or members, the person or 50 percent or more of the persons who signed the Articles of Organization, voted to dissolve; **and**<br>g) Any payments received from investors have been returned to those investors.<br><br>Note: If filing Form LLC-4/8, **you do not need to file** Form LLC-3 and Form LLC-4/7.<br><br>(California Corporations Code section 17707.02.) |
| **Certificate of Cancellation –**<br><br>**Form LLC-4/7** | **LLCs** formed in California (Domestic) | If the California LLC cannot answer yes to all of the items a) – g) above **and** the vote to dissolve was made by **ALL** the members.<br><br>Must check the box on Form LLC-4/7 indicating the dissolution was made by a vote of **all** the members.<br><br>(California Corporations Code section 17707.08.) |
| | **LLCs formed outside of California and registered in California** (Foreign) | Foreign LLC no longer will be conducting business in California and wants to cancel its Registration with the California Secretary of State.<br><br>(California Corporations Code section 17708.06.) |
| **A Certificate of Dissolution –**<br><br>**Form LLC-3** | ONLY **LLCs** formed in California (Domestic) | If the California LLC cannot answer yes to all of the items a) – g) above **and** the vote to dissolve was made by **less than all** the members.<br><br>Form LLC-3 must be filed prior to or together with the Certificate of Cancellation - Form LLC-4/7.<br><br>(California Corporations Code section 17707.08.) |

The status of the LLC **must be active** on the records of the California Secretary of State in order to file cancellation documents. The status of the LLC can be checked online on the Secretary of State's Business Search at *BusiinessSearch.sos.ca.gov*.

LLC Diss/Canc Info (Rev. 05/2017)          Page 1 of 1          California Secretary of State
*www.sos.ca.gov/business-programs*
(916) 657-5448

EXHIBIT 17
- 108 -



**Secretary of State**
**Business Programs Division**
Business Entities, P.O. Box 944228, Sacramento, CA 94244-2280

# Mail Submission Cover Sheet

**Instructions:**

- Complete and include this form with your submission. **This information only will be used to communicate with you in writing about the submission.** This form will be treated as correspondence and will not be made part of the filed document.
- Make all **checks or money orders** payable to the Secretary of State.
- Do not include a $15 counter fee when submitting documents by mail.
- Standard processing time for **submissions** to this office is approximately 5 business days from receipt. All **submissions** are reviewed in the date order of receipt. For updated processing time information, visit www.sos.ca.gov/business/be/processing-times.

**Optional Copy and Certification Fees:**

- If applicable, include optional copy and certification fees with your submission.
- For applicable copy and certification fee information, refer to the instructions of the specific form you are submitting.

---

**Contact Person:** (Please type or print legibly)

First Name: Haotian                          Last Name: Bai

Phone (optional): (808)796-8383

**Entity Information:** (Please type or print legibly)

Name: Pacific Surrogacy, LLC

Entity Number (if applicable): 201819710525

Comments:

---

**Return Address:** For written communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address.

Name:           Haotian Bai

Company:        Pacific Surrogacy, LLC

Address:        930 Roosevelt, Suite 210

City/State/Zip: Irvine, CA 92620

| Secretary of State Use Only | |
|---|---|
| T/TR: | |
| AMT REC'D: | $ |

Doc Submission Cover - OBE (Rev. 09/2016)

[Clear Form] [Print Form]

EXHIBIT 17

## Instructions for Completing the Certificate of Dissolution (Form LLC-3)
### (California LLC ONLY)

To put all on notice that the California limited liability company (LLC) has elected to wind up the business of the LLC, the LLC must complete the Certificate of Dissolution (Form LLC-3). Before submitting the completed form, you should consult with a private attorney for advice about your specific business needs.

Note: The status of the corporation **must be active** in order to file cancellation documents. The status of the LLC can be checked online on the Secretary of State's Business Search at *BusinessSearch.sos.ca.gov*.

*Important Additional Steps to Terminate the LLC:*

1. **Completing the Cancellation Process:** To complete the cancellation process, the LLC also **must file a** Certificate of Cancellation (**Form LLC-4/7**). This Form LLC-3 is not required when the vote to dissolve was made by **all** of the members and that fact is stated on the Form LLC-4/7.

