EXHIBIT 11



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

1

# INDEPENDENT CONTRACTOR AGREEMENT

This independent contractor agreement is between Pacific Surrogacy, a California Limited Liability Company (the "**Company**") and Kelly Vander Veur (the "**Contractor**").

## RECITALS

The Company is in the business of Surrogate Agency and wants to engage the Contractor to recruit prospective surrogates.

The Contractor has performed the same or similar activities for others.

The parties, therefore, agree as follows:

1. **ENGAGEMENT; SERVICES.**

    (a) **Engagement.** The Company retains the Contractor to provide, and the Contractor shall provide, the services described in **Exhibit A** (the "**Services**").

    (b) **Services.** Without limiting the scope of Services described in **Exhibit A**, the Contractor shall:

    (i) perform the Services set forth in **Exhibit A**. However, if a conflict exists between this agreement and any term in **Exhibit A**, the terms in this agreement will control;

    (ii) devote as much productive time, energy, and ability to the performance of his duties under this agreement as may be necessary to provide the required Services in a timely and productive manner;

    (iii) perform the Services in a safe, good, and workmanlike manner using at all times adequate equipment in good working order;

    (iv) communicate with the Company about the progress the Contractor has made in performing the Services;

    (v) supply all tools, equipment, and supplies required to perform the Services, except if the Contractor's work must be performed on or with the Company's equipment;

    (vi) ensure that all materials and equipment furnished to his personnel is of good and merchantable quality unless otherwise agreed by the Company;



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

2

(vii) provide services (including the Services) and end products that are satisfactory and acceptable to the Company and free of defects; and

(viii) remove, replace, or correct all or any portion of the work or end products found defective or unsuitable, without additional cost or risk to the Company.

(c) **Legal Compliance.** The Contractor shall perform the Services in accordance with standards prevailing in the Company's industry, and in accordance with applicable laws, rules, or regulations. The Contractor shall obtain all permits or permissions required to comply with those standards, laws, rules, or regulations.

(d) **Company's Obligations.** The Company shall make timely payments of amounts earned by the Contractor under this agreement and notify the Contractor of any changes to its procedures affecting the Contractor's obligations under this agreement at least 30 days before implementing those changes.

2. **TERM AND TERMINATION.**

   (a) **Term.** This agreement will become effective as described in section 20. Unless it is terminated earlier in accordance with subsection 2(b), this agreement will continue until the Services have been satisfactorily completed and the Contractor has been paid in full for such Services (the "**Term**").

   (b) **Termination.** This agreement may be terminated:

   (i) by either party on the provision of **14** days' written notice to the other party, with or without cause;

   (ii) by either party for a material breach of any provision of this agreement by the other party, if the other party's material breach is not cured within **14** days of receipt of written notice of the breach; [or]

   (iii) by the Company at any time and without prior notice, if the Contractor is convicted of any crime or offense, fails or refuses to comply with the written policies or reasonable directives of the Company, or is guilty of serious misconduct in connection with performance under this agreement; or

   (iv) automatically, on the death of the Contractor.

   (c) **Effect of Termination.** After the termination of this agreement for any reason, the Company shall promptly pay the Contractor for Services rendered before the effective date of the termination. No other compensation, of any nature or type, will be payable after the termination of this agreement.

3. **COMPENSATION.**

   (a) **Terms and Conditions.** The Company shall pay the Contractor in accordance with **Exhibit A**.



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

    **(b) No Payments in Certain Circumstances**. No payment will be payable to the Contractor under any of the following circumstances:

        (i)    if prohibited under applicable government law, regulation, or policy;

        (ii)    if the Contractor did not directly perform or complete the Services described in **Exhibit A**;

        (iii)    if the Contractor did not perform the Services to the reasonable satisfaction of the Company; or

        (iv)    if the Services performed occurred after the expiration or termination of the Term, unless otherwise agreed in writing.

    **(c) No Other Compensation**. The compensation set out above will be the Contractor's sole compensation under this agreement.

    **(d) Expenses**. Any ordinary and necessary expenses incurred by the Contractor or his staff in the performance of this agreement will be the Contractor's sole responsibility.

    **(e) Taxes**. The Contractor is solely responsible for the payment of all income, social security, employment-related, or other taxes incurred as a result of the performance of the Services by the Contractor under this agreement, and for all obligations, reports, and timely notifications relating to those taxes. The Company has no obligation to pay or withhold any sums for those taxes.

