MALCOLM S. MCNEIL (SBN 109601)
malcolm.mcneil@arentfox.com
ISMAEL BAUTISTA JR. (SBN 252139)
ismael.bautista@arentfox.com
STEFAN BOGDANOVICH (SBN 324525)
stefan.bogdanovich@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400
Facsimile:  213.629.7401

Attorneys for Plaintiffs and Counter-Defendants
PACIFIC SURROGACY USA, INC. and YULUN
JIANG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PACIFIC SURROGACY USA, LLC, a California Limited Liability Company; YULUN JIANG, an Individual,<br><br>Plaintiffs,<br><br>v.<br><br>PATRIOT CONCEPTIONS, LLC, a California Limited Liability Company; HAOTIAN BAI, an Individual; QUNYAO YU, an Individual, DOES 1-25,<br><br>Defendants.<br><br>HAOTIAN BAI, an Individual,<br><br>Counter-Claimant,<br><br>v.<br><br>PACIFIC SURROGACY USA, LLC, a California Limited Liability Company; YULUN JIANG, an Individual,<br><br>Cross-Defendants. | Case No.  8:19-cv-01456 DOC JDEx<br><br>Judge:    David O. Carter<br><br>**COUNTER-DEFENDANTS PACIFIC SURROGACY USA, LLC AND YULUN JIANG'S REPLY IN SUPPORT OF MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 4, 2019<br>Time:  8:30 a.m.<br>Ctrm:  9D |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

8:19-cv-01456 DOC JDEX

COUNTER-DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS

## I. INTRODUCTION

The crux of the issue before this Court is not whether Bai's counterclaim should be dismissed, but rather, whether Bai should be given leave to amend. Bai unequivocally fails to state a claim under the Federal Rules, and Bai does not argue otherwise. Instead, he cites Californian pleading standards which are foreclosed by the *Erie* Doctrine. The meat of Bai's opposition centers on whether new facts merit giving Bai another pleading – and another bargaining chip – in this case. But the new facts confirm Bai's false advertising claims are unavailable as a matter as of law, that the Court would lack jurisdiction to hear the state law claims in isolation, and that the defamation claim is barred by the First Amendment, as well as California's common interest and litigation privileges.

## II. ARGUMENT

### A. Bai Insufficiently Pleads All Four of His Counterclaims.

Bai does not argue that his first through third counterclaims for false advertising are pled with sufficient particularity under Rule 9(b). Instead, without citing any authority, and ignoring this Court's own precedent in other false advertising cases, he claims Rule 9(b) does not apply because Bai does not allege a cause of action for "fraud but false advertising." Opp. to Mot. to Dismiss at 4. Whether or not Bai pleads a cause of action for "fraud" is irrelevant. Rule 9(b)'s application turns on whether allegations are "grounded in fraud." *See* Motion to Dismiss at 15-16. Bai also does not refute that the defamation claim is insufficiently pled by failing to allege who heard the statements [Mot. at 21], and by failing to plead malice, since the common interest privilege applies to these statements [Mot. at 23-25].

Bai instead argues that "'[l]ess particularity is required when it appears that defendant has superior knowledge of the facts.'" Opp. at 4 and 5 (*citing Okun v. Superior Court*, 29 Cal. 3d 442, 458 (1981)). Yet California pleading rules are meaningless in federal court because of the *Erie* Doctrine. "The Federal Rules of

Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003)(*citing Hanna v. Plumer*, 380 U.S. 460 (1965))(applying Rule 9(b) to Cal. Bus. & Prof. Code §§ 17200 and 17500 claims).

### B. Bai's False Advertising Claims Should be Dismissed Without Leave to Amend.

#### 1. False Advertising Based on the Use of the PS Trademarks[1]

To rescue Bai's false advertising claims, the opposition argues that since filing its counter-claim, "BAI has discovered more information about Counter Defendants actions and can certainly amend the Counter Complaint if necessary." Opposition at 4. But the only new information Bai has discovered is a single email which shows a surrogate was confused [Bai Declaration, Ex. 5], and Bai's own opinion this confusion stemmed from the use of the PS marks [Bai. Decl. ¶ 20].