2. **Final Tax Returns:** See California Franchise Tax Board's (FTB) Publication 1038 – Guide to Dissolve, Surrender, or Cancel a California [or Foreign] Business Entity – *www.ftb.ca.gov/forms/misc/1038.pdf*.

   - All final returns required under the California Revenue and Taxation Code must be filed timely (Form 568 [for LLCs not classified as a corporation] or Form 100/100S [for LLCs classified as a corporation]) with the FTB and the $800 annual tax for the tax year of the final return must be paid. If final returns are not filed, the LLC will remain FTB active and continue to be subject to the $800 annual tax and/or fee.

   - For information regarding FTB forms and publications visit their website at *https://www.ftb.ca.gov* or contact the FTB at (800) 852-5711 (from within the U.S.) or (916) 845-6500 (from outside the U.S.)**.**

**Fees:**
- **Filing Fee:** There is **no fee** for filing this Certificate of Dissolution (Form LLC-3).
- **Faster Service Fee:**
   - Counter and guaranteed expedite services are available only for documents *submitted in person (drop off) to our Sacramento office.*
   - **Counter Drop Off:** A separate, non-refundable **$15.00** counter drop off fee is required if you submit in person your completed document at our Sacramento office. The $15.00 counter drop off fee provides priority service over documents submitted by mail. The special handling fee is not refundable whether the document is filed or rejected.
   - **Guaranteed Expedite Drop Off:** For more urgent submissions, documents can be processed within a guaranteed timeframe for a non-refundable fee instead of the counter drop off fee. For detailed information about this faster processing service through our Preclearance and Expedited Filing Services, go to *www.sos.ca.gov/business/be/service-options*.

**Copies:** To get a copy of the filed document, include payment for copy fees when the document is submitted. Copy fees are $1.00 for the first page and $.50 for each attachment page. For certified copies, there is an additional $5.00 certification fee, per copy.

**Payment Type:** Check(s) or money orders should be made payable to the Secretary of State. **Do not send cash by mail.** If submitting the document in person in our Sacramento office, payment also may be made by credit card (Visa® or MasterCard®).

**Processing Times:** For current processing times, go to *www.sos.ca.gov/business/be/processing-times*.

If you are not completing this form online, please **type or legibly print** in black or blue ink. **Complete the Certificate of Dissolution (Form LLC-3) as follows:**

| Item | Instruction | Tips |
|------|-------------|------|
| 1. | Enter the name of the LLC **exactly** as it appears on file with the California Secretary of State, including the entity ending (ex: "Jones & Company, LLC" or "Smith Construction, a Limited Liability Company"). | If the LLC is a registered foreign (formed outside of California) LLC, do not file this Form LLC-3; file the Certificate of Cancellation (**Form LLC-4/7**) to terminate registration in California. |

| 2. | Enter the 12-digit file number issued to the LLC by the California Secretary of State at the time of registration. | • The 12-digit file number is provided by the Secretary of State above the file stamp at the top of the LLC's registration document filed with the California Secretary of State.<br><br>• To ensure you have the correct file number and exact name of the LLC, look to your registration document filed with the California Secretary of State and any name change amendments.<br><br>• Secretary of State Records can be accessed online through our Business Search at *BusinessSearch.sos.ca.gov*. While searching the Business Search, be sure to identify your LLC correctly including the jurisdiction that matches your LLC. |
|---|---|---|
| 3. | You must check the appropriate box (**check one**). | • This Form LLC-3 **is not required** if the vote to dissolve was made by **ALL** of the members, and that fact is stated on the Certificate of Cancellation (**Form LLC-4/7**).<br><br>• This Form LLC-3 puts all on notice that the LLC has elected to wind up the business of the LLC and is in the process of paying liabilities and distributing assets.<br><br>• In order to terminate the LLC, the LLC also **must file a** Certificate of Cancellation (**Form LLC-4/7**). |
| 4. | Form LLC-3 must be signed by the managers, unless the LLC has had no members for 90 consecutive days, in which case the form must be signed by the person(s) authorized to pay liabilities, distribute assets and terminate the LLC. | • If you need more space for signatures:<br>  – Place the additional signatures on only one side of a standard letter-sized piece of paper (8 1/2" x 11") clearly marked as an attachment to Form LLC-3 and attach the extra page(s) to the completed Form LLC-3.<br>  – All attachments are part of this document.<br><br>• Multiple Form LLC-3s with **different signatures** will be returned without being filed – use only one form.<br><br>• If Form LLC-3 is signed by an entity, the person who signs on behalf of the entity should note their name and position/title, the exact entity name and the entity's relation to the dissolving LLC. Example: If the LLC ("Smith LLC") is the manager of the canceling LLC, the signature of the person signing on behalf of Smith LLC should be reflected as Joe Smith, Manager of Smith LLC, Manager.<br><br>• If Form LLC-3 is signed by a trust, the trustee should sign as follows: _____ , trustee for _____ trust (including the date of the trust, if applicable). Example: Mary Todd, trustee of the Lincoln Family Trust (U/T/A 5-1-1994), Member.<br><br>• **Do not** use a computer generated signature. |