    **(f) Other Benefits**. The Contractor has no claim against the Company under this agreement or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

4. **NATURE OF RELATIONSHIP; INVENTIONS.**

    **(a) Independent Contractor Status.**

        (i)    The relationship of the parties under this agreement is one of the independent contractors, and no joint venture, partnership, agency, employer-employee, or similar relationship is created in or by this agreement. Neither party may assume or create obligations on the other party's behalf, and neither party may take any action that creates the appearance of such authority.

        (ii)    The Contractor has the sole right to control and direct the means, details, manner, and method by which the Services will be performed, and the right to perform the Services at any time, place, or location. The Contractor or the Contractor's staff shall perform the Services, and the Company is not required to hire, supervise, or pay any assistants to help the Contractor perform those Services. The Contractor shall provide insurance coverage for himself and [his][her][its] staff.

    **(b) Company Inventions.** The Contractor has no right or interest in any work or product resulting from the Services the Contractor performs for the Company, or any of the documents, reports, or other materials the Contractor creates in connection with those Services (collectively, the "**Company Inventions**"), and has no right to or interest in any copyright to the Company Inventions. The Company Inventions have been specially commissioned or ordered by the



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

Company as "works made-for-hire," as that term is defined in the United States Copyright Act, and the Company is therefore the author and owner of all copyrights in the CompanyInventions.

(c) **Disclosure of Company Inventions.** The Contractor shall promptly disclose in writing to the Company all Company Inventions that the Contractor has authored, made, conceived, or first actually reduced to practice, alone or jointly with others.

(d) **Assignment of Company Inventions.** If the Company Inventions or any parts of those are deemed not to have been works-made-for-hire, the Contractor hereby assigns to the Company all interest the Contractor may have in the Company Inventions, including all copyrights, publishing rights, rights to use, reproduce, and otherwise exploit the Company Inventions in all formats or media and all channels, whether now known or created in the future.

(e) **Patent and Copyright Registrations.** The Contractor shall assist the Company or its designee, at the Company's expense, to secure the Company's rights in the Company Inventions and any copyrights, patents, mask work rights, or other intellectual property rights relating to the Company Inventions in all countries, including by disclosing to the Company all pertinent information and data with respect to those, by signing all applications, specifications, oaths, assignments, and other instruments that the Company deems necessary to apply for and obtain such rights and to assign and convey to the Company, its successors, assigns, and nominees the exclusive interest in the Company Inventions, and any copyrights, patents, mask work rights, or other intellectual property rights relating to those. When it is in the Contractor's power to do so, the Contractor shall sign or cause to be signed these instruments or papers after the termination or expiration of this agreement. If the Contractor provides assistance after the termination or expiration of this agreement at the Company's request, the Company shall pay the Contractor a reasonable rate for any time spent. If because of the Contractor's mental or physical incapacity or for any other reason the Company cannot secure a signature to apply for or pursue any application of any United States or foreign patents or copyright registrations covering Company Inventions or original works of authorship assigned to the Company, the Contractor hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as the Contractor's agents and attorneys in fact, to act for and on behalf of the Contractor to sign and file any those applications and to do all other lawfully permitted acts



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

to further the prosecution and issuance of patent or copyright registrations with the same legal force and effect as if they had been signed by the Contractor.

## 5. USE OF TRADEMARKS.

The Contractor may use, reproduce, and distribute the Company's service marks, trademarks, and trade names (if any) (collectively, the "**Company Marks**") in connection with the performance of the Services. Any goodwill received from this use will accrue to the Company, which will remain the sole owner of the Company Marks. The Contractor may not engage in activities or commit acts, directly or indirectly, that may contest, dispute, or otherwise impair the Company's interest in the Company Marks. The Contractor may not cause diminishment of the value of the Company Marks through any act or representation. The Contractor may not apply for, acquire, or claim any interest in any Company Marks or others that may be confusingly similar to any of them, through advertising or otherwise. At the expiration or earlier termination of this agreement, the Contractor will have no further right to use the Company Marks, unless the Company provides written approval for each such use.

## 6. CONFIDENTIAL INFORMATION.

(a) **Confidentiality.** During the Term, the Contractor may have access to or receive certain information of or about the Company that the Company designates as confidential or that, under the circumstances surrounding disclosure, ought to be treated as confidential by the Contractor ("**Confidential Information**"). Confidential Information includes information relating to the Company or its current or proposed business, financial statements, budgets and projections, customer identifying information, potential and intended customers, employers, products, computer programs, specifications, manuals, software, analyses, strategies, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media. The Contractor will treat the Confidential Information as confidential and will not disclose it to any third party or use it for any purpose but to fulfill [his][her][its] obligations in this agreement. In addition, the Contractor shall use due care and diligence to prevent the unauthorized use or disclosure of such information.