Remarkably, the email which Bai claims shows consumer confusion in fact shows that PSUSA explicitly clarifies it is ***not*** the same company as PS. *See* Bai Decl., Ex. 5. The subject line of email reads "Statement of Ownership Change" and the body of the email consumer states that "a new company has been formed." The surrogate's response also indicates she was aware this was a new company. *Id*. Likewise, in *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, the Court held that "[n]o reasonable consumer could be misled" by Bacardi's use of Havana Club mark because the rum bottle's "label clearly states on the front that the liquor is 'Puerto Rican Rum' and, on the back, that it is 'distilled and crafted in Puerto Rico.'" 653 F.3d 241, 252 (3d Cir. 2011).

Worse yet, Bai does not address case law saying a registered mark cannot raise a false advertising claim on the theories it was illegitimately obtained or

---

[1] Bai's Response to PSUSA and Jiang's Uncontroverted Material Facts No. 6 mistakenly notes there has not been a Request for Judicial Notice of the federal PS marks. Such notice was, in fact, requested. *See* Dkt. 48 at 3, lines 8-11.

1  misused (while the plaintiff is seeking damages). Mot. at 23; *San Diego County*
2  *Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1052-55
3  (S.D. Cal. 2019). Secondly, even if the use of marks could be false advertising, the
4  PS mark cannot be misleading as a matter of law, despite Bai's assertion. Opp. at 4.
5      One case is particularly similar. In *Pernod Ricard USA*, *supra*, the Third
6  Circuit held that the use of a federally registered "Havana Club" trademark to sell
7  non-Havanan rum (due to the Cuban embargo) cannot be misleading as a matter of
8  law, and thus cannot be false advertising under the Lanham Act. 653 F.3d 241.
9  There, plaintiff and defendant were rival rum producers who each sold "Havana
10 Club" rum, made in Puerto Rico. *Id*. at 244. Each side claimed it was the one and
11 only true successor to the original "Havana Club" rum company, which was
12 expropriated during the Cuban Communist Revolution. *Id*. The Third Circuit
13 characterized "the false advertising dispute [a]s a proxy for the real fight the parties
14 want to have, which is over… the exclusive use of [the] 'Havana Club'…
15 trademark." *Id*. The District Court below held because "Bacardi was originally a
16 Cuban company," the company's rum "has a Cuban heritage and, therefore,
17 depicting such a heritage is not deceptive." 702 F. Supp. 2d 238, 247 (D. Del.
18 2010), aff'd, 653 F.3d 251-52 (3d Cir. 2011). The Third Circuit affirmed that the
19 mark's use was not misleading, and refused to "'interpret[] 'misleading' [under
20 §1125(a)(1)] to include [all] propositions that are susceptible to
21 misunderstanding.'" 653 F.3d 241, 254 (*citing Mead Johnson & Co. v. Abbott
22 Labs*., 201 F.3d 883, 886 (7th Cir.2000)).
23     Just as the District Court in *Pernod* concluded that the Havana Club mark
24 was not misleading because Bacardi shared a Cuban heritage, here, the PS marks
25 truthfully depict PSUSA's own heritage, since PSUSA's services are performed by
26 many of the same employees and owner as the original PS. Also, in *Pernod*, no rum
27 legally sold in the US actually came from Havana because of the Cuban embargo.
28 Likewise here, PSUSA cannot literally be the same business entity as PS because of

1  the dissolution. And while it is conceivable a person can misunderstand PSUSA to
2  be the original PS – just as a person may mistakenly believe that Havana Club rum
3  is actually from Havana – the truthful use of a mark to convey a common heritage
4  cannot amount to false advertising as a matter of law. And because the use of the
5  mark could not be misleading as a matter of law, the Third Circuit held, *de novo*,
6  that the District Court properly disregarded *all* evidence of actual consumer
7  confusion submitted by the plaintiff. *Id.* at 253-54. Thus, this Court may also
8  properly disregard Bai's "evidence" as well.