**Mail Submission Cover Sheet (Optional):** To make it easier to receive communication related to **this document**, including receipt of the copy of the filed document, if purchased, complete the Mail Submission Cover Sheet. For the Return Address: enter the name of a designated person and/or company and the corresponding mailing address. Please note the Mail Submission Cover Sheet will be treated as correspondence and will not be made part of the filed document.

**Where to File:** Completed forms along with the applicable fees, if any can be mailed to Secretary of State, Business Entities Filings Unit, P.O. Box 944228, Sacramento, CA 94244-2280 or delivered in person (drop off) to the Sacramento office, 1500 11th Street, 3rd Floor, Sacramento, CA 95814. This form is filed only in the Sacramento office.

**Return Receipt Requested:** It is recommended for proof of submittal that if the Certificate of Dissolution (Form LLC-3) is mailed to the Secretary of State, it be sent by Certified Mail with Return Receipt Requested.

**Legal Authority:** General statutory filing provisions are found in California Corporations Code section 17702.03, 17707.01, 17707.04, 17707.08.

LLC-3 Instructions (REV 05/2017)

2017 California Secretary of State
www.sos.ca.gov/business/be

EXHIBIT 17

| | | |
|---|---|---|
| **Secretary of State** | | **LLC-3** |
| **Certificate of Dissolution** | | |
| **Limited Liability Company (LLC)** | | |
| (California LLC ONLY) | | |

**IMPORTANT — Read Instructions** before completing this form.

There is **No Fee** for filing a Certificate of Dissolution

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**This Space For Office Use Only**

| 1. **Limited Liability Company Name** (Enter the exact name of the LLC as it is recorded with the California Secretary of State) | 2. **12-Digit Secretary of State File Number** |
|---|---|
| Pacific Surrogacy, LLC | 201819710525 |

3. **Dissolution**   (Check the applicable statement.  This Form LLC-3 is not required when the vote to dissolve was made by all of the members and that fact is noted on the Certificate of Cancellation (Form LLC-4/7).)

The dissolution of this LLC was caused by one of the following circumstances (**check one**):

[ ] The happening of an event as set forth in the Articles of Organization or in the LLC's written Operating Agreement.

[✔] The vote of 50 percent or more of the voting interests of the members of the LLC or a greater percentage of the voting interests of members as specified in the Articles of Organization or written Operating Agreement.

[ ] The passage of 90 consecutive days during which the LLC has no members, except on the death of a natural person who is the sole member of the LLC, the status of the member, including a membership interest, may pass to the heirs, successors and assigns of the member by will or applicable law.

[ ] The entry of a decree of judicial dissolution pursuant to California Corporations Code section 17707.03.

The Certificate of Dissolution puts all on notice that the LLC has elected to wind up the business of the LLC and is in the process of paying liabilities and distributing assets.  In order to terminate the LLC, the LLC also **must file a Certificate of Cancellation (Form LLC-4/7)**.

4. **Read and Sign Below** (**See instructions** for signature requirements. Do not use a computer generated signature.)

By signing this document, I certify that the information is true and that I am authorized by California law to sign.

| | |
|---|---|
| | Haotian Bai |
| _____ | _____ |
| Signature | Type or Print Name |
| | Yulun Jiang |
| _____ | _____ |
| Signature | Type or Print Name |

LLC-3 (REV 05/2017)    **Clear Form**   **Print Form**    2017 California Secretary of State
www.sos.ca.gov/business/be

EXHIBIT 17

## Instructions for Completing the Certificate of Cancellation (Form LLC-4/7)

To terminate (cancel) a limited liability company (LLC), complete the Certificate of Cancellation (Form LLC-4/7). Before submitting the completed form, you should consult with a private attorney for advice about your specific business needs.