(b) **Exceptions.** The obligations and restrictions in subsection (a) do not apply to that part of the Confidential Information the Contractor demonstrates:

(i) was or becomes generally publically available other than as a result of a disclosure by the Contractor in violation of this agreement;

(ii) was or becomes available to the Contractor on a nonconfidential basis before its disclosure to the Contractor by the Company, but only if:

A. the source of such information is not bound by a confidentiality agreement with the Company or is not otherwise prohibited from transmitting the information to the Contractor by a contractual, legal, fiduciary, or other obligation; and

B. the Contractor provides the Company with written notice of [his][her][its] prior possession either (I) before the effective date of this agreement or (II) if the Contractor later becomes aware (through disclosure to the Contractor) of any aspect of the Confidential Information as to which the Contractor had prior possession, promptly on the Contractor so becoming aware;



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

6

- (iii) is requested or legally compelled (by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar processes), or is required by a regulatory body, to be disclosed. However, the Contractor shall:

    A. provide the Company with prompt notice of these requests or requirements before making a disclosure so that the Company may seek an appropriate protective order or other appropriate remedy; and

    B. provide reasonable assistance to the Company in obtaining any protective order.

    If a protective order or other remedy is not obtained or the Company grants a waiver under this agreement, the Contractor may furnish that portion (and only that portion) of the Confidential Information that, in the written opinion of counsel reasonably acceptable to the Company, the Contractor is legally compelled or otherwise required to disclose. However, the Contractor shall make reasonable efforts to obtain reliable assurance that confidential treatment will be accorded any part of the Confidential Information disclosed in this way; or

- (iv) was developed by the Contractor independently without breach of this agreement.

- **(c) Remedy**. Money damages may not be a sufficient remedy for any breach of this section by the Contractor and, in addition to all other remedies, the Company may seek (and may be entitled to) as a result of such breach, specific performance and injunctive or other equitable relief as a remedy.

## 7. OTHER ACTIVITIES.

During the Term, the Contractor is free to engage in other independent contracting activities, except that the Contractor may not accept work, enter into contracts, or accept obligations inconsistent or incompatible with the Contractor's obligations or the scope of Services to be rendered for the Company under this agreement.

## 8. RETURN OF PROPERTY.

Within 7 days of the expiration or earlier termination of this agreement, the Contractor shall return to the Company, retaining no copies or notes, all Company products samples, models, property, and documents relating to the Company's business including reports, abstracts, lists, correspondence, information, computer files, computer disks, and other materials and copies of those materials obtained by the Contractor during and in connection with [his][her][its] work with the Company. All files, records, documents, blueprints, specifications, information, letters, notes, media lists, original artwork or creative work, notebooks, and similar items relating to the Company's business, whether prepared by the Contractor or by others, remain the Company's exclusive property.

## 9. INDEMNIFICATION.

- **(a) Of Company by Contractor.** At all times after the effective date of this agreement, the Contractor shall indemnify the Company and its members, employees, affiliates and subsidiaries(collectively, the "**Company Indemnitees**") from all damages, liabilities, expenses,



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

claims, or judgments (including interest, penalties, reasonable attorneys' fees, accounting fees, and expert witness fees) (collectively, the "**Claims**") that any Company Indemnitee may incur and that arise from:

(i) the Contractor's negligence or willful misconduct arising from the Contractor's carrying out of [his][her][its] obligations under this agreement;

(ii) the Contractor's breach of any of [his][her][its] obligations or representations under this agreement; or

(iii) the Contractor's breach of [his][her][its] express representation that [he][she][it] is an independent contractor and in compliance with all applicable laws related to work as an independent contractor. If a regulatory body or court of competent jurisdiction finds that the Contractor is not an independent contractor or is not in compliance with applicable laws related to work as an independent contractor, based on the Contractor's own actions, the Contractor will assume full responsibility and liability for all taxes, assessments, and penalties imposed against the Contractor or the Company resulting from that contrary interpretation, including taxes, assessments, and penalties that would have been deducted from the Contractor's earnings if the Contractor had been on the Company's payroll and employed as a Company employee.

**(b) Of Contractor by Company.** At all times after the effective date of this agreement, the Company shall indemnify the Contractor and its members, employees, affiliates and subsidiaries (collectively, the "**Contractor Indemnitees**") from all Claims that the Contractor Indemnitees may incur arising from:

(i) the Company's operation of its business;

(ii) the Company's breach or alleged breach of, or its failure or alleged failure to perform under, any agreement to which it is a party; or

(iii) the Company's breach of any of its obligations or representations under this agreement. However, the Company is not obligated to indemnify the Contractor if any of these Claims result from the Contractor's own actions or inactions.