9        The *Pernod* decision is also eminently correct with respect to registered
10  trademarks, and avoids perplexing contradictions. Under the Lanham Act,
11  "[s]uggestive, arbitrary, and fanciful marks are considered 'inherently distinctive'
12  and are automatically entitled to federal trademark protection," whereas "generic"
13  marks are not protectable, and "merely descriptive" marks are less protectable.
14  *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir.
15  2010). But virtually every single suggestive, arbitrary or fanciful mark is capable of
16  being misunderstood, and is, according to Bai's legal theory, potentially false
17  advertising under the Lanham Act. Presumably, this theory allows Samsung to sue
18  Apple for false advertising because it sells electronics, and not apples. In sum, Bai's
19  theory would allow the Lanham Act to cannibalize itself. *Compare* 15 U.S.C. §
20  1125(a)(1)(B) (false advertising) to §1052(e) ("merely descriptive" trademarks can
21  be refused trademark registration).

22        Just as the Court in *Pernod* aptly observed this contrived legal theory was
23  really just a proxy fight over the right to claim affiliation with the original Havana
24  Club, likewise here, Bai's false advertising claim appears to be a one-sided proxy
25  fight over his ex-partner's right to claim affiliation with the original PS, which he
26  founded. In fact, Bai's own advertisements in this case falsely claim that PSUSA
27  "has nothing to do with PS" [Dkt 5, Ex. 4] and that the two companies "are not
28  related to each other" [Dkt 5, Ex. 5]. This has also solely been a one-sided attack.

Jiang, for his part, offered to enter into a consent decree at the very outset of this case whereby both "Mr. Jiang and Mr. Bai agree to never again use the 'Pacific Surrogacy' wordmark in commerce," [Dkt 5, at 12], and has since ceased using the PS marks, rendering an injunction moot [UMF 5; Mot. to D. at 29-30].

### 2. False Advertising Based on the Non-Party Social Media Posts

Bai's false advertising claim based on representations made by former and current independent contractors that PSUSA is "veteran owned" should also be dismissed without leave to amend. In Bai's response to PSUSA and Jiang's Statement of Uncontroverted Facts, Bai does not raise genuine factual disputes with any of the independent contractor agreements that bear his signature or were signed by PSUSA. Dkt 63-1. Instead, he argues that the signed agreements are irrelevant because of the California Supreme Court's *Dynamex* case. *Id.*; Opp. at 7-8.

Yet *Dynamex* is not the controlling test for vicarious liability under the federal Lanham Act, since it only established a new test regarding a California law wage order. 4 Cal. 5th 903, 954-56 (2018). However, the California Supreme Court never ruled on vicarious liability under any federal law, nor could its interpretation of federal law bind any federal court. *See Haitayan v. 7-Eleven, Inc.*, 2018 WL 6264995, at *2 (C.D. Cal. Sept. 5, 2018) ("However, Dynamex Operations has no bearing on how employment status is determined under the [federal] FLSA.").

Instead, under the appropriate test laid out by several federal circuit courts, vicarious liability under the Lanham Act applies only where the defendant and the false advertiser have an "actual or apparent partnership, have authority to bind one another in transactions, or exercise joint ownership or control" over the product or service. *See* Mot. at 28. This is a much higher standard than mere employment. For vicarious liability, the advertiser must have the actual or apparent authority to bind the company. The contracts clearly foreclose any actual authority, partnership or control. And the independent contractors lack any apparent partnership with PSUSA or authority to bind PSUSA either, as no reasonable intended parent

seeking surrogacy services could believe that they could obtain a child by responding to these posts via Facebook Messenger or Instagram Direct Message.

*Dynamex* is also inapplicable to Bai's state law false advertising claims under Cal. Bus. & Prof. Code §§ 17200 and 17500. Such claims "cannot be predicated on vicarious liability… A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate section 17200 or 17500." *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007) (*citing Emery v. Visa Intern. Serv. Ass'n*, 95 Cal.App.4th 952 (2002)). Because none of the alleged statements were directly made by either PSUSA or Jiang, they are not actionable on state law grounds either.

Bai also asserts that "Counter Defendants offer no evidence that the statements were made by… only independent contractors." Yet it is not PSUSA and Jiang's burden to prove their innocence. Bai bears the burden of proving his claims, as well as pleading them with sufficient particularity. Because Bai has failed to do so, and because he does not present any new facts which suggest he can properly plead his false advertising claims, leave to amend is not warranted.