- Upon filing the Certificate of Cancellation (Form LLC-4/7), the LLC will be cancelled and the powers, rights and privileges will cease in California.

- The status of the LLC **must be active** on the records of the California Secretary of State in order to file cancellation documents. The status of the LLC can be checked online on the Secretary of State's Business Search at *BusinessSearch.sos.ca.gov*.

**Fees:**

- **Filing Fee:** There is **no fee** for filing this Certificate of Cancellation (Form LLC-4/7).

- **Faster Service Fee:**

  - Counter and guaranteed expedite services are available only for documents *submitted in person (drop off) to our Sacramento office.*

  - **Counter Drop Off:** A separate, non-refundable **$15.00** counter drop off fee is required if you submit in person your completed document at our Sacramento office. The $15.00 counter drop off fee provides priority service over documents submitted by mail. The special handling fee is not refundable whether the document is filed or rejected.

  - **Guaranteed Expedite Drop Off:** For more urgent submissions, documents can be processed within a guaranteed timeframe for a non-refundable fee in lieu of the counter drop off fee. For detailed information about this faster processing service through our Preclearance and Expedited Filing Services, go to *www.sos.ca.gov/business/be/service-options*.

**Copies:** To get a copy of the filed document, include payment for copy fees when the document is submitted. Copy fees are $1.00 for the first page and $.50 for each attachment page. For certified copies, there is an additional $5.00 certification fee, per copy.

**Payment Type:** Check(s) or money orders should be made payable to the Secretary of State. **Do not send cash by mail.** If submitting the document in person in our Sacramento office, payment also may be made by credit card (Visa® or MasterCard®).

**Processing Times:** For current processing times, go to *www.sos.ca.gov/business/be/processing-times*.

If you are not completing this form online, please **type or legibly print** in black or blue ink. **Complete the Certificate of Cancellation (Form LLC-4/7) as follows:**

| Item | Instruction | Tips |
|------|-------------|------|
| 1. | Enter the name of the LLC **exactly** as it appears on file with the California Secretary of State, including the entity ending (ex: "Jones & Company, LLC" or "Smith Construction, a Limited Liability Company"). | Some foreign LLCs may have registered using an alternate name. |
| 2. | Enter the 12-digit file number issued to the LLC by the California Secretary of State at the time of registration. | • The 12-digit file number is provided by the Secretary of State above the file stamp at the top of the LLC's registration document filed with the California Secretary of State.<br>• To ensure you have the correct file number and exact name of the LLC, look to your registration document filed with the California Secretary of State and any name change amendments.<br>• Secretary of State Records can be accessed online through our Business Search at *BusinessSearch.sos.ca.gov*. While searching the Business Search, be sure to identify your LLC correctly including the jurisdiction that matches your LLC. |

| 3. | For **California LLCs ONLY:** Check the box only if the vote to dissolve was made by the vote of all the members. | • If the dissolution was made by the vote of **ALL** the members of the California LLC, check the box. The Certificate of Dissolution (Form LLC-3) is not required.<br><br>• If the box is not checked, a Certificate of Dissolution (**Form LLC-3**) must be filed prior to or together with this Form LLC-4/7. |
|---|---|---|
| 4. | This statement should not be altered. | To ensure that all tax requirements are satisfied, see the **Final Tax Returns** section below. |
| 5. | This cancellation statement must not be altered. | |
| 6. | • For **California LLCs:** This Form LLC-4/7 must be signed by the managers, unless the LLC has had no members for 90 consecutive days, in which case the form must be signed by the person(s) authorized to pay liabilities, distribute assets and terminate the LLC.<br><br>• For **registered foreign LLCs:** This Form LLC-4/7 must be signed by a person authorized to do so under the laws of the foreign jurisdiction. | • If you need more space for signature:<br>  – Place the additional signatures on only one side of a standard letter-sized piece of paper (8 1/2" x 11") clearly marked as an attachment to Form LLC-4/7 and attach the extra page(s) to the completed Form LLC-4/7.<br>  – All attachments are part of this document.<br>• Multiple Form LLC-4/7s with **different signatures** will be returned without being filed – use only one form.<br>• If Form LLC-4/7 is signed by an entity, the person who signs on behalf of the entity should note their name and position/title, the exact entity name and the entity's relation to the canceling LLC. Example: If an LLC ("Smith LLC") is the manager of the canceling LLC, the signature of the person signing on behalf of Smith LLC should be reflected as Joe Smith, Manager of Smith LLC, Manager.<br>• If Form LLC-4/7 is signed by a trust, the trustee should sign as follows: _____, trustee for _____ trust (including the date of the trust, if applicable). Example: Mary Todd, trustee of the Lincoln Family Trust (U/T/A 5-1-1994), Member.<br>• **Do not** use a computer generated signature. |