**10. FORCE MAJEURE.**

A party will be not be considered in breach of or in default because of, and will not be liable to, the other party for, any delay or failure to perform its obligations under this agreement by reason of fire, earthquake, flood, explosion, strike, riot, war, terrorism, or similar event beyond that party's reasonable control (each a "**Force Majeure Event**"). However, if a Force Majeure Event occurs, the affected party shall, as soon as practicable:

(a) notify the other party of the Force Majeure Event and its impact on performance under this agreement; and



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

(b) use reasonable efforts to resolve any issues resulting from the Force Majeure Event and perform its obligations under this agreement.

## 11. GOVERNING LAW.

(a) **Choice of Law.** The laws of the state of California govern this agreement (without giving effect to its conflicts of law principles).

(b) **Choice of Forum.** Both parties consent to the personal jurisdiction of the state and federal courts in Orange County, California.

## 12. AMENDMENTS.

No amendment to this agreement will be effective unless it is in writing and signed by a party or its authorized representative.

## 13. ASSIGNMENT AND DELEGATION.

(a) **No Assignment.** Neither party may assign any of its rights under this agreement, except with the prior written consent of the other party, which consent shall not be unreasonably withheld. All voluntary assignments of rights are limited by this subsection.

(b) **No Delegation.** Neither party may delegate any performance under this agreement, except with the prior written consent of the other party, which consent shall not be unreasonably withheld.

(c) **Enforceability of an Assignment or Delegation.** If a purported assignment or purported delegation is made in violation of this section 14, it is void.

## 14. COUNTERPARTS; ELECTRONIC SIGNATURES.

(a) **Counterparts.** The parties may execute this agreement in any number of counterparts, each of which is an original but all of which constitute one and the same instrument.

(b) **Electronic Signatures.** This agreement, agreements ancillary to this agreement, and related documents enter into in connection with this agreement are signed when a party's signature is delivered by facsimile, email, or other electronic medium. These signatures must be treated in all respects as having the same force and effect as original signatures.

## 15. SEVERABILITY.

If any one or more of the provisions contained in this agreement is, for any reason, held to be invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability will not affect any other provisions of this agreement, but this agreement will be construed as if those invalid, illegal, or unenforceable provisions had never been contained in it, unless the deletion of those provisions would result in such a material change so as to cause completion of the transactions contemplated by this agreement to be unreasonable.

## 16. NOTICES.



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

(a) **Writing; Permitted Delivery Methods.** Each party giving or making any notice, request, demand, or other communication required or permitted by this agreement shall give that notice in writing and use one of the following types of delivery, each of which is a writing for purposes of this agreement: personal delivery, mail (registered or certified mail, postage prepaid, return-receipt requested), nationally recognized overnight courier (fees prepaid), facsimile, or email.

(b) **Addresses.** A party shall address notices under this section 17 to a party at the following addresses:

If to the Company:
Haotian Bai
Pacific Surrogacy, LLC
930 Roosevelt Suite 210, Irvine, CA 92620
(626) 620-6666
bai@pacificsurro.com

If to the Contractor:

Full Name: Kelly Vander Veur

Address: PO Box 2279, Alameda, CA 94501

Contact Number: 9252855534

Contact Email: KellyAnneVanderVeur@yahoo.com

(c) **Effectiveness.** A notice is effective only if the party giving notice complies with subsections (a) and (b) and if the recipient receives the notice.

## 17. WAIVER.

No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by the provisions of this agreement will be effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach, failure, right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, and no waiver will constitute a continuing waiver, unless the writing so specifies.

## 18. ENTIRE AGREEMENT.

This agreement constitutes the final agreement of the parties. It is the complete and exclusive expression of the parties' agreement about the subject matter of this agreement. All prior and contemporaneous communications, negotiations, and agreements between the parties relating to the subject matter of this agreement are expressly merged into and superseded by this agreement. The provisions of this agreement may not be explained, supplemented, or qualified by evidence of trade usage or a prior course of dealings. Neither party was induced to enter this agreement by, and neither party is relying on, any statement, representation, warranty, or agreement of the other party except those set forth expressly in this agreement. Except as set forth expressly in this agreement, there are no conditions precedent to this agreement's effectiveness.



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

**19. HEADINGS.**

The descriptive headings of the sections and subsections of this agreement are for convenience only, and do not affect this agreement's construction or interpretation.