### C. All of Bai's State Law Claims are Missing Patriot Conceptions, and Will Lack Subject Matter Jurisdiction if it is Joined.

Bai maintains Patriot Conceptions is not an indispensable party to all of his counterclaims. Opp. at 6-7. Yet he does not address any of PSUSA and Jiang's arguments that all of his counterclaims allege a competitive injury to his business. *See* Mot. at 25-26. Indeed, Patriot Conceptions is a competitor to PSUSA, and Bai claims the purportedly false ads and defamatory statements "have caused harm to competition… and to competitors." *Id.*; Counterclaim ¶ 36, 42. It is unclear how Patriot Conceptions is not necessarily implicated, since the statements at issue in all his counterclaims are alleged to have been made to surrogates, business partners or former PS employees. Indeed, the reason Bai cares what is said to these people is because they may do business with Patriot Conceptions.

Accordingly, since these state-law counterclaims necessarily require Patriot Conceptions, they should be dismissed without leave to amend, since the court would then lack jurisdiction to hear the claims. Bai's opposition does not dispute or otherwise address the argument that joinder of Patriot Conceptions destroys subject matter jurisdiction for these state law counterclaims. *See* Mot. at 26-27.

### D. New Testimony in Support of Bai's Defamation Claim Show the Alleged Explanation of the PS Dissolution is Substantially True, a Protected Opinion, and Protected by Civil Code §§ 47 (b) and (c).

Bai's opposition and the declaration of what appears to be Elena Chute alleges that defamatory statements were made in the context explaining the PS dissolution. Opp. at 6; Dkt. 62-4. The alleged explanation of the dissolution states that: (1) that Bai stole money from the company (2) that he had an affair with another PS employee and (3) that he was terminated for this reason, (4) which was why PS needed to be dissolved. *Id*. This is entirely based on hearsay, and not Ms. Chute's personal knowledge. Of these statements, the only one which contains a minor inaccuracy is that Bai was terminated. As Bai was an equal share partner, he could not be terminated, so he was instead asked to leave and sign the dissolution agreement. *See* FAC ¶ 14, Answer ¶ 14.[2] Significantly, both Kevin Liu and Jiang deny informing anyone that Bai was fired or terminated. Liu Decl. ¶ 9, Jiang Decl. ¶ 5. A surrogate recruitment manager, as well as Nick Chang and Sida Li, who worked at PS at the time, also did not hear that Bai was fired. Lara Decl. ¶ 10, Chang Decl. ¶9, Li Decl. ¶ 9.

Every other assertion in the explanation is true. Bai did, in fact, clean out the PS bank account without authorization [Dkt. 46, Ex. 6 at 84], in addition to making several other unauthorized withdrawals in the months before while still a partner [*id*. at 86-93]. Bai does not dispute that he made the June 19 withdrawal; he merely says he was following Mr. Wang's advice. Opp. at 5. While this may give Bai a

---

[2] Bai characterizes this meeting as a threat.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

malpractice claim against his former attorney, it does not alter his own actions. Also, to the extent Bai disputes this statement, it showcases the statement is a protected opinion based on true facts. *See Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002)(First Amendment protects a "statement of opinion impl[ying] knowledge of facts which may lead to a defamatory conclusion, [when] the implied facts [are] themselves be true.").[3] Bai similarly does not allege that the affair with another PS employee was false. In fact, multiple PS employees state the affair was widely suspected and "common knowledge" in the workplace. Chang Decl. ¶¶ 5 and 13, Li Decl. ¶¶ 5 and 13. Lastly, Bai's departure, as well as Jiang's concerns regarding the office affair, are the reasons PS was dissolved.

"California law permits the defense of substantial truth… Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991); *see also Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 982 (9th Cir. 2002) (affirming a District Court's grant of a motion to dismiss because the statement was "substantially true" and thus not actionable as defamation). Here, the only alleged inaccuracy – that Bai was terminated instead of being asked to leave – is minor in the context of the dissolution explanation. Undoubtedly, this alleged inaccuracy is the type of language that "'has a natural tendency to injure a person's reputation.'" Opp. at 5. But Bai's reputation is already tarnished by his theft and his conspicuous office affair. Chang Decl. ¶¶ 5 and 13, Li Decl. ¶¶ 5 and 13.