**Mail Submission Cover Sheet (Optional):** To make it easier to receive communication related to **this document**, including receipt of the copy of the filed document, if purchased, complete the Mail Submission Cover Sheet. For the Return Address: enter the name of a designated person and/or company and the corresponding mailing address. Please note the Mail Submission Cover Sheet will be treated as correspondence and will not be made part of the filed document.

**Where to File:** Completed forms along with the applicable fees, if any can be mailed to Secretary of State, Business Entities Filings Unit, P.O. Box 944228, Sacramento, CA 94244-2280 or delivered in person (drop off) to the Sacramento office, 1500 11th Street, 3rd Floor, Sacramento, CA 95814. This form is filed only in the Sacramento office.

It is recommended for proof of submittal that if the Certificate of Cancellation (Form LLC-4/7) is mailed to the Secretary of State, it be sent by Certified Mail with Return Receipt Requested.

**Legal Authority:** General statutory filing provisions are found in California Corporations Code section **17707.08** (California limited liability companies) or **17708.06** (registered foreign limited liability companies).

**Final Tax Returns:** See California Franchise Tax Board's (FTB) Publication 1038 – Guide to Dissolve, Surrender, or Cancel a California [or Foreign] Business Entity – ***www.ftb.ca.gov/forms/misc/1038.pdf***.

- All final returns required under the California Revenue and Taxation Code must be filed timely (Form 568 [for LLCs not classified as a corporation] or Form 100/100S [for LLCs classified as a corporation]) with the FTB and the $800 annual tax for the tax year of the final return must be paid. If final returns are not filed, the LLC will remain FTB active and continue to be subject to the $800 annual tax and/or fee.

- For information regarding FTB forms and publications visit their website at ***https://www.ftb.ca.gov*** or contact the FTB at (800) 852-5711 (from within the U.S.) or (916) 845-6500 (from outside the U.S.).

| | Secretary of State | LLC-4/7 |
|---|---|---|
| | **Certificate of Cancellation** | |
| | **Limited Liability Company (LLC)** | |

**IMPORTANT — Read Instructions before completing this form.**

There is **No Fee** for filing a Certificate of Cancellation

**Copy Fees –** First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**This Space For Office Use Only**

| 1. **Limited Liability Company Name** (Enter the exact name of the LLC as it is recorded with the California Secretary of State) | 2. **12-Digit Secretary of State File Number** |
|---|---|
| Pacific Surrogacy, LLC | 201819710525 |

3. **Dissolution** (California LLCs ONLY: Check the box if the vote to dissolve was made by the vote of **ALL** the members.)

✔ The dissolution was made by a vote of **ALL** of the members of the California Limited Liability Company.

**Note:** If the above box is not checked, a **Certificate of Dissolution** (Form LLC-3) must be filed prior to or together with this Certificate of Cancellation. (California Corporations Code section 17707.08(a).)

4. **Tax Liability Statement** (Do not alter the Tax Liability Statement.)

All final returns required under the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

5. **Cancellation Statement** (Do not alter the Cancellation Statement.)

Upon the effective date of this Certificate of Cancellation, the Limited Liability Company's registration is cancelled and its powers, rights and privileges will cease in California.

6. **Read and Sign Below** (**See instructions** for signature requirements. Do not use a computer generated signature.)

By signing this document, I certify that the information is true and that I am authorized by California law to sign.

| | Yulun Jiang |
|---|---|
| Signature | Type or Print Name |
| | Haotian Bai |
| Signature | Type or Print Name |
| | |
| Signature | Type or Print Name |

LLC-4/7 (REV 05/2017)

[ Clear Form ]   [ Print Form ]

2017 California Secretary of State
www.sos.ca.gov/business/be

EXHIBIT 17