**20. EFFECTIVENESS.**

This agreement will become effective when all parties have signed it. The date this agreement is signed by the last party to sign it (as indicated by the date associated with that party's signature) will be deemed the date of this agreement.

**21. NECESSARY ACTS; FURTHER ASSURANCES.**

Each party and its officers and directors shall use all reasonable efforts to take, or cause to be taken, all actions necessary or desirable to consummate and make effective the transactions this agreement contemplates or to evidence or carry out the intent and purposes of this agreement.

[SIGNATURE PAGE FOLLOWS]



Pacific Surrogacy, LLC
930 Roosevelt, Suite 210
Irvine, CA 92620
(855)888-8999
info@pacificsurro.com

Each party is signing this agreement on the date stated opposite that party's signature.

CONTRACTOR NAME, if not an individual

Date: Mar 15 2019

By: *Kelly Vander Veur*

Print Name: Kelly Vander Veur

Pacific Surrogacy, LLC

Date: Mar 15 2019

By: *Haotioan Bai*

Print Name: Haotian Bai

Title: Manager

# Exhibit A

## DUTIES, SPECIFICATIONS, AND COMPENSATION

1. **DUTIES.**

The Contractor shall perform the following work: to recruit prospective gestational carriers/surrogates

2. **SPECIFICATIONS.**

The parties agree to the following additional specifications about the work to be provided:
   a.) To market, prospect, and generate prospective surrogate leads.
   b.) To provide consultation and guidance to prospective surrogates.
   c.) To assist the Company to acquire all pertinent information during the application process.
   d.) To provide continuous emotional and social support through contract signing process.
   e.) To update and utilize company required project management and customer relationship management systems.

3. **COMMISSION STRUCTURE.**

As full compensation for the Services rendered under this agreement, the Company shall pay the Contractor as follows:

a. **OPTION A**
   **Commission:** For each surrogate completed and signed surrogacy contract, the Contractor shall be paid at $3,000.00 (Three Thousand Dollars). The Commission will be paid in Two (2) installments. The first installment of $1500.00 (One Thousand and Five Hundred Dollars) will be processed within seventy-two (72) hours after the signing of Retainer Agreement with Pacific Surrogacy by Intended Parents; the second installment of $1,500.00 (One Thousand and Five Hundred Dollars) will be processed within seventy-two (72) hours after the signing and executing of Surrogacy Contract between surrogates and Intended Parents.

b. **OPTION B**
   **Commission:** For each surrogate completed and signed surrogacy contract, the Contractor shall be paid at $2,500.00 (Two Thousand and Five Hundred Dollars). The Commission will be paid in Two (2) installments. The first installment of $1,000.00 (One Thousand and Dollars) will be processed within seventy-two (72) hours after the signing of Retainer Agreement with Pacific Surrogacy by Intended Parents; the second installment of $1,500.00 (One Thousand and Five Hundred Dollars) will be processed within seventy-two (72) hours after the signing and executing of Surrogacy Contract between surrogates and Intended Parents.

   **Monthly Commission:** Within One Monthly Sales Period, If the Contractor is able to deliver Three (3) surrogates who completed the full application package, which includes but not limited to: surrogate full application, background check authorization form, medical record release consent form, AND it is contingent upon successful passing of medical record review per ASRM gestational carrier guidelines, an additional amount of $1,500.00 (One Thousand Dollars) will be awarded to the Contractor within seventy-two (72) hours after the conclusion of last Monthly Sales Period.

**Monthly Sales Period**: Monthly sales period starts on the day following successfully completion of initial training and each cycle ends 30 days from the initial date.

4. **COMMISSION CONTINGENCIES**

a. If Company terminates contractor's contract, he/she shall receive commissions on all completed sales up to the date of termination.
b. Contractor shall forfeit any previously paid commissions if a surrogate recruited fail to fulfill her duties due to any reasons. Forfeited commissions shall be deducted from future commissions.

Case 8:19-cv-01456-DOC-JDE   Document 47-2   Filed 09/23/19   Page 14 of 15   Page ID #:705

Each party is signing this **Exhibit A** on the date stated opposite that party's signature.

Commission Payment Option Chosen: __b__

CONTRACTOR NAME, if not an individual

Date: Mar 15 2019    By: *Kelly Vander Veur*

Print Name: Kelly Vander Veur

Title: Surrogate Consultant / Recruiter

Pacific Surrogacy, LLC

Date: Mar 15 2019    By: *Haotioan Bai*
Print Name: Haotian Bai
Title: Manager