Slightly inexact explanations of events are not actionable if "the inaccuracy does not change the complexion of the affair so as to affect the reader of the article differently." *Manufactured Home Communities, Inc. v. County of San Diego*, 655 F.3d 1171, 1178 (9th Cir. 2011). Here, the true facts underlying the alleged explanation of the dissolution unequivocally put Bai in an unfavorable light. Bai's

---

[3] Petra Geraci's assertion that Jiang told her Bai is a "scammer" is likewise a protected opinion which alludes to these same set of true facts.

insistence that he was fired instead of being asked to leave is a distinction without a difference, as virtually any employee would be fired for misappropriating most of the company's funds and conducting a not-so-subtle affair in the office.[4] This inaccuracy does not change the "complexion of the affair so as to affect" listeners differently. In other words, the "sting" is the same. Likewise, in *Guccione v. Hustler Magazine, Inc*., stating a man was currently cheating on his wife was substantially true, even though the "adulterous behavior ended [years prior] because his wife ultimately divorced him" after over a decade of his cheating. 800 F.2d 298, 302–03 (2d Cir. 1986).

The substantial truth of the statements is also illustrated by the competing declarations before the Court. Ms. Chute claims that surrogates like Ms. Lara informed her that Bai was terminated for the affair and stealing from the company. Having heard about the affair and Bai's theft of funds, it is likely that several of these third parties surmised for themselves that Bai must have been fired for his actions – even though, because of the partnership structure, this was not possible.

More generally, the alleged explanation behind the dissolution – assuming it is true – would nevertheless be a fair expression of PSUSA's side of the story. This can also be characterized as an opinion, and one which is supported by several true facts. As such, it is protected by the First Amendment. The alleged explanation is also made to employees, surrogates, and business partners – entities which, because of their relationship to PS, would naturally want to know why it was dissolved. As such, they are clearly subject to the common interest privilege under Civ. Code § 47(c). Bai never addressed this issue. *See* Mot. at 23-25.

Bai's claim that the litigation privilege does not apply is also wrong. Opp. at 6. Without addressing any of the elements of the privilege, Bai claims that the

---

[4] Another wrinkle in the analysis is that Bai was also not explicitly asked to leave PS based on his misappropriation of funds. Although Bai misappropriated several funds both before and after his June 18 departure [Dkt. 46, Ex. 6 at 84-93], this is inaccuracy is justified under California employment law by the after-acquired evidence doctrine. The doctrine allows companies to justify a termination after the fact. *Salas v. Sierra Chemical Co*., 59 Cal.4th 207, 428 (2014).

*Abraham* case is inapposite because the "statements [were] made by attorneys." *Id*. Yet Elena Chute's declaration states Kevin Liu made some of the statements, and he was, in fact, an attorney of PS. Dkt. 62-4; *see also* Dkt. 5, Ex. 4-5 (Bai's false letters to referral partners which attach Mr. Liu's disciplinary proceedings and noting that that he was an attorney for PS).

These issues all separately justify dismissing Bai's defamation claim without leave to amend. The dissolution explanation is a substantially true opinion, which makes it non-actionable under the First Amendment. It is also subject to both the litigation privilege, which bars the action, and the common interest privilege, which requires Bai to plausibly plead malice. But since the statements are largely based on true facts and a fair approximation of the events from Jiang's viewpoint, Bai cannot plausibly plead they were made with "reckless disregard" for the truth.

### III. CONCLUSION

For these reasons, all of Bai's claims should be dismissed without leave to amend.

Dated: October 18, 2019        **ARENT FOX LLP**

By: */s/Stefan Bogdanovich*
MALCOLM S. MCNEIL
ISMAEL BAUTISTA JR.
STEFAN BOGDANOVICH
Attorneys for Plaintiffs and Counter-Defendants
PACIFIC SURROGACY USA, INC. AND YULUN JIANG